## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **LL FLOORING HOLDINGS, INC.,** *et al.*, | **Case No. 24-11680 (BLS)** |
| **Debtors.**[1] | **(Jointly Administered)** |
|  | **Obj. Deadline: August 28, 2024 at 4:00 PM (ET)** |
|  | **Hr'g Date: September 4, 2024 at 11:00 AM (ET)** |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO (A) REJECT CERTAIN UNEXPIRED LEASES AND (B) ABANDON CERTAIN PROPERTY; (II) APPROVING PROCEDURES FOR (A) ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) ABANDONMENT OF CERTAIN PERSONAL PROPERTY; AND (III) GRANTING RELATED RELIEF

> **THIS MOTION SEEKS TO, AMONG OTHER THINGS, REJECT CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS. PARTIES RECEIVING THIS MOTION SHOULD REVIEW THE MOTION TO SEE IF THEIR NAME(S), LEASE(S), OR CONTRACT(S) ARE SET FORTH IN THE MOTION OR ON SCHEDULE 1 ATTACHED TO THE PROPOSED ORDER ATTACHED HERETO TO DETERMINE WHETHER THIS MOTION AFFECTS THEIR LEASE(S) OR CONTRACT(S).**

LL Flooring Holdings, Inc. and certain of its affiliates, as the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company"), respectfully represent as follows in support of this motion (this "Motion"):

---

[1]   The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: LL Flooring Holdings, Inc. (0817); LL Flooring, Inc. (9199); Lumber Liquidators Leasing, LLC (N/A); LL Flooring Services, LLC (5960); and Lumber Liquidators Foreign Holdings, LLC (4568).  The address of the Debtors' corporate headquarters is 4901 Bakers Mill Lane, Richmond, VA 23230.

## BACKGROUND

1.      On August 11, 2024 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). These chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.      The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On August 21, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 116]. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

4.      The Company is one of North America's leading specialty retailers of flooring. The Company carries a wide range of hard-surface floors and carpets in a range of styles and designs, and primarily sells to consumers or flooring focused professionals.

5.      Additional factual background regarding the Company, including their business operations, corporate and capital structure, and the events leading up to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Holly Etlin in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 11] (the "First Day Declaration"),[2] which is incorporated herein by reference.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

7.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order by the Court with respect to this Motion if it is later determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**RELIEF REQUESTED**

8.      By this Motion, pursuant to sections 105(a), 363(b), 365, and 554 of the Bankruptcy Code, Bankruptcy Rules 6004, 6006, and 6007, and Local Rule 2002-1, the Debtors respectfully request entry of an order, (i) authorizing the Debtors to (a) reject certain unexpired leases and (b) abandon certain property; (ii) approving procedures for (a) the assumption, assumption and assignment, and rejection of executory contracts and unexpired leases and (b) the abandonment of certain personal property; and (iii) granting related relief.

9.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "Proposed Order").

**THE REJECTED LEASES**

10.      The Debtors operate approximately 430 retail stores across forty-six (46) states in the United States.  Stores are typically 6,500 to 7,500 square feet and subject to leases, generally for a base term of five (5) to seven (7) years with renewal options.

11.     As of the date hereof, the Debtors have nine (9) store locations that are "dark," *i.e.*, have been closed for some time with no ongoing operations or staff (collectively, the "Dark Stores" and, the Leases to which such Dark Stores are subject, the "Rejected Leases"). The Debtors have determined that, based on historical sales performance at the Dark Stores and the ongoing sale process which assigns no value to the Dark Stores or the Rejected Leases, (i) the Rejected Leases are not likely going to be sold given these stores were closed due to underperformance and a buyer is unlikely to be interested in acquiring such locations; (ii) the cost of marketing the Rejected Leases is outweighed by the rent obligations and financial burden the Debtors and their estates incur by carrying such Rejected Leases during the course of these Chapter 11 Cases while obtaining no benefit in return; and (iii) in the event the Debtors pivot to a liquidation before a hearing on this Motion, the Rejected Leases represent no benefit to the Debtors and will eventually be rejected, so rejecting such leases now will best preserve the value of the Debtors' estates.

12.     Accordingly, the Debtors have determined, in their business judgment, that rejection of the Rejected Leases identified on Schedule 1 attached to the Proposed Order is beneficial to their estates and all of their stakeholders. The Debtors seek the authority to reject the Rejected Leases effective as of the applicable Rejection Dates (as defined below) set forth on Schedule 1 attached to the Proposed Order.

13.     All personal property of the Debtors required to be retained by the Debtors has been removed or is intended to be removed from the Dark Stores by the applicable Rejection Dates, including any "personally identifiable information" (as such term is defined in section 101(41) of the Bankruptcy Code). Thus, the Debtors also seek the authority to abandon any remaining Abandoned Property (as defined below) remaining on the premises of the Dark Stores.

4

**THE PROPOSED PROCEDURES**

14.     The Debtors are party to hundreds of executory contracts (the "Contracts") and unexpired leases of nonresidential real property (the "Leases" and, together with the Contracts, the "Contracts and Leases"), which include, among other agreements, Contracts with vendors for the supply of goods and services, Contracts related to the operation of the Debtors' business, Leases with respect to personal property, and Leases with respect to the Debtors' stores, and other real property, including the Rejected Leases. The Debtors are in the process of evaluating all of the Contracts and Leases to determine whether such Contracts and Leases should be (i) rejected, as they are burdensome to the Debtors' estates; or (ii) assumed or assumed and assigned (including as amended following consensual negotiations with the applicable counterparties) to potential buyers and/or third parties, as they are valuable to the Debtors' estates.

15.     The majority of the Leases govern the Debtors' stores. As described in the First Day Declaration, the Debtors commenced these Chapter 11 Cases to implement a timely and efficient process to maximize the Debtors' estates for the benefit of all of their stakeholders and the Debtors intend to use these Chapter 11 Cases to reject certain Leases the Debtors believe in their business judgment provide no value to their estates.

16.     Prior to the Petition Date, the Debtors initiated the closure of ninety-four (94) of their store locations (the "Closing Stores") to right-size their physical footprint, including two (2) stores subject to Rejected Leases. As further described in the First Day Declaration, in the event the Debtors are unable to identify a stalking horse bidder within the milestones agreed in these Chapter 11 Cases, the Debtors will pivot to a liquidation, in which case the Debtors will need the ability to reject Leases on a rolling basis without incurring extra rent and related expenses and costs to the detriment of their estates and stakeholders. To that end, on August 12, 2024, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the*

*Debtors to Assume the Agency Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of all Liens, Claims, and Encumbrances; (III) Authorizing Customary Bonuses to Employees of Closing Stores; and (IV) Granting Related Relief* [Docket No. 15] (the "<u>Store Closing Motion</u>")[3] seeking, among other things, (i) authority to assume an agency agreement with Hilco Merchant Resources, LLC ("<u>Hilco</u>"), pursuant to which Hilco will assist the Debtors with the Store Closing Sales (as defined in the Store Closing Motion); and (ii) approval of the Sale Guidelines (as defined in the Store Closing Motion) to efficiently and appropriately maximize the value of the saleable inventory and furniture, fixtures, and equipment while balancing the potentially competing concerns of landlords and other parties in interest. While the Closing Stores no longer offer third party installation services, the remainder of the Debtors' stores (the "<u>Continuing Stores</u>") offer customers the opportunity to purchase professional installation services, which are performed by third party installation professionals. The Continuing Stores are being marketed in connection with the Debtors' pursuit of a going concern sale for all or substantially all of their assets, which include the Debtors' Leases.

17.     Absent the relief requested in this Motion, the Debtors would be required to file separate motions to reject or assume (or assume and assign) individual Contracts and Leases, resulting in substantial costs to, and administrative burdens on, the Debtors' estates—not to mention the attendant burden on the Court's docket. Accordingly, to minimize such costs and burdens, the Debtors request approval of the omnibus procedures below.

---

[3]     On August 14, 2024, the Court entered the *Interim Order (I) Authorizing the Debtors to Assume the Agency Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances; (III) Authorizing Customary Bonuses to Employees of Closing Stores; and (IV) Granting Related Relief* [Docket No. 78]. The hearing to approve the Store Closing Motion on a final basis is scheduled for September 4, 2024.

18.    For the avoidance of doubt, the Assumption and Assignment Procedures (as defined below) in this Motion are separate and apart from the assumption and assignment procedures set forth in the *Motion of Debtors for Entry of Order (I) Approving (A) Bidding Procedures, (B) Form Asset Purchase Agreement, (C) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (D) Assumption and Assignment Procedures; (II) Scheduling Auction and Sale Hearing; (III) Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* [Docket No. 44] (the "Bidding Procedures Motion"), which procedures pertain to assumption and assignment specifically to any Successful Bidder (as defined in the Bidding Procedures Motion).    The Assumption and Assignment Procedures herein, if approved, shall apply to any assumption or assumption and assignment by the Debtors to any other third party outside of a sale of substantially all of the Debtors' assets if (i) a Successful Bidder chooses not to take the applicable Contract(s) and/or Lease(s); or (ii) the Debtors do not ultimately pursue a going concern sale of the business and seek instead to implement an orderly wind down of the Debtors' business, in each case, to the extent the Debtors determine, based on their business judgment, that the proposed assumption or assumption and assignment would be beneficial to the Debtors and their estates.

## I.    The Proposed Rejection Procedures.

19.    The Debtors seek approval of the following procedures with respect to rejection of the Contracts and Leases (the "Rejection Procedures"):

(i)    ***Rejection Notice***. The Debtors shall file one (1) or more notices, substantially in the form attached to the Proposed Order as Exhibit 1 (the "Rejection Notice") indicating the Debtors' intent to reject one (1) or more Contracts and/or Leases pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things, (a) the Contract(s) and/or Lease(s) to be rejected; (b) the Debtor(s) party to such Contract(s) and/or Lease(s); (c) the names and addresses of the

counterparties to such Contract(s) and/or Lease(s) (each, a "Rejection Counterparty"); (d) the proposed effective date of rejection for the Contract(s) and/or Lease(s) (each, a "Rejection Date"), which for Leases shall be the later of (1) the proposed effective date of the rejection for such Lease as set forth in the Rejection Notice; (2) the date upon which the Debtors surrender the premises to the landlord and return the keys, key codes, or security codes, as applicable; and (3) such other date as agreed between the Debtors and the applicable Rejection Counterparty or as the Court may order; (e) with respect to Leases, the Abandoned Property, if any, and a description thereof; (f) any known third parties having an interest in any property located at the premises subject to a rejected Lease, including personal property, furniture, fixtures, and equipment ("FF&E"); (g) a form of order (the "Rejection Order") authorizing the rejection of such Contract(s) and/or Lease(s) effective as of the Rejection Date (or such other date as agreed between the Debtors and the applicable Rejection Counterparty or as ordered by the Court); and (h) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below). The Rejection Notice may list multiple Contracts and/or Leases; *provided*, *that*, the number of Rejection Counterparties listed on each Rejection Notice shall be limited to no more than 100.

(ii)     ***Service of the Rejection Notice***. The Debtors will cause each Rejection Notice to be served: (a) via email, if known, and by overnight delivery service upon the Rejection Counterparties affected by the Rejection Notice at the notice address provided in the applicable Contract(s) and/or Lease(s) (and upon such Rejection Counterparty's counsel, if known) and all known parties who may have any interest in the Abandoned Property and (b) by first class mail, email, or fax upon the Notice Parties (as defined below) (collectively, the "Rejection Notice Parties").

(iii)     ***Objection Procedures***. Any party objecting to a proposed rejection or to the Debtors' proposed abandonment of the Abandoned Property must file and serve a written objection[4] so as to actually be received by the following parties no later than seven (7) days after the date the Debtors file and serve the relevant Rejection Notice (the "Rejection Objection Deadline"): (i) the Debtors, c/o LL Flooring Holdings, Inc., 4901 Bakers Mill Lane, Richmond, VA 23230, Attn.: Alice Givens; (ii) proposed counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 920 North King Street, Wilmington, Delaware 19801, Attn.: Joseph O. Larkin (Joseph.Larkin@skadden.com) and Jason M. Liberi (Jason.Liberi@skadden.com), and One Manhattan West, New York, New York 10001, Attn.: Lisa Laukitis (Lisa.Laukitis@skadden.com), Elizabeth M. Downing (Elizabeth.Downing@skadden.com), and Angeline J. Hwang (Angeline.Hwang@skadden.com); (iii) counsel to the

---

[4]     An objection to the rejection of any Contract(s) or Lease(s) shall not constitute an objection to the rejection of any other Contract(s) or Lease(s) listed on the same Rejection Notice.

DIP ABL Agent and the Prepetition ABL Agent, (a) Morgan Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Christopher L. Carter (christopher.carter@morganlewis.com) and (b) Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Kurt F. Gwynne (KGwynne.@ReedSmith.com); (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (v) counsel to any statutory committee appointed in these Chapter 11 Cases, including the Committee (collectively, the "Objection Service Parties").

(iv)    ***No Objection Timely Filed***.  If no objection to the rejection of a Contract or Lease listed in a Rejection Notice is timely filed, such Contract or Lease shall be rejected as of the applicable Rejection Date or such other date as the Debtors and the applicable Rejection Counterparty agree or as ordered by the Court; *provided*, *however*, *that*, the Rejection Date for a Lease shall not occur until the later of (a) the applicable Rejection Date and (b) the date the Debtors relinquish control of the applicable premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and either (1) turning over keys, key codes, and security codes, if any, to the landlord or (2) notifying the landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises.  If no objection is filed and served by the Rejection Objection Deadline, the Debtors shall file the Rejection Order with the Court under a certificate of counsel.

(v)    ***Unresolved Timely Objections***.  If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven (7) days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, the applicable Contract(s) and/or Lease(s) shall be rejected as of the applicable Rejection Date, such other date as agreed between the Debtors and the applicable Rejection Counterparty, or as ordered by the Court.

(vi)    ***No Application of Security Deposits***.  With respect to Leases, if the Debtors have deposited monies with a landlord (or other applicable Rejection Counterparty) as a security deposit or similar arrangement, the applicable landlord (or other applicable Rejection Counterparty) may not set off or recoup or otherwise use such deposit to reduce its rejection damages, if any, without the prior approval of the Court, unless the Debtors and the applicable landlord (or other applicable Rejection Counterparty) otherwise agree.

(vii)    ***Proofs of Claim***.  Claims arising out of the rejection of Contracts and Leases, if any, must be filed on or before the later of (a) the general bar date

9

for filing proofs of claim established in the Chapter 11 Cases, if any, and (b) thirty (30) days after the later of (1) if no objection is timely filed, the Rejection Objection Deadline and (2) if an objection is timely filed, the date that such objection has either been overruled or withdrawn.  If no proof of claim is timely filed, the applicable Rejection Counterparty shall be forever barred from asserting a claim for damages arising from the rejection of the applicable Contract(s) and/or Lease(s) and from participating in any distributions on account of such claim that may be made in these Chapter 11 Cases.

## II.    The Proposed Assumption and Assignment Procedures.

20.    The Debtors seek approval of the following procedures with respect to the assumption and assumption and assignment of the Contracts and Leases (the "Assumption and Assignment Procedures"):

(i)    ***Assumption Notice***.  The Debtors shall file a notice, substantially in the form attached to the Proposed Order as Exhibit 2 (the "Assumption Notice"), indicating their intent to assume or assume and assign a Contract(s) and/or Lease(s) pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things: (a) the Contract(s) and/or Lease(s) to be assumed or assumed and assigned; (b) the Debtor(s) party to such Contract(s) and/or Lease(s); (c) the names and addresses of the counterparties to such Contract(s) and/or Lease(s) (each, an "Assumption Counterparty"); (d) the identity of the proposed assignee of each such Contract and/or Lease (the "Assignee"), if applicable; (e) the effective date of the assumption for each such Contract and/or Lease (the "Assumption Date"); (e) the proposed cure amount, if any for each such Contract and/or Lease (the "Cure Amount"); (f) a description of any material amendments to each such Contract and/or Lease made outside of the ordinary course of business; (g) a proposed form of order (the "Assumption Order") authorizing the assumption or assumption and assignment as of the Assumption Date (or such other date to which the Debtors and the applicable Counterparty agree or as ordered by the Court); and (h) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below).  The Assumption Notice may list multiple Contracts and/or Leases; *provided*, *that* the number of Assumption Counterparties listed on each Assumption Notice shall be limited to no more than 100.

(i)    ***Service of the Assumption Notice***.  The Debtors will cause the Assumption Notice to be served (a) via email, if known, and by overnight delivery upon the Assumption Counterparties (and their counsel, if known) affected by the Assumption Notice at the address set forth in the notice provision of the applicable Contract or Lease and on each Assignee, if applicable; and (b) by

first class mail, email, or fax upon the Notice Parties (collectively, the "Assumption Notice Parties").

(ii)      ***Evidence of Adequate Assurance***. With respect to the assumption or assumption and assignment of Leases, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice via email, if known, and by overnight delivery upon the applicable Assumption Counterparties at the address set forth in the notice provision of the applicable Lease (and upon the Assumption Counterparties' counsel, if known, by email). With respect to Contracts, the Debtors shall serve (by email, if requested) the applicable Assumption Counterparties with evidence of adequate assurance of future performance as soon as reasonably practicable upon such Assumption Counterparty's written request to the Debtors' proposed counsel.

(iii)     ***Objection Procedures***. A party objecting to the proposed assumption or assumption and assignment of a Contract or Lease (including as to the proposed Cure Amount or evidence of adequate assurance of future performance) must file and serve a written objection[5] so as to actually be received by the Objection Service Parties no later than seven (7) days after the date the Debtors file and serve the relevant Assumption Notice.

(iv)      ***No Objection***. If no objection to the assumption (and assignment, if applicable) of a Contract or Lease is timely filed, such Contract or Lease shall be assumed as of the Assumption Date or such other date as agreed between the Debtors and the applicable Assumption Counterparty or otherwise ordered by the Court, and the Cure Amount shall be binding on the relevant Assumption Counterparty and no amount in excess thereof shall be payable for cure purposes. If no objection is filed and served by the Assumption Objection Deadline, the Debtors shall file the proposed Assumption Order with the Court under a certificate of counsel.

(v)       ***Unresolved Timely Objection***. If an objection to an Assumption Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven (7) days' notice of such hearing to the applicable Assumption Counterparty and the other Objection Service Parties. If such objection is overruled or withdrawn, the applicable Contract or Lease shall be assumed or assumed and assigned, as applicable, as of the Assumption Date or such other date as agreed between the Debtors and the Assumption Counterparty, or as ordered by the Court.

---

[5]    An objection to the assumption and/or the assumption and assignment of any particular Contract(s) or Lease(s) listed on an Assumption Notice shall not constitute an objection to the assumption and/or assumption and assignment of any other Contract(s) or Lease(s) listed on such Assumption Notice.

21.     In addition, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors request that the assignment of any Contract or Lease pursuant to the Assumption Procedures (i) be free and clear of (a) all liens (and any liens shall attach to the proceeds of such assignment in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (b) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, without limitation, claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Contract(s) or Lease(s) (but only in connection with the assignment by the Debtor to the Assignee) (all of the foregoing, collectively, the "Encumbrances"); *provided*, *that*, any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a Lease, including adjustments, reconciliations and indemnity obligations, liability for which shall be assumed by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the applicable Assignee; and (ii) constitute a legal, valid, and effective transfer of such Contract or Lease and vest the applicable Assignee with all rights, titles, and interests to the applicable Contracts and Leases.[6] For the avoidance of doubt, all provisions of the applicable assigned Contract or Lease, including any provision limiting assignment, shall be binding on the applicable Assignee.

---

[6]    Certain Contract(s) or Lease(s) may contain provisions that restrict, prohibit, condition, or limit the assumption and/or assumption and assignment of such Contract(s) or Lease(s).  The Debtors reserve all rights with respect to the enforceability of such provisions.

### III. The Proposed Abandonment Procedures.

22. Finally, the Debtors seek authorization for the following procedures (the "Abandonment Procedures" and, together with the Rejection Procedures and the Assumption and Assignment Procedures, the "Procedures") with respect to the personal property and FF&E that may be located on the leased premises that are subject to a rejected Lease (the "Abandoned Property"):

(i)      At any time on or before the applicable Rejection Date, the Debtors may remove or abandon any of the personal property or FF&E that may be located on the leased premises that are subject to a rejected Lease;

(i)      The Debtors shall generally describe the Abandoned Property in the Rejection Notice;

(ii)      Absent a timely objection, any and all of the Debtors' personal property and FF&E located on the leased premises on the Rejection Date of the applicable rejected Lease shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the applicable Rejection Date;

(iii)      Landlords may, in their sole discretion and without further notice or order of this Court, utilize and/or dispose of such property without liability to the Debtors or any third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; and

(iv)      To the extent that the Debtors propose to abandon any personal property that, to their knowledge, contains "personally identifiable information," as that term is defined in section 101(41) of the Bankruptcy Code, or other personal and/or confidential information about the Debtors' employees and/or customers, or any other individual, the Debtors shall remove such information from such personal property before such abandonment.

### THE RELIEF REQUESTED SHOULD BE GRANTED

### IV. Rejection of the Rejected Leases is an Appropriate Exercise of the Debtors' Business Judgment.

23. Section 365 of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The purpose behind section 365(a) is to "release the debtor's estate

13

from burdensome obligations that can impede a successful reorganization[,]" which is "vital to the basic purpose to a Chapter 11 reorganization." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010), ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization.").

24.     The standard applied by courts in determining whether the rejection of an unexpired lease of nonresidential real property pursuant to section 365(a) is the business judgment standard, which requires a showing by the debtor that the requested rejection would be beneficial to the estate. *See, e.g.*, *Grp. of Inst. Invs., Inc. v. Chi., M., St. P. & P.R. Co.*, 318 U.S. 523, 550 (1943) (noting "the question whether a lease should be rejected . . . is one of business judgment"); *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)), *aff'd* 465 U.S. 513 (1984); *see also L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) ("Section 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not."); *Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (affirming rejection as sound exercise of debtor's business judgment upon finding that rejection would benefit estate).

25.     In applying the business judgment standard, bankruptcy courts afford great deference to a debtor's decision to assume or reject leases. *See, e.g.*, *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an [unexpired lease] must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" (citation omitted); *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bankr.

14

S.D.N.Y. 2014) (stating that a court generally will not second guess a debtor's business judgment regarding assumption or rejection and such related benefits to the debtor's estate).

26.     Rejection of the Rejected Leases as requested herein is a proper exercise of the Debtors' business judgment, is in the best interests of the Debtors' estates, and should be approved.  The Debtors no longer operate the Dark Stores and have determined that the Rejected Leases have no market value.  Accordingly, continuing to perform their obligations and pay rent under the Rejected Leases would impose significant unnecessary burdens on the Debtors and their estates without any commensurate benefit.  Any delay in rejecting the Rejected Leases would add approximately $80,000 per month of unnecessary administrative expenses.  The relief requested herein will allow the Debtors to avoid the incurrence of administrative rent and related charges under section 365(d)(3) of the Bankruptcy Code.

**V.      Rejection of the Rejected Leases Effective as of the Rejection Date is Warranted.**

27.     The Court should authorize rejection of the Rejected Leases effective as of the applicable Rejection Dates because the Debtors stated unequivocally their intention to reject the Rejected Leases by filing this Motion and vacating the premises subject to the Rejected Leases.  Courts in this district and elsewhere recognize that retroactive rejection is appropriate where the balance of the equities favors such relief.  *See, e.g.*, *SCS Co. v. Peter J. Schmitt Co.*, No. 94CV125, 1995 WL 1772010, at *2 (D. Del. May 15, 1995) (noting that a bankruptcy court has authority to select a retroactive date for the effective date of a lease's rejection); *In re Rupari Holding Corp.*, No. 17-10793 (KJC), 2017 WL 5903498, at *6 (Bankr. D. Del. Nov. 28, 2017) (authorizing rejection of employment agreements retroactive to a date before the debtor filed the motion to reject the same where debtor unequivocally communicated to the employees that it no longer required their services at the closing of the sale); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve retroactive rejection

after balancing the equities in the particular case); *In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed retroactive to the later of the date of the motion or the date the premises were surrendered).

28.     The balance of equities favors the relief requested herein.  Without a retroactive date of rejection, the landlord counterparties to the Rejected Leases may attempt to assert administrative expense claims, unnecessarily depleting the limited liquidity available to administer these Chapter 11 Cases.  As stated above, the Debtors no longer have use for the Rejected Leases as the premises are vacant and do not provide value to the Debtors' estates.  Furthermore, the Debtors are providing notice to the applicable landlords under the Rejected Leases through this Motion that (i) the Debtors have vacated and surrendered the Dark Stores and abandoned personal property remaining on the premises or intend to do so by the applicable Rejection Date and (ii) the landlords should immediately begin efforts to relet the premises to mitigate their damages.  In addition, the Debtors have already turned over the keys or access cards to the counterparties associated with the Dark Stores or intend to do so by the applicable Rejection Date set forth on Schedule 1 attached to the Proposed Order for all other Rejected Leases.  For these reasons, the Debtors respectfully submit that it is fair and equitable for the Court to order that the Rejected Leases be rejected as of the applicable Rejection Dates.

**VI.     Abandonment of Certain Abandoned Personal Property is Authorized by Section 554(a) of the Bankruptcy Code and Should be Approved.**

29.     Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) ("[A trustee] may abandon his claim to any asset, including a cause of action, he deems less than valuable than the cost of asserting that

claim[.]"); *In re Cont. Rsch. Sols., Inc.*, No. 12-1104 (KJC), 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) ("[A debtor] 'need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon.'" (second alteration in original) (citation omitted)).

30.    Although the Debtors have removed all personal property located in the relevant stores to the extent feasible and not cost-prohibitive, certain of the Debtors' personal property may remain at certain locations.  To the extent Debtors have left any personal property at the Dark Stores, it is of inconsequential value and of no benefit to the Debtors' estates.  As a result, the Debtors have determined that abandoning any such Abandoned Property, effective as of the applicable Rejection Date, is necessary and in the best interests of the Debtors, their estates, and their creditors.

31.    To the best of the Debtors' knowledge, the abandonment of the Abandoned Property would not be in violation of any state or local statutes or regulations reasonably designed to protect the public health or safety.  The Debtors have also removed all "personally identifiable information" (as that term is defined in section 101(41) of the Bankruptcy Code) from the premises subject to the Rejected Leases and from the Abandoned Property, as applicable.  Once the Abandoned Property is abandoned as of the applicable Rejection Date, the applicable landlord or its designee will be free to dispose of such property as they see fit, without notice or liability to any party.

32.    Accordingly, the Court should authorize the Debtors to abandon the Abandoned Property as of the applicable Rejection Date.

**VII.    The Proposed Procedures are in the Best Interests of the Debtors' Estates.**

33.    Implementing procedures for the efficient rejection and assumption or assumption and assignment of the Contracts and/or Leases are critical to the success of these Chapter 11

Cases.  In connection with the going concern sale process, a potential buyer may seek to acquire some, but not all, of the Continuing Stores, and the Debtors may seek to assume, assume and assign, or reject Leases in connection therewith.  For the avoidance of doubt, if the Company enters into a going concern sale, these procedures would govern the Contracts and Leases that would be left behind in such a sale, not the assumption and assignment in connection with a sale or purchase agreement to any Successful Bidder (as defined in the Bidding Procedures Motion).  In addition, as further described in the First Day Declaration, in the event the Debtors are unable to identify a stalking horse bidder within the milestones agreed in these Chapter 11 Cases, the Debtors will pivot to a liquidation.  In the event of a liquidation, the Debtors will need the ability to reject Leases on a rolling basis without incurring extra rent and related expenses and costs to the detriment of their estates and stakeholders.  Given the limited funding available in these Chapter 11 Cases, the timeline on which the Debtors are seeking to emerge from chapter 11, and the need to maximize recoveries for all stakeholders, the Debtors believe that it is necessary to obtain immediate approval of the Procedures.

34.     Further, given the large number of Contracts and Leases to which the Debtors are a party, establishing the Procedures will streamline the administration of these Chapter 11 Cases and enhance the efficiency of the chapter 11 process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Contract and/or Lease that the Debtors seek to reject, assume, or assume and assign.  The Procedures are reasonable and fair to Contract and Lease counterparties because they afford all parties in interest the opportunity to be heard with respect to the proposed rejection (and abandonment of Abandoned Property related thereto), assumption, or assumption and assignment.

35.    Courts in this district often enter orders approving similar relief.  *See, e.g., In re No. Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del May 8, 2024) (entering an order approving procedures to reject executory contracts and unexpired leases); *In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Sept. 14, 2023) (same); *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. July 19, 2023) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 13, 2020) (same).[7]

## VIII.    Rejection, Assumption, and/or Assumption and Assignment of Contracts and Leases in Accordance with the Procedures is a Valid Exercise of the Debtors' Business Judgment.

36.    As previously discussed, a debtor in possession may assume or reject an executory contract or unexpired lease with the approval of the bankruptcy court if the debtor determines, in its business judgment, that assumption or rejection will benefit the estate, and Courts generally will not second guess a debtor's business judgment concerning such assumption or rejection.

37.    Further, as with the assumption or rejection of an executory contract or an unexpired lease under section 365, any amendment to an executory contract or unexpired lease that may be deemed outside the ordinary course of business is authorized under section 363 of the Bankruptcy Code when there is a "sound business purpose" that justifies such action. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" standard for transactions under section 363 of the Bankruptcy Code).

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion.  Copies of these orders are available upon request of the Debtors' proposed counsel.

38.     The Debtors have determined, in their sound business judgment, that the rejection, assumption, or assumption and assignment of Contracts and/or Lease in accordance with the Procedures is and will be in the best interest of the Debtors' estates: the Procedures will avoid substantial legal expense and the use of the Court's time that would result if the Debtors were required to file a separate motion seeking authority to reject, assume, or assume and assign each time the Debtors sought to reject, assume, or assume and assign any Contract or Lease and hold a hearing on every such motion.  The Debtors submit that the information provided on the Rejection Notices and Assumption Notices will provide the Court, the applicable Contract and Lease counterparties, and other parties in interest with sufficient information to establish that the Debtors are entitled, in their sound business judgment, to reject, assume, or assume and assign the applicable Contract or Lease.  Accordingly, the Court should approve the Procedures.

## IX.    The Assignment of Contracts and Leases Should be Approved Free and Clear of Encumbrances.

39.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if: (i) applicable non-bankruptcy law permits a free and clear sale; (ii) the holder of the interest consents; (iii) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f).

40.     Executory contracts and unexpired leases are property of a debtor's estate.  To the extent the Debtors assume and assign a Contract or Lease pursuant to the Assumption Procedures, such assignment is tantamount to a sale of estate property and may be transferred free and clear of all Encumbrances so long as *one (1)* of the criteria under section 363(f) of the Bankruptcy Code is satisfied.  The Debtors propose that if a party in interest fails to timely object to an assumption and

assignment consistent with the Assumption Procedures, such party shall be deemed to "consent" to such assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code. If a party in interest timely objects to an assumption and assignment consistent with the Assumption Procedures, and such objection is not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the objection; if such objection is overruled or withdrawn, the Contract(s) or Lease(s) in question shall be assumed or assumed and assigned. The requirements of section 363(f) of the Bankruptcy Code would thus be satisfied for any proposed "transfer" of a Contract or Lease free and clear of all Encumbrances.

41.     Courts in this district and others have granted similar authority. *See, e.g.*, *In re No. Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. May 8, 2024) (authorizing the assignment of contracts and leases free and clear of liens and claims); *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 13, 2020) (same); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. July 13, 2020) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same).

## X.     Abandonment of the Debtors' Personal Property is Proper Under Section 554(a) of the Bankruptcy Code.

42.     With respect to the Debtors' request for authority to abandon property, the Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied. Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Before authorizing the abandonment of property, a bankruptcy court must find that either: (i) the property is burdensome to the estate; or (ii) the property is both of inconsequential value and inconsequential benefit to the estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); *Hanover Ins. Co. v. Tyco Indus., Inc.*,

500 F.2d 654, 657 (3d Cir. 1974) (stating that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim"); *In re Cont. Rsch. Sols., Inc.*, 2013 WL 1910286, at *4 ("[A debtor] 'need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon.'" (citation omitted)); *Matter of Boogaard*, 89 B.R. 397, 397 (Bankr. D. Del. 1988).

43.    The Debtors intend to sell all of their owned assets, but they may determine that the costs associated with holding or selling certain property exceeds the proceeds that will be realized upon its sale, or that such property is not sellable at all.  Under such circumstances, these assets would be both "burdensome to the estate" and "of inconsequential value and benefit to the estate."  The Debtors respectfully submit that abandonment of such property is in the best interests of their estates and request that the Court authorize them to do so where the Debtors determine, in their business judgment, that abandonment is the appropriate course of action.  Accordingly, the Debtors should be authorized to abandon any such assets without incurring liability to any person or entity.

**XI.    The Procedures Satisfy Due Process.**

44.    The counterparties to the Contracts will not be prejudiced by the Procedures because, upon receipt of an Assumption Notice or a Rejection Notice, such counterparties will have received notice of the Debtors' intent to reject, assume, or assume and assign their respective Contract or Lease and of the effective date of such assumption or rejection.  *See, e.g.*, *Stanley Jacobs Prod., Ltd. V. 9472531 Can. Inc. (In re Thane Int'l, Inc.)*, 586 B.R. 540, 548 (Bankr. D. Del. 2018) (finding that the requirements of the Bankruptcy Code are meant to protect the interests of the non-debtor parties to executory contracts, so they may avoid having to deal with an assumption of which they had no notice and which they had no opportunity to contest); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding

debtor may reject executory contract by clearly communicating intention to reject).  Additionally, in the case of Leases, the Debtors intend to vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession and relet the property promptly.  *See*, *e.g.*, *Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re New Valley Corp*, No. 98-982, 2000 U.S. Dist. LEXIS 12663, at *44-46 (D.N.J. Aug. 31, 2000) (holding bankruptcy court properly exercised its discretion in adjusting the effective date of rejection from the date the court signed the order authorizing rejection to the date on which the debtor vacated and the landlord exercised control over the property); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible).

45.    As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014."  Fed. R. Bankr. P. 6006(a).  Bankruptcy Rule 9014 provides that: "In a contested matter . . . , not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a).  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

46.    Under Bankruptcy Rule 6006(f), a debtor may seek authority to assume or reject multiple executory contracts or unexpired leases in one (1) motion, subject to Bankruptcy Rule 6006(e).  *See* Fed. R. Bankr. P. 6006(f).  Bankruptcy Rule 6006(f) sets forth six (6) requirements that motions to assume or reject multiple executory contracts or unexpired leases must satisfy.  These requirements are procedural in nature.  A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

> (i)    state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

> (ii)    list parties alphabetically and identify the corresponding contract or lease;

> (iii)    specify the terms, including the curing of defaults, for each requested assumption or assumption and assignment;

> (iv)    specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

> (v)    be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

> (vi)    be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

47.    The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Contracts and Leases while conserving estates' resources.  Counterparties must be able to readily determine whether their Contracts or Leases are being assumed or rejected.  The Procedures satisfy Bankruptcy Rule 6006(f), including the 100-counterparty limit set forth herein.

48.    In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the U.S. Trustee and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

49.     As a result, the Procedures afford Contract and Lease counterparties, and all other parties in interest, their due process rights by providing notice and the opportunity to be heard.  Moreover, Court oversight is maintained in the event of an objection.  For the foregoing reasons, the Procedures should be approved, and the Debtors should be authorized to reject, assume, and assume and assign the Contracts and Leases consistent with the terms of the Procedures.

50.     In sum, the Procedures will minimize costs to the Debtors' estates and reduce the burden on this Court's docket while protecting parties in interest by providing notice and the opportunity to object and obtain a hearing.  Moreover, the Debtors have determined that the Procedures are an appropriate means to protect and maximize the value of the Debtors' estates.

## WAIVER OF BANKRUPTCY RULES 6004(a), 6004(h), AND 6006(d)

51.     To better implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  The Debtors also seek to waive the 14-day stay required of any assignment of a Contract under Bankruptcy Rule 6006(d).  As set forth above, the relief requested herein is essential to prevent immediate and irreparable damage to the Debtors' operations, going concern value, and their efforts to pursue a resolution to these Chapter 11 Cases.

## RESERVATION OF RIGHTS

52.     Nothing in this Motion should be construed as (i) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (ii) a promise to pay any claim or other obligation; (iii) granting

third party beneficiary status or bestowing any additional rights on any third party; or (iv) being otherwise enforceable by any third party.

## NOTICE

53.     Notice of this Motion will be given to: (i) the U.S. Trustee; (ii) the parties included on the Debtors' consolidated list of their thirty (30) largest unsecured creditors; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Office of the United States Attorney for the District of Delaware; (vi) counsel to the DIP ABL Agent and the Prepetition ABL Agent; (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002; (viii) counsel to the Committee; (ix) all parties entitled to notice pursuant to Local Rules 2002-1(b) and 9013-1(m) (the "Notice Parties"); and (x) the Rejection Counterparties listed on Schedule 1 of the Proposed Order.  The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

54.     No previous request for the relief sought therein has been made to this Court or any other court.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

The Debtors respectfully request that this Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated:  August 21, 2024
      Wilmington, Delaware

                                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                        */s/ Joseph O. Larkin*
                                        Joseph O. Larkin (I.D. No. 4883)
                                        Jason M. Liberi (I.D. No. 4425)
                                        One Rodney Square
                                        920 N. King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 651-3000
                                        Joseph.Larkin@skadden.com
                                        Jason.Liberi@skadden.com

                                        - and -

                                        Lisa Laukitis (admitted *pro hac vice*)
                                        Shana A. Elberg (admitted *pro hac vice*)
                                        Elizabeth M. Downing (admitted *pro hac vice*)
                                        Angeline J. Hwang (admitted *pro hac vice*)
                                        One Manhattan West
                                        New York, New York 10001
                                        Telephone: (212) 735-3000
                                        Lisa.Laukitis@skadden.com
                                        Shana.Elberg@skadden.com
                                        Elizabeth.Downing@skadden.com
                                        Angeline.Hwang@skadden.com

                                        *Proposed Counsel to Debtors and Debtors in Possession*