**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **LL FLOORING HOLDINGS, INC.,** *et al.*, | Case No. 24-11680 (BLS) |
| Debtors.[1] | (Jointly Administered) |
| | Related Docket Nos. 336 & 337 |

**NOTICE OF (I) CLOSING OF SALE TRANSACTION; (II) FILING OF AMENDED ASSET PURCHASE AGREEMENT; AND (III) CLOSING OF THE DC TRANSACTION**

**PLEASE TAKE NOTICE** that on September 16, 2024, the Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving the Sale of Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (III) Granting Related Relief* [Docket No. 336] (the "Sale Order"),[2] which, among other things, authorized the Debtors to consummate the Sale Transaction and enter into the Asset Purchase Agreement, attached to the Sale Order as Exhibit 1; and the *Order (I) Authorizing Debtors to Enter Into and Perform Under Sandston Distribution Center Purchase Agreement; (II) Authorizing the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances; and (III) Granting Related Relief* [Docket No. 337] (the "Private Sale Order"), which, among other things, authorized the Debtors to consummate the transactions contemplated by the DC Purchase Agreement, attached to the Private Sale Order as Exhibit 1.

---

[1]  The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: LL Flooring Holdings, Inc. (0817); LL Flooring, Inc. (9199); Lumber Liquidators Leasing, LLC (N/A); LL Flooring Services, LLC (5960); and Lumber Liquidators Foreign Holdings, LLC (4568).  The address of the Debtors' corporate headquarters is 4901 Bakers Mill Lane, Richmond, VA 23230.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Order or the Private Sale Order (as defined herein), as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Debtors and the Purchaser entered into an amendment to the Asset Purchase Agreement (the "Amendment to the APA") on September 30, 2024, to align its terms to the original commercial deal agreed upon by the parties, attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Closing of the Sale Transaction, as set forth in the Asset Purchase Agreement, occurred on September 30, 2024.

**PLEASE TAKE FURTHER NOTICE** that the Closing of the DC Transaction, as set forth in the DC Purchase Agreement, occurred on September 30, 2024.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 1, 2024
      Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Joseph O. Larkin*
Joseph O. Larkin (I.D. No. 4883)
Jason M. Liberi (I.D. No. 4425)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com
Jason.Liberi@skadden.com

- and -

Lisa Laukitis (admitted *pro hac vice*)
Shana A. Elberg (admitted *pro hac vice*)
Elizabeth M. Downing (admitted *pro hac vice*)
Angeline J. Hwang (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Lisa.Laukitis@skadden.com
Shana.Elberg@skadden.com
Elizabeth.Downing@skadden.com
Angeline.Hwang@skadden.com

*Counsel to Debtors and Debtors in Possession*

## **EXHIBIT A**

**Amendment to the APA**

**EXECUTION VERSION**

# FIRST AMENDMENT TO THE PURCHASE AGREEMENT

This FIRST AMENDMENT TO THE PURCHASE AGREEMENT (this "Amendment"), dated as of September 30, 2024, is by and among LumLiq2, LLC, a Delaware limited liability company ("Purchaser"), F9 Investments, LLC, a Florida limited liability company ("Guarantor"), and LL Flooring Holdings, Inc., a Delaware corporation (the "Company") and the Subsidiaries of LL Flooring that are indicated on the signature pages attached hereto (together with the Company, each, a "Seller," and collectively, "Sellers").  Purchaser, Sellers and Guarantor are referred to herein individually as a "Party" and collectively as the "Parties."

W I T N E S S E T H:

WHEREAS, the Parties entered into that certain Asset Purchase Agreement, dated as of September 6, 2024 (the "Purchase Agreement"); and

WHEREAS, the Parties wish to amend the Purchase Agreement in the manner set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. Amendment.

    i. Section 2.1 of the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

    "Consideration. The aggregate consideration (collectively, the "**Purchase Price**") to be paid by Purchaser for the purchase of the Acquired Assets shall be: (i) the Fixed Amount; *plus* (ii) the Inventory Price; *plus* (iii) all Assumed Cure Costs; and *less* (iv) the sum of the Net Deposit Refund Liability Amount.

    ii. Section 2.3 or the Purchase Agreement is hereby amended and restated in its entirety to read as follows:

    "(b)    On or before the date that is four (4) Business Days prior to the anticipated Closing Date, Sellers shall deliver to Purchaser a written statement setting forth (A) the Fixed Amount; *plus* (B) the estimated Inventory Price (subject to adjustment pursuant to the Inventory Count, as set out below); *plus* (C) all Assumed Cure Costs; and *less* (D) the sum of the Net Deposit Refund Liability Amount.

    (c)    On the date that is three (3) Business Days prior to the anticipated Closing Date, Sellers shall deliver to Purchaser an estimate of the Acquired Inventory (the "**Estimated Inventory Count**") at the Representative Stores along with the DC and the Net Deposit Refund Liability Amount (the "**Estimated Net Deposit Refund Liability Amount**").  On or before close of business on the third (3rd) day prior to Closing, Sellers shall cause each of the Acquired Leased Real

> Property to be closed, such that no Inventory shall be sold, or delivered from, any Acquired Leased Real Property.  Sellers shall further cause the DC to be closed no later than the close of business on the fourth (4th) day prior to Closing such that no Inventory shall be sold or delivered from either the DC to any Acquired Leased Real Property or any Excluded Store.  During the two (2) calendar days immediately preceding the anticipated Closing Date, Purchaser shall have access to the Representative Stores and the DC solely for the purpose of conducting an Inventory Count.  The Inventory Count shall be conducted by Purchaser at Purchaser's sole cost and expense (for the avoidance of doubt, Sellers may, at Sellers' expense, designate and have a representative attend and oversee the Inventory Count at each and any Representative Store and the DC) and the final Inventory Count shall be mutually agreed by both Parties acting reasonably and in good faith. The Parties will also conduct a review of the Existing Customer Deposits related to the Reserved Inventory and the value of the Reserved Inventory measured at 100% of the landed cost of the Reserved Inventory, during the two (2) calendar days immediately preceding the anticipated Closing Date (the "**Final Net Deposit Refund Liability Amount**").
>
> (d)     The Inventory Count at the DC shall be deemed to be the final Inventory Count relative to the Inventory located in the DC.  Any difference between the final count of the Acquired Inventory at the Representative Stores and the Estimated Inventory Count at the Representative Stores shall be extrapolated to all Acquired Inventory at all Acquired Leased Real Property locations on a percentage basis for the purpose of determining the Inventory Price with respect to the Acquired Inventory at the Acquired Leased Real Property locations. The Inventory Price shall be adjusted accordingly to give effect to the final Inventory Count of the DC and the final Inventory Count of the Acquired Leased Real Property locations. The Net Deposit Refund Liability Amount shall be adjusted accordingly to give effect to any difference between the Final Net Deposit Refund Liability Amount and Estimated Net Deposit Refund Liability Amount."

iii. Section 11.1 of the Purchase Agreement is hereby amended to include the following definition:

> "**Net Deposit Refund Liability Amount**" means the Existing Customer Deposits related to the Reserved Inventory *less* 100% of landed cost value of the Reserved Inventory."

2.   Capitalized Terms.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement.

3.   Effect of Amendment.  This Amendment shall not constitute an amendment or waiver of any provision of the Purchase Agreement not expressly amended or waived herein and shall not be construed as an amendment, waiver or consent to any action that would require an amendment, waiver or consent, except as expressly stated herein.  The Purchase Agreement, as amended by

this Amendment, is and shall continue to be in full force and effect and is in all respects ratified and confirmed hereby.

4.     Miscellaneous. Section 6.9 and Article X of the Purchase Agreement is incorporated herein by reference and shall apply to this Amendment *mutatis mutandis* as if set forth herein at length.

[*The remainder of this page is intentionally blank.*]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives as of date first written above.

PURCHASER:

LUMLIQ2, LLC, a Delaware limited liability company

By: *Jason Delves*
Name:  Jason Delves
Title:   Chief Executive Officer

FOR PURPOSES OF SECTION 6.9 ONLY:

F9 INVESTMENTS, LLC,
a Florida limited liability company

By: *Avi Cohen*
Name:  Avi Cohen
Title:  Chief Financial Officer

[*Signature Page to First Amendment*]

SELLERS:

LL FLOORING HOLDINGS, INC., a Delaware corporation

By: _____
Name: Alice G. Givens
Title: Chief Legal, Ethics and Compliance Officer

LL FLOORING, INC.

By: _____
Name: Alice G. Givens
Title: Chief Legal, Ethics and Compliance Officer

LUMBER LIQUIDATORS LEASING, LLC

By: _____
Name: Alice G. Givens
Title: Chief Legal, Ethics and Compliance Officer

LL FLOORING SERVICES, LLC

By: _____
Name: Alice G. Givens
Title: Chief Legal, Ethics and Compliance Officer

LUMBER LIQUIDATORS FOREIGN HOLDINGS, LLC

By: _____
Name: Alice G. Givens
Title: Chief Legal, Ethics and Compliance Officer

[*Signature Page to First Amendment*]