**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THE DEBTORS RESERVE THE RIGHT TO AMEND, SUPPLEMENT, OR OTHERWISE MODIFY THIS DISCLOSURE STATEMENT PRIOR TO AND UP TO THE DATE OF SUCH HEARING.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **LL FLOORING HOLDINGS, INC.**, *et al.*, | **Case No. 24-11680 (BLS)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**DISCLOSURE STATEMENT FOR THE AMENDED JOINT CHAPTER 11 PLAN
OF LIQUIDATION FOR LL FLOORING HOLDINGS, INC.
AND ITS AFFILIATED DEBTORS**

**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP**

Lisa Laukitis (admitted *pro hac vice*)
Elizabeth M. Downing (admitted *pro hac vice*)
Angeline J. Hwang (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

Edmon L. Morton (I.D. No. 3856)
Kenneth J. Enos (I.D. No. 4544)
Elizabeth S. Justison (I.D. No. 5911)
S. Alexander Faris (I.D. No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

---

[1]    The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: LL Flooring Holdings, Inc. (0817); LL Flooring, Inc. (9199); Lumber Liquidators Leasing, LLC (N/A); LL Flooring Services, LLC (5960); and Lumber Liquidators Foreign Holdings, LLC (4568).  The address of the Debtors' corporate headquarters is 4901 Bakers Mill Lane, Richmond, VA 23230.

**DISCLOSURE STATEMENT DATED NOVEMBER 4, 2024**

\*        \*        \*

All creditors are encouraged to read and carefully consider this Disclosure Statement, including the Plan, and the matters described under "Risk Factors" in Article XV prior to submitting ballots in response to this solicitation.  This Disclosure Statement is being delivered to you because you are the holder of, or have otherwise asserted, a Claim or Claims against, or Interests in, LL Flooring Holdings, Inc. ("<u>LL Flooring</u>") and its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>").

\*        \*        \*

The Debtors believe that the *Amended Joint Chapter 11 Plan of Liquidation for LL Flooring Holdings, Inc. and Its Affiliated Debtors* (the "<u>Plan</u>") is in the best interests of creditors and other stakeholders.[2]  All claimants entitled to vote thereon are urged to vote in favor of the Plan.  A summary of the voting instructions is set forth in Article I.F.2.  More detailed instructions are included in the ballots distributed to the creditors entitled to vote on the Plan.  To be counted, your ballot must be duly completed, executed, and received by the Debtors' voting, notice, and claims agent, Stretto, Inc. (the "<u>Notice and Claims Agent</u>") by 4:00 p.m., prevailing Eastern Time, on December 11, 2024 (the "<u>Voting Deadline</u>"), unless extended.

\*        \*        \*

All of the projected Recoveries (as defined in Article I.F.8) to creditors are based upon the analysis performed by the Debtors and their professionals.  Although the Debtors have made every effort to verify the accuracy of the information presented herein and in the exhibits attached hereto, the Debtors cannot make any representations or warranties regarding the accuracy of the information.

\*        \*        \*

Although the Debtors have made every effort to ensure that this summary provides adequate information with respect to the Plan, it does not purport to be complete and is qualified to the extent it does not set forth the entire text of the Plan.  If there is any inconsistency between the Plan and the summary of the Plan contained in this Disclosure Statement, the Plan shall control.  Accordingly, each Holder of a Claim or Interest should review the Plan in its entirety.

\*        \*        \*

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**The Confirmation and the Effective Date of the proposed Plan are subject to material conditions precedent.  *See* Article X.  There is no assurance that these conditions will be satisfied or waived.**

\*          \*          \*

**The Plan contains release provisions and provides that Holders of Impaired General Unsecured Claims in Class 3 entitled to vote to accept or reject the Plan will be Releasing Parties if they (i) submit a Plan ballot either voting to accept or reject the Plan or abstaining from voting on the Plan <u>and</u> (ii) indicate their election to "opt-in" to the release through the Release Opt-In Election included in the Plan ballot.**

\*          \*          \*

No person is authorized by the Debtors in connection with the Plan or the solicitation of acceptances of the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein.  If such information or representation is given or made, it may not be relied upon as having been authorized by the Debtors.  The Debtors will make available to creditors entitled to vote on the Plan such additional information as may be required by applicable law prior to the Voting Deadline.

\*          \*          \*

The summaries of the Plan and other documents contained in this Disclosure Statement are qualified by reference to the Plan itself, the exhibits thereto, and documents described therein.  In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan will control.

\*          \*          \*

The information contained in this Disclosure Statement, including the information regarding the history, business and operations of the Debtors, the historical and projected financial information regarding the Debtors, and the liquidation analysis relating to the Debtors, is included for purposes of soliciting acceptances of the Plan, but, as to contested matters and adversary proceedings, is not to be construed as admissions or stipulations, but rather as statements made in settlement negotiations.

\*          \*          \*

This Disclosure Statement contains forward-looking statements based primarily on the current expectations of the Debtors and projections about future events and financial trends affecting the financial condition of the Debtors.  The words "believe," "may," "estimate," "continue," "anticipate," "intend," "expect," and similar expressions identify these forward-looking statements.  These forward-looking statements are subject to a number of risks, uncertainties, and assumptions, including those described below under the caption "Risk Factors" in Article XV.  In light of these risks and uncertainties, the forward-looking events and circumstances discussed in this Disclosure Statement may not occur, and actual results could differ materially from those anticipated in the forward-looking statements.  The Debtors do not undertake

any obligation to update or revise publicly any forward-looking statements, whether as a result of new information, future events, or otherwise.

*       *       *

   This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission (the "<u>SEC</u>"), any state securities commission, any securities exchange or association; nor has the SEC, any state securities commission, any securities exchange, or association passed upon the accuracy or adequacy of the statements contained herein.

## TABLE OF CONTENTS

I. OVERVIEW OF THE PLAN ......................................................................................... 1

  A.  Introduction ............................................................................................................ 1

  B.  The Plan .................................................................................................................. 1

  C.  The Adequacy of This Disclosure Statement ......................................................... 2

  D.  Summary of Classes and Treatment of Claims or Interests .................................... 3

  E.  Solicitation Package ............................................................................................... 4

  F.  Voting and Confirmation of the Plan ...................................................................... 5

     1.  Certain Factors to be Considered Prior to Voting ......................................... 5

     2.  Voting Procedures and Requirements ........................................................... 6

     3.  Plan Objection Deadline .............................................................................. 6

     4.  Combined Confirmation Hearing ................................................................. 7

     5.  Confirmation ............................................................................................... 7

     6.  Acceptance .................................................................................................. 8

     7.  Feasibility .................................................................................................... 8

     8.  Best Interests Test; Liquidation Analysis ..................................................... 9

     9.  Alternatives to Confirmation and Consummation of the Plan ....................... 9

  G.  Releases by the Debtors Set Forth in the Plan ..................................................... 10

II. HISTORY OF THE DEBTORS ................................................................................ 10

  A.  Organizational Structure ...................................................................................... 10

  B.  Business Overview ............................................................................................... 11

     1.  Background ................................................................................................ 11

     2.  The Debtors' Employees ............................................................................ 11

  C.  Prepetition Capital Structure ................................................................................ 11

     1.  Secured Indebtedness ................................................................................. 11

     2.  Circumstances Giving Rise to the Chapter 11 Cases ................................... 12

III. THE CHAPTER 11 CASES ..................................................................................... 16

  A.  First Day Motions and Orders .............................................................................. 16

  B.  The Debtors' Sale Processes and Related Motions ............................................... 18

  C.  The Liquidation Pivot, the F9 Sale, and the Sandston DC Sale ........................... 19

  D.  Other Procedural and Administrative Motions ..................................................... 20

  E.  Appointment of the Official Committee of General Unsecured Creditors ............ 22

  F.  Schedules and Bar Dates ...................................................................................... 22

IV.  TREATMENT OF CLAIMS AND INTERESTS .................................................................. 23

    A.  Administrative Claims, Priority Tax Claims, and Statutory Fees ...................................... 23

    B.  Classified Claims and Interests ...................................................................................... 25

    C.  Special Provisions Governing Unimpaired Claims ........................................................ 28

    D.  Elimination of Vacant Classes ...................................................................................... 28

    E.  Controversy Concerning Impairment ............................................................................ 28

    F.  Subordination of Claims ............................................................................................... 28

    G.  Reservation of Rights Regarding Claims ...................................................................... 28

    H.  Postpetition Interest on Claims .................................................................................... 29

    I.  Insurance ...................................................................................................................... 29

VI.  MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................... 29

    A.  Sources of Consideration for Plan Distributions ........................................................... 29

    B.  Vesting of Assets ......................................................................................................... 29

    C.  Liquidating Trust ......................................................................................................... 29

        1.  Establishment of the Liquidating Trust.................................................................. 29

        2.  Transfer of the Liquidating Trust Assets ............................................................... 29

        3.  Liquidating Trust Agreement................................................................................. 30

        4.  Purpose of the Liquidating Trust ........................................................................... 30

        5.  Liquidating Trustee ............................................................................................... 30

        6.  Termination of the Liquidating Trust ..................................................................... 32

    D.  U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust....................... 33

    E.  Preservation of Causes of Action.................................................................................. 34

    F.  Corporate Action.......................................................................................................... 34

        1.  Transfer of Assets and Assumption of Liabilities.................................................. 34

        2.  Dissolution of the Debtors; Removal of Directors and Officers; Termination of
            Employees...................................................................................................... 34

    G.  Books and Records ....................................................................................................... 35

    H.  Plan Transactions ......................................................................................................... 35

    I.  Effectuating Documents and Further Transactions......................................................... 35

    J.  Section 1146 Exemption from Certain Taxes and Fees ................................................. 36

    K.  Sale Orders................................................................................................................... 36

    L.  Authority to Act ........................................................................................................... 36

    M.  No Revesting of Liquidating Trust Assets..................................................................... 36

    N.  Settlement of Claims and Controversies........................................................................ 36

VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES .................................................................................. 37

   A.   General Treatment ........................................................................................ 37

   B.   Rejection Damages Claims ........................................................................... 37

   C.   Preexisting Obligations to Debtors Under Executory Contracts or Unexpired Leases .... 38

   D.   Insurance Preservation ................................................................................. 38

VIII.      PROVISIONS GOVERNING DISTRIBUTIONS ..................................... 38

   A.   Distribution Record Date ............................................................................. 38

   B.   Withholdings ................................................................................................ 39

   C.   Date of Distributions ................................................................................... 39

   D.   Disbursing Agent ........................................................................................ 39

   E.   Powers of Disbursing Agent ........................................................................ 39

   F.   Surrender of Instruments .............................................................................. 39

   G.   IRS Forms ................................................................................................... 40

   H.   Delivery of Distributions ............................................................................. 40

   I.   Manner of Payment ..................................................................................... 41

   J.   Foreign Currency Exchange Rate ................................................................ 41

   K.   Setoffs and Recoupments ............................................................................ 41

   L.   Minimum Distributions ............................................................................... 41

   M.   Allocation of Distributions Between Principal and Interest .......................... 41

   N.   Distributions Free and Clear ........................................................................ 42

   O.   Claims Paid or Payable by Third Parties ..................................................... 42

      1.   Claims Paid by Third Parties ................................................................ 42

      2.   Claims Payable by Third Parties ........................................................... 42

      3.   Applicability of Insurance Policies ....................................................... 42

IX.  PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS ....... 43

   A.   Allowance of Claims ................................................................................... 43

   B.   Claims Administration Responsibilities ....................................................... 43

   C.   Estimation of Claims ................................................................................... 43

   D.   Adjustment to Claims Without Objection ..................................................... 43

   E.   Time to File Objections to Claims ................................................................ 44

   F.   Disallowance of Late Claims ....................................................................... 44

   G.   Disputed Claims .......................................................................................... 44

   H.   No Distributions Pending Allowance ........................................................... 44

   I.   Distributions After Allowance ..................................................................... 44

X.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE...............................................45

   A.   Conditions to Effective Date..................................................................................45

   B.   Waiver of Conditions to Effective Date................................................................45

   C.   Effect of Vacatur of the Confirmation Order........................................................45

   D.   Votes Solicited in Good Faith...............................................................................46

XI.   RELEASE, INJUNCTION, AND RELATED PROVISIONS ..........................................46

   A.   Releases by the Debtor..........................................................................................46

   B.   Releases by Holders of Claims .............................................................................47

   C.   Exculpation ...........................................................................................................48

   D.   Injunction ..............................................................................................................48

   E.   Waiver of Statutory Limitations on Releases .......................................................49

   F.   No Discharge .........................................................................................................50

   G.   Release of Liens ....................................................................................................50

XII. RETENTION OF JURISDICTION ....................................................................................50

XIII.   MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ................52

   A.   Modification of the Plan .......................................................................................52

   B.   Other Amendments ...............................................................................................53

   C.   Effect of Confirmation on Modifications .............................................................53

   D.   Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date .......53

XIV.   MISCELLANEOUS PROVISIONS ...............................................................................53

   A.   Debtors' Operation from Combined Confirmation Hearing Through Effective Date......53

   B.   Immediate Binding Effect.....................................................................................53

   C.   Additional Documents ..........................................................................................54

   D.   Substantial Consummation ...................................................................................54

   E.   Reservation of Rights............................................................................................54

   F.   Successors and Assigns.........................................................................................54

   G.   Determination of Tax Liabilities...........................................................................54

   H.   Dissolution of the Committee ...............................................................................54

   I.   Notices ...................................................................................................................55

   J.   Term of Injunctions or Stays.................................................................................56

   K.   Entire Agreement ..................................................................................................56

   L.   Plan Supplement Exhibits .....................................................................................56

   M.   Governing Law .....................................................................................................56

   N.   Non-Severability of Plan Provision Upon Confirmation......................................57

O.  Closing of Chapter 11 Cases ................................................................. 57

XV. RISK FACTORS ............................................................................... 57

A.  Plan Confirmation ........................................................................... 57

B.  The Effective Date May Not Occur .................................................. 58

C.  Allowance of Claims ........................................................................ 58

D.  Risk Factors That May Affect Recoveries Available to Holders of Allowed Claims Under the Plan ................................................................................................. 58

    1.  The Amounts of Allowed Claims May Adversely Affect the Recovery of Some Holders of Allowed Claims ................................................................................ 58

    2.  Any Valuation of Any Assets to be Distributed Under the Plan is Speculative ........... 58

    3.  The Debtors Cannot Guarantee the Timing of Distributions ........................................ 58

    4.  Certain Tax Implications of the Debtors' Bankruptcy ................................................. 58

    5.  Liquidating Trust's Expenses ...................................................................................... 59

E.  Risk Factors Relating to Securities Law ........................................... 59

    1.  Uncertainty of Value ................................................................................................... 59

F.  Disclosure Statement Disclaimer ..................................................... 60

    1.  The Financial Information Contained in This Disclosure Statement Has Not Been Audited ...................................................................................................................... 60

    2.  Information Contained in This Disclosure Statement is for Soliciting Votes .............. 60

    3.  This Disclosure Statement was not Reviewed or Approved by the SEC ..................... 60

    4.  This Disclosure Statement May Contain Forward Looking Statements....................... 60

    5.  No Legal or Tax Advice Is Provided to You by This Disclosure Statement ................ 60

    6.  No Admissions Made ................................................................................................... 61

    7.  Failure to Identify Potential Objections ...................................................................... 61

    8.  No Waiver of Right to Object or Right to Recover Transfers and Assets .................... 61

    9.  Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors ..................................................................................................................... 61

    10. Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update............... 61

    11. No Representations Outside This Disclosure Statement are Authorized....................... 62

XVI.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN ................................................................................. 62

A.  CONSEQUENCES TO THE DEBTORS ........................................... 63

    1.  Limitations on NOL Carryforwards and Other Tax Attributes ..................................... 63

    2.  Transfer of Assets to the Liquidating Trust ................................................................. 63

    3.  Cancellation of Debt .................................................................................................... 64

B.  CONSEQUENCES TO HOLDERS OF GENERAL UNSECURED CLAIMS .............. 64

　　　1.　General Consequences to Holders of General Unsecured Claims in Class 3 ................ 65

　　　2.　Distributions in Respect of Accrued But Unpaid Interest ............................................ 66

　　C.　TAX TREATMENT OF THE LIQUIDATING TRUST AND HOLDERS OF BENEFICIAL INTERESTS THEREIN ..................................................................................... 66

　　　1.　General "Liquidating Trust" Tax Reporting by the Liquidating Trust and their Beneficiaries ................................................................................................................ 66

　　　2.　Tax Reporting for Assets Allocable to Disputed Claims ............................................ 67

　　D.　WITHHOLDING ON DISTRIBUTIONS AND INFORMATION REPORTING .......... 68

XVII.　ADDITIONAL INFORMATION ................................................................................. 69

XVIII.　RECOMMENDATION AND CONCLUSION ........................................................... 69

## <u>EXHIBITS</u>

Exhibit A        *Amended Joint Chapter 11 Plan of Liquidation for LL Flooring Holdings, Inc. and Its Affiliated Debtors*

Exhibit B        Liquidation Analysis

## I.     OVERVIEW OF THE PLAN

---

**RECOMMENDATION BY THE DEBTORS AND THE COMMITTEE**

It is the Debtors' and the Committee's opinion that Confirmation and implementation of the Plan is in the best interests of the Estates and the Debtors' creditors.  Therefore, the Debtors and the Committee recommend that all creditors whose votes are being solicited submit a ballot to **accept** the Plan.

---

### A.     Introduction

The following is a brief overview of certain material provisions of the Plan.  This overview is qualified by reference to the provisions of the Plan, which is attached hereto as **Exhibit A**, and the exhibits thereto, as amended from time to time.  In the event that any inconsistency or conflict exists between this Disclosure Statement and the Plan, the terms of the Plan will control.  The requirements for Confirmation, including the vote of creditors entitled to vote on the Plan and certain of the statutory findings that must be made by the Bankruptcy Court for a plan to be confirmed, are set forth in Article I.F.  Confirmation of the Plan and the occurrence of the Effective Date are subject to certain conditions, which are summarized in Article X.  There is no assurance that these conditions will be satisfied or waived.  At the Combined Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a chapter 11 plan are that the plan: (a) is accepted by the requisite holders of claims or interests in impaired classes under the plan; (b) is in the "best interests" of each holder of a claim or interest in each impaired class under the plan; (c) is feasible; and (d) complies with the applicable provisions of the Bankruptcy Code.  In this instance, only Holders of Claims in Class 3 (General Unsecured Claims) are entitled to vote to accept or reject the Plan.  Because Classes 4 (Subordinated Claims) and 5 (Interests) are Impaired, but will not receive distributions under the Plan, these Classes are deemed to reject the Plan.  Because Classes 1 (Secured Claims) and 2 (Other Priority Claims) are Unimpaired, they are presumed to accept the Plan.  *See* Article I.F.5 for a discussion of the Bankruptcy Code's requirements for Plan Confirmation.

### B.     The Plan

Each of the Debtors filed for chapter 11 bankruptcy protection on August 11, 2024 (collectively, the "Chapter 11 Cases").  The Debtors sold, or are in the process of selling, substantially all of their assets during the Chapter 11 Cases, including through (i) the sale of their Sandston distribution center to SNA NE, LLC ("SNA"), (ii) the going-concern sale to LumLiQ2, LLC, as purchaser, and F9 Investments, LLC, as guarantor ("F9 Investments" and, together with LumLiQ2, LLC, "F9"), and (iii) the ongoing store closing sales operated by Hilco Merchant Resources, LLC (the "Agent" or "Hilco").  *See* Docket Nos. 237, 336 & 337.  The sale proceeds received thus far were applied in full satisfaction of the claims of the Prepetition ABL Lenders and the Prepetition DIP Lenders.

The next phase of the Chapter 11 Cases is the Confirmation and consummation of the Plan, pursuant to which the Debtors will (a) pay Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Class 1 Secured Claims, and Allowed Class 2 Other Priority Claims in full, or otherwise render such Claims Unimpaired, (b) appoint the Liquidating Trustee pursuant to the mechanics set forth in the Plan, and (c) establish a Liquidating Trust to distribute the remaining Cash of the Debtors and the proceeds of the Liquidating Trust Assets to Holders of Allowed Class 3 General Unsecured Claims.

As set forth in the Plan, the assets being transferred to the Liquidating Trust include: (a) the Debtors' aggregate amount of Cash on hand as of the Effective Date, to be determined following (i) payment or otherwise reserving cash for payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims; and (ii) funding of the Professional Fee Reserve; and (b) all other assets of each of the Debtors, including, but not limited to, (i) all tangible and intangible assets, (ii) the Retained Causes of Action, (iii) the Debtors' books and records, including, without limitation, all documents, communications, and information of the Debtors, including, without limitation, such documents, communications, and information protected by the attorney-client privilege, the work-product privilege, and any other applicable evidentiary privileges.

The Holders of Allowed Class 3 General Unsecured Claims will be the beneficiaries of the Liquidating Trust, and will receive their pro rata share of the Liquidating Trust Assets in satisfaction of their respective Claims. Holders of Class 4 Subordinated Claims and Class 5 Interests are not entitled to any recovery under the Plan.

A chapter 11 bankruptcy case permits a debtor to resolve its affairs and distribute the proceeds of its estate pursuant to a confirmed chapter 11 plan. To that end, the Debtors filed the Plan, the terms of which are more fully described herein, contemporaneously with the filing of this Disclosure Statement. The Plan contemplates a liquidation of the Debtors and their Estates and is therefore referred to as a "plan of liquidation." The primary objective of the Plan is to maximize the value of recoveries to Holders of Allowed Claims and to distribute all property of the Estates that is or becomes available for distribution in accordance with the Bankruptcy Code and Plan. The Debtors assert that the Plan accomplishes this objective and is in the best interests of their Estates, and therefore seek to confirm the Plan. The Plan classifies Holders of Claims or Interests according to the type and nature of the Holder's Claim or Interest, as more fully described below.

The Plan designates the Classes of Claims against, and Interests in, the Debtors and specifies which Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan. Claims against the Debtors and Interests in the Debtors are classified in five separate Classes, as described herein.

### C.    The Adequacy of This Disclosure Statement

Before soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a written disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan. The Debtors are providing this Disclosure

Statement in accordance with those requirements.  This Disclosure Statement includes, without limitation, information about:

- the Plan, including a summary, the procedures for voting on the Plan, and the projected recoveries thereunder (Article I hereof);

- the statutory requirements for confirming the Plan (Article I.F hereof);

- the Debtors' organizational structure, business operations, and financial obligations (Article II hereof);

- the events leading to the filing of the Debtors' Chapter 11 Cases (Article II.C hereof);

- the major events during these Chapter 11 Cases, including significant pleadings filed during the Debtors' Chapter 11 Cases and certain relief granted by the Bankruptcy Court (Article III hereof);

- certain risk factors that Holders of Claims should consider before voting to accept or reject the Plan (Article XV hereof);

- the classification and treatment of Claims or Interests under the Plan, including identification of the Holders of Claims entitled to vote on the Plan (Article IV hereof);

- the means for implementation of the Plan, the provisions governing distributions to certain Holders of Claims pursuant to the Plan, the procedures for resolving Disputed Claims, and other significant aspects of the Plan (Article VI hereof);

- the injunction, releases, and exculpation contemplated by the Plan (Article XI hereof); and

- certain United States federal income tax consequences of the Plan (Article XVI hereof).

### D.    Summary of Classes and Treatment of Claims or Interests

The classification of Claims or Interests, the estimated aggregate amount of Claims in each Class, and the amount and nature of distributions to Holders of Claims or Interests in each Class are summarized in the table below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.  For a discussion of certain additional matters related to Administrative Claims and Priority Tax Claims, see Article IV.A of the Plan.

Each amount designated in the table below as "Estimated Percentage Recovery" for each Class is the quotient of the estimated Cash or other Liquidating Trust Assets to be distributed to Holders of Allowed Claims in that Class, divided by the estimated aggregate amount of Allowed Claims in that Class.  In determining those amounts, the Debtors have assumed that the Plan is consummated as described herein.

These calculations do not include any value attributed to recoveries by the Liquidating Trust on account of the Retained Causes of Action. The Debtors are not in a position to provide an estimated value for recoveries for the Retained Causes of Action.

For a discussion of various factors that could materially affect the amount of the Liquidating Trust's assets to be distributed pursuant to the Plan, see Article XV.

| CLASS | CLAIM OR INTEREST | STATUS/ ENTITLED TO VOTE | ESTIMATED ALLOWED CLAIMS OR INTERESTS | ESTIMATED RECOVERY (%) |
|---|---|---|---|---|
| **Class 1** | Secured Claims | **Unimpaired** Presumed to Accept the Plan. Not Entitled to Vote. | $10,000,000 | 100% |
| **Class 2** | Other Priority Claims | **Unimpaired** Presumed to Accept the Plan. Not Entitled to Vote. | $3,000,000 | 100% |
| **Class 3** | General Unsecured Claims | **Impaired** Entitled to Vote. | $125,000,000 to $185,500,000 | 0% – 7%[3] |
| **Class 4** | Subordinated Claims | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | $0 | N/A |
| **Class 5** | Interests | **Impaired** Deemed to Reject the Plan. Not Entitled to Vote. | $0 | N/A |

### E.      Solicitation Package

The package of materials (the "Solicitation Package") to be sent to Holders of General Unsecured Claims in Class 3 will contain:

---

[3]    There are a number of factors that could affect the percentage of recovery to Holders of General Unsecured Claims, such as the fact that the General Bar Date (as defined below) recently passed on November 1, 2024, and the Debtors are engaged in ongoing claims reconciliation that will be continued and completed by the Liquidating Trustee. In addition, it is possible that additional contingent, unliquidated, and disputed claims will be asserted against the Debtors. The Debtors also hold various potential litigation claims that will be assigned to the Liquidating Trust for the benefit of Holders of General Unsecured Claims. Given the uncertainty due to the aforementioned items, the analysis of the percentage of recovery to Holders of General Unsecured Claims is currently an estimate that may be lower or higher than set forth in the Plan.

- a cover letter describing:  (a) the contents of the Solicitation Package; (b) information about how to obtain access, free of charge, to the Plan, the Plan Supplement, this Disclosure Statement, and the Disclosure Statement Order, together with the exhibits thereto, on the case administration website; and (c) information about how to obtain, free of charge, paper copies of any of the documents included in the Solicitation Package;

- a letter from the Committee in support of the Plan;

- a notice of the Combined Confirmation Hearing;

- an appropriate form of ballot, instructions on how to complete the ballot, including the selection of the Release Opt-In Election, and a pre-paid, preaddressed ballot return envelope and such other materials as the Bankruptcy Court may direct; and

- any supplemental documents filed with the Bankruptcy Court and any documents that the Bankruptcy Court orders to be included in the Solicitation Package.

Holders of Claims or Interests in Classes 1, 2, 4, and 5 will receive a notice informing such Holders that they are not entitled to vote under the terms of the Plan.

The Debtors will cause the Notice and Claims Agent to complete the distribution of the Solicitation Packages to Holders of Claims in the Voting Class within two Business Days after entry of the Disclosure Statement Order.

The Solicitation Package may also be obtained free of charge from Stretto, Inc., the Debtors' Notice and Claims Agent by: (1) visiting https://cases.stretto.com/llflooring/; (2) emailing the Notice and Claims Agent at TeamLLFlooring@stretto.com; or (3) calling (855) 314-5841 (toll free).

### F.    Voting and Confirmation of the Plan

The Disclosure Statement Order, among other things, (1) conditionally approved this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and (2) established Plan voting tabulation procedures, which include certain vote tabulation rules that temporarily allow or disallow Claims for voting purposes (the "Tabulation Rules") pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3018.

### 1.    Certain Factors to be Considered Prior to Voting

There are a variety of factors that all Holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan.  These factors may impact recoveries under the Plan, including:

- the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and this Disclosure Statement;

- although the Debtors assert that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtors can neither assure such compliance nor that the Bankruptcy Court will confirm the Plan; and

- any delays of either Confirmation or consummation could result in, among other things, increased Administrative Claims or Professional Fee Claims that would likely reduce the recoveries to the Holders of Claims.

### 2.    Voting Procedures and Requirements

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan of liquidation or reorganization are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity. Classes of Claims or Interests that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, Classes of Claims or Interests that will not receive distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan. The classification of Claims or Interests is summarized, together with an indication of whether each Class of Claims or Interests is impaired or unimpaired, in Article I.D. **November 1, 2024** shall serve as the voting record date for purposes of determining which Holders of Filed or scheduled General Unsecured Claims in Class 3 are entitled to receive a Solicitation Package.

**Voting on the Plan by each Holder of a General Unsecured Claim in Class 3 is important. Please carefully follow all of the instructions contained on the ballot(s) provided to you. All ballots must be completed and returned in accordance with the instructions provided. To be counted, your ballot or ballots must be (1) received by <u>4:00 p.m., prevailing Eastern Time, on December 11, 2024</u> (the "<u>Voting Deadline</u>") at the address set forth on the preaddressed envelope provided to you, or (2) submitted electronically via the Notice and Claims Agent's e-ballot portal https://cases.stretto.com/llflooring/ by the Voting Deadline.**

**If you are entitled to vote and you did not receive a ballot, received a damaged ballot, or lost your ballot, please call or email the Notice and Claims Agent, at (855) 314-5841 (toll free) or TeamLLFlooring@stretto.com. Also, this Disclosure Statement, the Plan, and all of the related exhibits and schedules, including the Plan Supplement, are available, without charge, to any party in interest at https://cases.stretto.com/llflooring/.**

**Ballots cannot be transmitted orally, by email or by facsimile. Accordingly, you are urged to return your signed and completed ballot, by hand delivery, overnight service, regular U.S. mail, or electronically via the Notice and Claims Agent's e-ballot portal https://cases.stretto.com/llflooring/ promptly, so that it is received by the Notice and Claims Agent before the Voting Deadline.**

### 3.    Plan Objection Deadline

The deadline to file objections to the Confirmation of the Plan or final approval of the adequacy of the disclosures contained in this Disclosure Statement, if any ("<u>Confirmation</u>

Objections") is **December 11, 2024, at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").  All Confirmation Objections must be in writing and must specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim or Interest held by the objector.  Any Confirmation Objection must be filed with the Bankruptcy Court and served on the following parties in accordance with the Disclosure Statement Order on or before the Objection Deadline: (a) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001, Attn.: Lisa Laukitis, Esq. (Lisa.Laukitis@skadden.com), Elizabeth M. Downing, Esq. (Elizabeth.Downing@skadden.com), and Angeline J. Hwang, Esq. (Angeline.Hwang@skadden.com); (b) co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  Edmon L. Morton, Esq. (emorton@ycst.com), Kenneth J. Enos, Esq. (kenos@ycst.com), Elizabeth S. Justison, Esq. (ejustison@ycst.com) and S. Alexander Faris, Esq. (afaris@ycst.com), (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (d) counsel to the Committee, Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: Justin R. Alberto (jalberto@coleschotz.com), Patrick J. Reilly (preilly@coleschotz.com), Stacy L. Newman (snewman@coleschotz.com), Michael E. Fitzpatrick (mfitzpatrick@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com).

### 4.    Combined Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.  The Bankruptcy Court entered the Disclosure Statement Order, which, among other things, scheduled a Combined Confirmation Hearing to consider confirmation of the Plan and final approval of the adequacy of the disclosures contained in this Disclosure Statement. The Combined Confirmation Hearing will commence on **December 18, 2024 at 11:00 a.m. (prevailing Eastern Time)**, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market St, Sixth Floor, Courtroom 1, Wilmington, Delaware 19801.

The Combined Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on the Entities who have filed Confirmation Objections, without further notice to other parties in interest.  The Bankruptcy Court, in its discretion and before the Combined Confirmation Hearing, may put in place additional procedures governing the Combined Confirmation Hearing.  The Plan may be modified in accordance with its terms, if necessary, before, during or as a result of the Combined Confirmation Hearing, without further notice to parties in interest.

### 5.    Confirmation

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtors, including that:[4]

- the Plan has classified Claims and Interests in a permissible manner;

- the Plan complies with the applicable provisions of the Bankruptcy Code;

- the Debtors have complied with the applicable provisions of the Bankruptcy Code;

- the Debtors, as proponent of the Plan, have proposed the Plan in good faith and not by any means forbidden by law;

- the disclosure required by section 1125 of the Bankruptcy Code has been made;

- the Plan has been accepted by the requisite votes, except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code, of creditors and equity interest holders and the Plan is feasible;

- all Statutory Fees due and owing have been paid, or the Plan provides for the payment thereof, on the Effective Date; and

- the Plan is in the "best interests" of all Holders of Claims or Interests in an impaired Class by providing to those Holders on account of their Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that each Holder would receive or retain in a chapter 7 liquidation, unless each Holder of a Claim or Interest in that Class has accepted the Plan.

### 6.    Acceptance

A plan is accepted by an impaired class of claims if holders of at least two-thirds in dollar amount and a majority in number of claims of that class vote to accept the plan.  Only those holders of claims who actually vote (and are entitled to vote) to accept or to reject a plan count in this tabulation.

### 7.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the Debtors (unless liquidation or reorganization is proposed in the Plan).  Because the Plan proposes a liquidation of all of the Debtors' assets, for purposes of this test the Debtors have analyzed the ability of the Liquidating Trustee to meet its obligations under the Plan.  Based on the Debtors' analysis, including the information contained in **Exhibit B** regarding recoveries available to Holders of Allowed Claims under the Plan, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Plan.  Therefore, the Debtors

---

[4]    The descriptions contained herein are only a summary of certain confirmation requirements; they are not exhaustive of all confirmation requirements and should not be construed as such.

believe that its liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

### 8.    Best Interests Test; Liquidation Analysis

Notwithstanding acceptance of the Plan by each impaired Class, to confirm the Plan, the Court must determine that the Plan is in the best interests of each Holder of a Claim or Interest in any impaired Class who has not voted to accept the Plan.  Accordingly, if an impaired Class does not unanimously accept the Plan, the "best interests" test requires that the Court find that the Plan provides to each member of that impaired Class a recovery on account of the Holder's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that the Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

Because the Plan proposes a liquidation of all the Debtors' assets, the Debtors have analyzed factors that will impact recoveries (the "Recoveries") available to creditors in each scenario.  These factors include professional fees and expenses, asset disposition expenses, applicable taxes, potential Claims arising during the pendency of the Plan or chapter 7 case and trustee fees and expenses.

The information contained in **Exhibit B** hereto provides a summary of the Recoveries under the Plan and in a chapter 7 liquidation.

In summary, the Debtors have determined that a chapter 7 liquidation would result in diminution in the Recoveries to be realized by Holders of Allowed Claims, as compared to the proposed distributions under the Plan.  Consequently, the Debtors have determined that the Plan will provide a greater ultimate return to Holders of Allowed Claims than would a chapter 7 liquidation of the Debtors.

### 9.    Alternatives to Confirmation and Consummation of the Plan

The Debtors evaluated alternatives to the Plan, including alternative structures and terms of the Plan.  While the Debtors concluded that the Plan is the best alternative and will maximize recoveries by Holders of Allowed Claims, if the Plan is not confirmed, the Debtors, or (subject to the Debtors' exclusive periods under the Bankruptcy Code to file and solicit acceptances of a plan or plans) any other party in interest in the Chapter 11 Cases, could attempt to formulate and propose a different plan.  Further, if no plan under chapter 11 of the Bankruptcy Code can be confirmed, the Chapter 11 Cases may be converted to chapter 7 cases.  In liquidation cases under chapter 7 of the Bankruptcy Code, a trustee would be appointed to liquidate the remaining assets of the Debtors and distribute proceeds to creditors.  The proceeds of the liquidation would be distributed to the respective creditors of the Debtors in accordance with the priorities established by the Bankruptcy Code.  For further discussion of the potential impact on the Debtors of the conversion of the Chapter 11 Cases to chapter 7 liquidation, see Article XV.A of this Disclosure Statement.  The Debtors have determined that Confirmation and consummation of the Plan is preferable to the available alternatives.

G.      **Releases by the Debtors Set Forth in the Plan**

Article XI.A of the Plan provides that each Released Party is deemed released by the Debtors and their Estates from any and all claims and Causes of Action except as set forth therein. The Debtors have determined that applicable law and the facts support those releases and that the Bankruptcy Court can and should approve them.

## II.     HISTORY OF THE DEBTORS

An overview of the Debtors' history is set forth below.  Additional information regarding the Debtors' business, its capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Holly Etlin in Support of the Chapter 11 Petitions and First Day Papers* [Docket No. 11], available at https://cases.stretto.com/LLFlooring/court-docket/.

A.      **Organizational Structure**

The Debtors operate in a holding company structure.  An organizational chart showing the Debtors' corporate structure is below:



B.    **Business Overview**

1.    **Background**

Prior to the F9 Sale and the Sandston DC Sale, discussed more fully below, LL Flooring was one of North America's leading specialty retailers of flooring. LL Flooring was founded by Thomas Sullivan in 1994 as Lumber Liquidators Holdings, Inc. and changed its corporate name to LL Flooring Holdings, Inc. effective January 1, 2022. After being acquired in 2005 by TA Associates, a Boston-based private equity firm, LL Flooring completed its initial public offering in November 2007. The Debtors, along with their non-Debtor affiliates (the "Company"), offered flooring primarily to consumers and flooring professionals like flooring installers, remodelers, and homebuilders on behalf of consumers. The Company also provided in-home delivery, installation services, and accessories, including moldings, underlayment, adhesives, and tools. In addition to its hard surface flooring product assortment, the Company expanded into soft surface flooring and began offering carpet products in 2023. As of July 31, 2024, 263 of the Company's store locations offered carpet.

As of the Petition Date, the Company operated approximately 430 retail stores across forty-six (46) states in the United States. Approximately 219 of those retail stores were sold to F9 as a going-concern and, as of the date hereof, the Debtors have closed approximately 94 of those retail stores and rejected the corresponding Unexpired Leases. The Debtors are conducting liquidation sales at the remaining locations and anticipate concluding such sales by November 30, 2024.

2.    **The Debtors' Employees**

As of the Petition Date, the Company employed approximately 1,960 associates, ninety-nine percent (99%) of whom were full-time, one percent (1%) of whom were part-time, and none of whom were represented by a union. Of these associates, seventy-one percent (71%) worked in retail stores, twenty-two percent (22%) worked in corporate store support infrastructure or similar functions (including call center associates), and seven percent (7%) worked in distribution centers. Employees had the option to participate in certain benefits programs and the opportunity to participate in various charitable and educational programs through the Company. The Company also employed approximately twenty (20) individuals indirectly through the Shanghai Affiliate.

Since the Petition Date, approximately 800 of the Debtors' employees were hired by F9 in connection with the F9 Sale and various other employees were terminated in connection with store closures. As of the date hereof, the Debtors employ approximately 530 employees.

C.    **Prepetition Capital Structure**

1.    **Secured Indebtedness**

As of the Petition Date, the Debtors had approximately $109.6 million in total funded indebtedness, consisting of (i) not less than $99 million in outstanding principal amount under the Prepetition ABL Facility (as defined below); and (ii) $10.6 million in Letters of Credit (as defined

below) issued and outstanding under the Prepetition ABL Agreement.  Following the closing of the Sales, the Debtors paid the total outstanding balance owed under the Prepetition ABL Agreement and, accordingly, those claims are not addressed in the Plan.  The Prepetition ABL Agreement is discussed in more detail below.

### a.    *The Prepetition ABL Facility*

On March 29, 2019, LL Flooring, Inc. entered into that certain Fourth Amended and Restated Credit Agreement (as amended by the First Amendment (as defined below), dated as of April 17, 2020, the Second Amendment (as defined below), dated as of April 30, 2021, and the Third Amendment (as defined below), dated as of December 27, 2022, the "Prepetition ABL Agreement") by and among LL Flooring, Inc., as borrower (the "Company Borrower"), and LL Flooring Services, LLC as additional borrower (together with the Company Borrower, the "ABL Borrowers"), LL Flooring Holdings, Inc., Lumber Liquidators Foreign Holdings, LLC, and Lumber Liquidators Leasing, LLC as guarantors (collectively, and together with the ABL Borrowers, the "ABL Loan Parties"), Bank of America, N.A., as administrative agent and collateral agent (in such capacities, the "Prepetition ABL Agent"), and the lenders party thereto (the "Prepetition ABL Lenders"), pursuant to which the Prepetition ABL Lenders provided revolving loan commitments, letters of credit, and other financial accommodations to the ABL Loan Parties (the "Prepetition ABL Facility").

The Prepetition ABL Facility consisted of an up to $200 million asset-based revolving credit facility, subject to a borrowing base, with the option of the ABL Borrowers to increase the facility to a maximum total amount of $250 million, and was secured by a security interest in and lien on substantially all of the ABL Loan Parties' assets, subject to certain exclusions (the "Collateral").  The Collateral included, among other things, inventory, accounts receivable, and the Sandston DC.

The Prepetition ABL Facility also included a $20 million sublimit for the issuance of letters of credit (the "Letters of Credit"), with Bank of America, N.A, as issuer.  As of the Petition Date, seven (7) Letters of Credit were issued and outstanding, which cover a range of obligations, including but not limited to, securing bonds related to U.S. customs requirements, self insured workers' compensation policies, contractor performance bonds, and vendor accounts payable.

### 2.    **Circumstances Giving Rise to the Chapter 11 Cases**

### a.    *Challenging Macroeconomic Environment*

From January 2017 through June 2022, the Company's financial performance was consistent and was primarily driven by (i) strength in the U.S. housing and repair and remodeling markets; (ii) strong store sales growth in both quantity of goods sold and price per order; (iii) increased gross profit margins due to the Company's shift toward more popular vinyl and engineered products; and (iv) more efficient Company operations.  But 2022 through 2024 brought particular challenges for the flooring sector. Shortly following the onset of the COVID-19 pandemic, the U.S. housing market went into overdrive, with sales of existing homes increasing as consumers moved out of urban environments and into areas with more access to green spaces and nature.  With more consumers forced to stay at home due to government-mandated lockdowns,

consumers used this time to invest in home improvement projects with the excess cash flow typically spent on entertainment and travel, driving a meaningful increase in demand for flooring and flooring-related products.

The unprecedented surge in demand following the COVID-19 pandemic was quickly followed by broad headwinds in the housing, repair, and remodeling markets, primarily driven by (i) a decrease in existing home sales; (ii) elevated interest rates; and (iii) an inflationary environment, all of which drove down home improvement spending and big-ticket discretionary spending, causing a decline in LL Flooring's volume of transactions and average order size. While the Company believes the fundamentals of its business are strong due to aging house stock (*i.e.*, a larger number of homes are outdated and will need remodels and repairs), increased household formation, and rising home values, home improvement spending has continued to be challenged through the first half of 2024.

### b. *Operational Challenges*

In addition to changes in the general macroeconomic environment and the home improvement and flooring industries, regulatory actions and uncertainty and related operational challenges relating to the Company's products have increased costs for the Company. As a result, beginning in 2020, the Company began to struggle to maintain historic levels of liquidity. In addition, labor shortages and rising labor costs generally affected the Company's ability to source and transport its products through 2022.

### c. *2022-2023 Marketing Efforts*

On November 18, 2022, the Company engaged J.P. Morgan Securities LLC ("JPM") as financial advisor in connection with potential sale scenarios and related considerations. Throughout late fall 2022 and early January 2023, the Company engaged with various parties, including private equity sponsors and strategic buyers, which had expressed interest in a transaction with the Company. The Company entered into a confidentiality agreement with a potential strategic buyer in May 2023, which contained a five-month standstill provision, but the potential transaction did not materialize.

In May 2023, LL Flooring also received an unsolicited, non-binding indication of interest from F9 Investments, an entity founded and controlled by Thomas D. Sullivan, founder of Lumber Liquidators. As of the Petition Date, F9 Investments was also the Company's largest shareholder, holding an 8.83% ownership stake in the Company. Between June and November 2023, the Company considered various potential transactions and strategic alternatives involving F9 Investments, some involving multiple transaction counterparties but none were actionable.

On August 14, 2023, in response to receipt of multiple inbound expressions of interest regarding a potential acquisition of the Company, the Company publicly announced that it had initiated an exploration of strategic alternatives, including, among other things, a potential sale, merger or other strategic transaction. In August 2023, JPM again initiated outreach to twenty-one (21) prospective strategic and financial buyers regarding potential interest in an acquisition of the Company. The Company' management team and JPM engaged with multiple

such prospective transaction counterparties, including conducting management presentations and providing potential buyers with access to a confidential data room.

The Company ultimately received two (2) indications of interest in September and, in October 2023, the Company received a non-binding indication of interest from Live Ventures Incorporated ("Live Ventures").  The Company actively engaged with these parties on their offers, but, ultimately, all prospective bidders other than Live Ventures indicated that they did not desire to pursue a strategic transaction involving the Company at that time.  Initial discussions with Live Ventures did not culminate in an actionable transaction given, among other things, concerns about Live Ventures' ability to finance such a transaction at that time. Given no other actionable potential transactions had materialized, the Company pivoted to focus on cost-saving initiatives and alternative transactions.

### d.      *2023-2024 Refinancing and Marketing Efforts*

Despite the Company's efforts to alleviate their liquidity pressures, the Company continued to face financial difficulties in light of ongoing negative macroeconomic issues.  Though prior discussions with F9 Investments had not resulted in an actionable transaction, in November 2023, F9 Investments submitted an updated non-binding indication of interest proposing a transaction with a subsidiary of F9 Investments, Cabinets To Go, accompanied by a notice that Mr. Sullivan intended to nominate three (3) candidates to stand for election to the Board at the Company's 2024 annual shareholders' meeting. In January 2024, the Company and F9 Investments engaged regarding the eligibility of F9 Investments' nominees, John Jason Delves, Mr. Sullivan, and Jill Witter (the "F9 Nominees"), to serve on the Board.  On May 2, 2024, F9 Investments resubmitted its nomination notice to the Company, and on May 9, 2024, the Company recommended that its shareholders vote for the directors who then-currently served on the Board rather than for the F9 Nominees.

As these marketing efforts continued, the Company and its advisors recognized that reaching an agreement with any potential buyer on terms that would result in the most value-maximizing transaction for the Company and its creditors would require additional time.  However, financial pressures on the Company continued to mount and, on June 28, 2024, the Company disclosed on its Form 8-K that it believed it may not have sufficient liquidity to maintain compliance with the minimum liquidity covenant under the Prepetition ABL Agreement by the third quarter of 2024.

Beginning in April 2024, the Company authorized Houlihan Lokey Capital, Inc. ("Houlihan") to commence outreach regarding the potential refinancing of the Prepetition ABL Facility and an additional capital raise. In May 2024, and continuing into June 2024, as the Debtors and Houlihan, AlixPartners, and counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP (together, the "Restructuring Advisors") further engaged with the Prepetition ABL Lenders, Houlihan reached out to twenty-eight (28) potential lenders, ultimately entering into confidentiality agreements with twenty-one (21) parties, who were granted access to a virtual data room to conduct diligence. This marketing and solicitation process was conducted over approximately three (3) months and the Company received eight (8) indications of interest to provide financing. However, none of the proposals received were actionable and, as described

below, the Company was not able to reach agreement with the Prepetition ABL Lenders on refinancing or forbearance terms.

As the Company's liquidity became further compressed, on June 13, 2024, the Company, together with the Restructuring Advisors, began engaging with the Prepetition ABL Lenders to discuss ways to provide the Company with supplemental liquidity by modifying certain provisions of the Prepetition ABL Agreement. These discussions were informed by several liquidity forecasts and considered various ways to increase availability under the Prepetition ABL Agreement (e.g., expanded borrowing capacity on the Company's owned real estate assets). As a result of these discussions, the Prepetition ABL Lenders agreed to provide limited relief but, due in part to regulatory and institutional requirements imposed on the Prepetition ABL Lenders, the negotiations ultimately did not materialize into an agreement with the Prepetition ABL Lenders to provide incremental liquidity.

### e. *Chapter 11 Preparations*

As discussions continued, by late July 2024, the Company's liquidity forecasts indicated that it may not be able to maintain the minimum availability requirement under the Prepetition ABL Agreement. Failure to satisfy that requirement would trigger a requirement to comply with a financial covenant, testing the Company's fixed charge coverage ratio, and an inability to maintain compliance with the financial covenant would have been an event of default under the Prepetition ABL Agreement. Recognizing that to continue operations while they pursued a value-maximizing transaction, the Company would need additional financing and may ultimately need to implement a transaction through chapter 11 proceedings, the Company and the Restructuring Advisors began to simultaneously explore (a) a sale of the Sandston DC; (b) possible buyers willing to act as a stalking horse bidder in the event of a potential 363 sale; and (c) debtor in possession ("DIP") financing arrangements, including re-engaging in negotiations with the Prepetition ABL Lenders regarding potential DIP financing.

At the end of the first quarter of 2024, the Company engaged JLL Capital Markets ("JLL") to assist the Company in pursuing a transaction involving the Sandston DC designed to provide the Company with a short-term liquidity injection while it pursued other strategic options. As the likelihood of a chapter 11 filing increased, in late June 2024, the Company revised the terms of its engagement with Houlihan to include a prepetition marketing process for a potential buyer to serve as a stalking horse bidder in a 363 sale process.

Additionally, starting in July 2024, Houlihan began the process of assisting the Company with seeking potential DIP financing. In parallel to the third party DIP financing outreach process, the Company and the Restructuring Advisors engaged with the Prepetition ABL Lenders on the terms of potential DIP financing. The negotiations were conducted on an arm's length basis, were iterative, and proceeded in good faith, with each party agreeing to certain concessions. The efforts of the Company and the Restructuring Advisors ultimately resulted in the terms of the DIP ABL Facility.

In anticipation of these Chapter 11 Cases, the Company undertook a number of additional measures to ensure a seamless transition into chapter 11, including appointing a special restructuring committee of the Board (the "Restructuring Committee") to oversee the Company's

restructuring process.  Further, the Debtors and its Restructuring Advisors, overseen by the Restructuring Committee, worked to carefully manage liquidity as they prepared for these Chapter 11 Cases and worked towards securing a transaction that would ensure the continuation of the Company's business and maximize value for their stakeholders.

## III.    THE CHAPTER 11 CASES

On August 11, 2024, the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  The Chapter 11 Cases are being jointly administered under the caption *In re LL Flooring Holdings, Inc.*, Case No. 24-11680 (BLS).  Upon commencement of the Chapter 11 Cases, the automatic stay imposed under the Bankruptcy Code, with limited exceptions, enjoined the commencement or continuation of all collection efforts by creditors and the enforcement of liens against property of the Debtors.

### A.    First Day Motions and Orders

On the Petition Date, the Debtors Filed certain "first day" motions and applications (the "First Day Motions") with the Bankruptcy Court seeking certain immediate relief to aid in the efficient administration of the Chapter 11 Cases, and to facilitate the Debtors' transition to debtors-in-possession status.  The Bankruptcy Court held hearings on these first-day motions, and entered a series of customary orders in connection therewith, including the following:

- *Motion of Debtors for Entry of an Order (I) Directing Joint Administration of Cases; (II) Waiving the Requirements of Section 342(c)(1) of the Bankruptcy Code and Bankruptcy Rules 1005 and 2002(n); and (III) Granting Related Relief* (the "Joint Administration Motion") [Docket No. 3].  On August 14, 2024, the Bankruptcy Court entered an order granting the requested relief in the Joint Administration Motion [Docket No. 66].

- *Application of Debtors for Entry of Order (I) Appointing Stretto, Inc. as Claims and Noticing Agent; and (II) Granting Related Relief* (the "Stretto Retention Application") [Docket No. 5].  On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Stretto Retention Application [Docket No. 76].

- *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to (A) File a Consolidated Creditor Matrix in Lieu of Submitting a Separate Creditor Matrix for Each Debtor and Waiving Certain Creditor Matrix Requirements, (B) Omit Certain Customers from the Creditor Matrix, (C) File a Consolidated List of the Debtors' 30 Largest Unsecured Creditors, (D) Redact Certain Personal Identification Information, and (E) Serve Certain Parties in Interest by Email; (II) Establishing Procedures for Notifying Parties of the Commencement of these Cases; (III) Waiving the Requirement to File a List of Equity Security Holders; and (IV) Granting Related Relief* (the "Creditor Matrix Motion") [Docket No. 6].  On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Creditor Matrix Motion [Docket No. 67].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Taxes and Related Obligations and (B) Pay Fees to Certain Tax Service Providers; and (II) Granting Related Relief* (the "Taxes Motion") [Docket No. 7].  On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Taxes Motion on an interim basis [Docket No. 70].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Taxes Motion on a final basis [Docket No. 206].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment; (II) Establishing Procedures for Resolving Objections by Utility Providers; (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Service; (IV) Authorizing Payment of Utilities Service Fees; and (V) Granting Related Relief* (the "Utilities Motion") [Docket No. 8].  On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Utilities Motion on an interim basis [Docket No. 72].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Utilities Motion on a final basis [Docket No. 211].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Existing Insurance Policies, (B) Pay All Insurance Obligations Arising Thereunder, (C) Continue Insurance Financing Program, (D) Maintain Surety Bonds, (E) Continue to Pay Broker Fees; and (II) Granting Related Relief* (the "Insurance Motion") [Docket No. 9].  On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Insurance Motion on an interim basis [Docket No. 73].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Insurance Motion on a final basis [Docket No. 207].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Employee Obligations and (B) Continue Compensation and Benefits Programs; and (II) Granting Related Relief* (the "Employee Wages Motion") [Docket No. 10].  On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Employee Wages Motion on an interim basis [Docket No. 68].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Employee Wages Motion on a final basis [Docket No. 208].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Honor Certain Prepetition Obligations to Customers and (B) Continue Certain Customer Programs in the Ordinary Course of Business; and (II) Granting Related Relief* (the "Customer Programs Motion") [Docket No. 12]. On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Customer Programs Motion on an interim basis [Docket No. 69].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Customer Programs Motion on a final basis [Docket No. 212].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Using Existing Cash Management Systems, Bank Accounts, and Business Forms and (B) Implement Changes to their Cash management System in the Ordinary Course of Business; (II) Granting a Waiver with Respect to the Requirements of 11 U.S.C. § 345(b); and (III) Granting Related Relief* (the "Cash Management Motion") [Docket No. 13]. On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Cash Management Motion on an interim basis [Docket No. 77].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Cash Management Motion on a final basis [Docket No. 225].

- *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors, (B) Lienholders, (C) Import Claimants, and (D) 503(b)(9) Vendors; (II) Authorizing the Debtors to Pay Petition Customs Duties; and (III) Granting Related Relief* (the "Critical Vendors Motion") [Docket No. 14]. On August 14, 2024, the Bankruptcy Court entered an order granting the relief requested in the Critical Vendors Motion on an interim basis [Docket No. 74].  On September 4, 2024, the Bankruptcy Court entered an order granting the relief requested in the Critical Vendors Motion on a final basis [Docket No. 210].

### B.    The Debtors' Sale Processes and Related Motions

The Debtors commenced the Chapter 11 Cases following a prepetition marketing process that spanned over a year.  In the weeks leading up to the Petition Date, the Debtors engaged in advanced discussions with SNA regarding the sale of the Sandston DC.  The Debtors also focused on soliciting two (2) types of proposals from potential bidders with respect to the Debtors' overall business: (a) bids to purchase the Debtors' business (including, at the potential purchaser's option, the Sandston DC) at a going concern value; and (b) alternatively, bids from third party agents to wind down, close, and liquidate all of the Debtors' retail stores and store-level assets should the Debtors be unable to find a viable buyer for the Debtors' going concern business.

The Debtors' prepetition marketing processes yielded significant interest in the Debtors' business.  However, due to liquidity constraints, the Debtors did not have sufficient time to reach a deal.  Accordingly, the Debtors commenced these Chapter 11 Cases to provide the Debtors with time and resources to allow all parties interested in purchasing the Debtors' business to continue engaging with the Debtors, with the goal of finding a stalking horse bidder in the first few weeks of these Chapter 11 Cases and ultimately paving a path forward for a sale of the Debtors' business for the benefit of all stakeholders.

On the Petition Date, the Debtors filed a motion seeking approval of bidding procedures (such motion, the "Bidding Procedures Motion") and reserving the right to name a stalking horse bidder in advance of a hearing on the Bidding Procedures Motion, with a goal of selling the Debtors' business as a going concern (the "Going Concern Sale Process").

To provide sufficient liquidity to administer these Chapter 11 Cases, the Debtors obtained a commitment from the DIP ABL Lenders to provide a debtor in possession financing facility (the

"DIP Facility") to alleviate the Debtors' short-term liquidity issues and allow flexibility as the Debtors pursued the Going Concern Sale Process.  On the Petition Date, the Debtors filed a motion (the "DIP Motion") seeking authority to enter into the DIP Facility, which DIP Motion was approved by the Bankruptcy Court on an interim basis on August 14, 2024 [Docket No. 75] and on a final basis on September 4, 2024 [Docket No. 219].

To further bolster their liquidity position as they navigated the Going Concern Sale Process, the Debtors conducted, and are still conducting, store closing sales at certain underperforming stores. On August 9, 2024, the Debtors entered into that certain Letter Agreement Governing Inventory Disposition (the "Agency Agreement"), by and between Debtor LL Flooring Holdings, Inc. and Hilco, pursuant to which Hilco agreed to assist the Debtors in evaluating and conducting large-scale store closing sales (the "Store Closing Sales" and, together with the Going Concern Sale Process, the "Sale Processes") with respect to such underperforming stores (the "Closing Stores") and preparing each Closing Store for turnover to the applicable landlords. If the Going Concern Sale Process did not ultimately yield a viable buyer for the Debtors' business, the Debtors intended to use the Agent, subject to higher or otherwise better bids from other liquidators, and the Store Closing Sales process set forth in the Agency Agreement to implement an orderly wind-down of the Debtors' remaining stores to maximize recoveries for their stakeholders.

In connection with the DIP Facility, the Debtors agreed to certain milestones (the "Case Milestones") to govern the Sale Processes.  The Case Milestones set (i) August 26, 2024 as the deadline for the Debtors to enter into a stalking horse agreement, in form and substance satisfactory to the DIP ABL Agent, that, among other things, contemplated a going-concern sale for sufficient cash proceeds to repay certain prepetition debt obligations in full (such agreement, a "Stalking Horse Agreement"), which deadline was extended to August 29, 2024 with the consent of the DIP ABL Agent, and (ii) August 27, 2024 as the deadline to file a notice on the docket to notice the commencement of a liquidation of the Debtors' business (the "Liquidation Pivot") should the Debtors be unable to reach a Stalking Horse Agreement on or before August 26, 2024 (as extended to August 29, 2024), which deadline was extended to August 30, 2024 with the consent of the DIP ABL Agent.

### C.    The Liquidation Pivot, the F9 Sale, and the Sandston DC Sale

Despite continuous efforts by the Debtors and their advisors beginning prior to the Petition Date and continuing during these Chapter 11 Cases, the Debtors were unable to reach a Stalking Horse Agreement that, in the Debtors' business judgment and in consultation with their advisors and advisors to the DIP ABL Agent and the Committee, would maximize the value of the Debtors' Estates.  Accordingly, in compliance with the Case Milestones, on August 30, 2024, the Debtors filed a *Notice of Liquidation Pivot* [Docket No. 168], stating their intention to amend the Agency Agreement and have Hilco liquidate all of the Debtors' remaining stores.

Shortly thereafter, on September 4, 2024, F9 filed the *Limited Objection of F9 Investment, LLC, F9 Brands, Inc., and LumliQ2, LLC to the Motions of Debtors [Docket Nos. 15 & 44]* [Docket No. 202], objecting to the Debtors' pivot to a liquidation process and encouraging an extension of the Case Milestones.  Around the same time, F9 submitted a revised going-concern bid to the Debtors that provided greater value to the Debtors and their Estates.  The Debtors

immediately engaged with F9 and, on September 6, 2024, entered into an asset purchase agreement with F9 (the "F9 APA") for a purchase price of $1,000,000 for intellectual property and certain furniture, fixtures and equipment, plus the Inventory Price (as defined therein), plus all Assumed Cure Costs (as defined therein) (the "F9 Going Concern Sale").

On August 30, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing Debtors to Enter into and Perform Under Sandston Distribution Center Purchase Agreement; (II) Authorizing the Private Sale of Certain of Debtors' Assets Free and Clear of Liens, Claims, and Encumbrances; and (III) Granting Related Relief* (the "DC Private Sale Motion") [Docket No. 171], seeking authority to sell the Sandston DC, the land on which the Sandston DC is built, and certain intangible personal property for a purchase price of $104,750,000.

Following a contested hearing on September 16, 2024, the Bankruptcy Court approved the F9 Going Concern Sale and the DC Private Sale Motion. *See* Docket Nos. 336 & 337.

Together, the F9 Sale and the Sandston DC Sale preserved the Debtors' business as a going concern, saved approximately 800 employee jobs, and generated sufficient sale proceeds, along with the proceeds of the ongoing parallel liquidation sales, to repay the obligations under the Prepetition ABL Agreement and the DIP ABL Facility in full and provided a path to satisfying Administrative Claims and facilitating a wind down of the Debtors' Estates through the Plan.

**D.  Other Procedural and Administrative Motions**

Subsequent to the Petition Date, the Debtors also Filed a number of customary motions and applications to (i) retain professionals, (ii) further facilitate the smooth and efficient administration of the Chapter 11 Case, and (iii) reduce the administrative burdens associated herewith, including:

- **Retention Applications**.

    On August 23, 2024, the Debtors Filed the *Application of the Debtors for Entry of an Order (I) Authorizing the Retention and Employment of Skadden, Arps, Slate, Meagher & Flom LLP as Counsel to the Debtors Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 127] (the "Skadden Retention Application"). The Bankruptcy Court entered an order approving the Skadden Retention Application on September 11, 2024 [Docket No. 274].

    On August 23, 2024, the Debtors Filed the *Application of Debtors for Entry of an Order (I) Authorizing the (A) Retention of Ap Services, LLC and (B) Designation of Holly Etlin as Chief Restructuring Officer and Deborah Rieger-Paganis as Deputy Chief Restructuring Officer Effective as of the Petition Date; and (III) Granting Related Relief* [Docket No. 128] (the "APS Retention Application"). The Bankruptcy Court entered an order approving the APS Retention Application on September 11, 2024 [Docket No. 271].

    On August 23, 2024, the Debtors Filed the *Application of Debtors for Entry of an Order (I) Authorizing Debtors to Employ and Retain Stretto, Inc. as Administrative Advisor; and (II) Granting Related Relief* [Docket No. 129] (the "Admin Agent

<u>Retention Application</u>").  The Bankruptcy Court entered an order approving the Admin Agent Retention Application on September 11, 2024 [Docket No. 272].

On August 23, 2024, the Debtors Filed the *Application of Debtors for Entry of an Order (I) Authorizing the Employment and Retention of Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker to the Debtors Effective as of the Petition Date; (II) Waiving Certain Reporting Requirements Pursuant to Local Bankruptcy Rule 2016-2; and (III) Granting Related Relief* [Docket No. 135] (the "<u>Houlihan Retention Application</u>").  The Bankruptcy Court entered an order approving the Houlihan Retention Application on September 11, 2024 [Docket No. 275].

On October 14, 2024, the Debtors Filed the *Application for an Order Authorizing the Retention and Employment of Young Conaway Stargatt & Taylor, LLP as Co-Counsel for the Debtors, Effective as of the Retention Date* [Docket No. 445] (the "<u>Young Conaway Retention Application</u>").  The Bankruptcy Court entered an order approving the Young Conaway Retention Application on November 1, 2024 [Docket No. 519].

- **Ordinary Course Professionals**.  On August 23, 2024, the Debtors Filed the *Motion of Debtors for Entry of an Order (I) Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business; and (II) Granting Related Relief* [Docket No. 125] (the "<u>OCP Motion</u>").  The Bankruptcy Court entered an order approving the OCP Motion on September 4, 2024 [Docket No. 209].

- **Interim Compensation Motion**.  On August 21, 2024, the Debtors Filed the *Motion of Debtors for Entry of an Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* [Docket No. 118] (the "<u>Interim Compensation Motion</u>").  The Bankruptcy Court entered an order approving the Interim Compensation Motion on September 4, 2024 [Docket No. 209].

- **Lease and Contract Procedures**.  On August 21, 2024, the Debtors Filed the *Motion of Debtors for Entry of an Order (I) Authorizing Debtors to (A) Reject Certain Unexpired Leases and (B) Abandon Certain Property; (II) Approving Procedures for (A) Assumption and Rejection of Executory Contracts and Unexpired Leases and (B) Abandonment of Certain Personal Property; and (III) Granting Related Relief* [Docket No. 119] (the "<u>Lease and Contract Procedures Motion</u>").  The Bankruptcy Court entered an order approving the Lease and Contract Procedures Motion [Docket No. 223], which order was subsequently amended on October 17, 2024 [Docket No. 464] (the "<u>Lease and Contract Procedures Order</u>").  In accordance with the Lease and Contract Procedures Order, the Debtors have filed seven omnibus notices rejecting Unexpired Leases and Executory Contracts.  *See* Docket Nos. 385, 386, 415, 439, 450, 451, 470, 476, 477, 489, 490, 514 & 523.

**E.      Appointment of the Official Committee of General Unsecured Creditors**

On August 21, 2024, the U.S. Trustee appointed the following members to the Committee in these Chapter 11 Cases: (a) Singapore Lioncore Industries Pte Ltd.; (b) Ansen Technology Co., Ltd.; (c) Welspun Global Brands Limited; (d) Beasley Flooring Products, Inc.; (e) United Surface Solutions LLC; (f) Novalis US, LLC; and (g) Macon Hardwood LLC.  *See* Docket No. 116.

**F.      Schedules and Bar Dates**

On September 30, 2024, each Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs [Docket No. 391-400].  On October 3, 2024, the Debtors filed the *Notice of Filing of Amended Schedule G of the Schedules of Assets and Liabilities of Debtor LL Flooring, Inc.* [Docket No. 405] and the *Notice of Filing of Amended Schedule G of the Schedules of Assets and Liabilities of Debtor LL Flooring Services, LLC* [Docket No. 406].  On October 31, 2024, LL Flooring filed the *Notice of Filing of Amended Schedule E/F of the Schedules of Assets and Liabilities of Debtor LL Flooring, Inc.* [Docket No. 515]

On September 16, 2024, the Debtors Filed a motion [Docket No. 338] (the "Bar Date Motion") to establish certain deadlines for filing Proofs of Claim against the Debtors.  On October 4, 2024, the Bankruptcy Court entered the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim that arose by Governmental Units, (III) Establishing a Rejection Damages Bar Date, (IV) Establishing an Amended Schedules Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notices of Bar Dates, (VII) Approving Procedures with Respect to Service of the Proposed Notice of Bar Dates, (VIII) Authorizing the Debtors to Serve the Customer Notice by Email, and (IX) Granting Related Relief* [Docket No. 408] (the "Bar Date Order").

The Bar Date Order provides, among other things, that each person or Entity (excluding Governmental Units) that asserts a Claim against the Debtors that arose (or is deemed to have arisen) before the Petition Date, including 503(b)(9) Claims, shall be required to File an original written proof of claim so that such proof of claim is actually received on or before November 1, 2024 at 11:59 p.m. (prevailing Eastern Time) (the "General Bar Date").  All Governmental Units holding Claims that arose (or is deemed to have arisen) before the Petition Date shall be required to File an original written proof of claim so that such proof of claim is actually received on or before February 7, 2025 at 11:59 p.m. (prevailing Eastern Time).  Notice of the foregoing deadlines was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.

## IV.    TREATMENT OF CLAIMS AND INTERESTS

The Plan provides for the following treatment of Claims and Interests, as set forth more fully in the Plan:

## A.    Administrative Claims, Priority Tax Claims, and Statutory Fees

### Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Liquidating Trustee (as applicable) and their counsel no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective Date. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objection to such applications must be Filed and served on the requesting party by the Claims Objection Deadline. After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.D of the Plan, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court.**

### Professional Fee Claims and Administrative Claims of OCPs

### I.    Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than forty-five (45) days after the Effective Date. Objections to Professional Fee Claims must be

Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  Unless otherwise agreed to by the Debtors and the Retained Professional, the Liquidating Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve within five (5) Business Days of the entry of such Final Order.

## II.    Administrative Claims of OCPs

All requests for payment of Administrative Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Administrative Claims of the OCPs have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of Administrative Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or the Liquidating Trustee (as applicable) as soon as reasonably practicable after such Administrative Claims are authorized in accordance with the OCP Order.

## III.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Cases that are incurred after the Effective Date.  Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

## IV.    Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtors and the Retained Professional, to receive payment for (a) unbilled fees and expenses incurred through the Effective Date and (b) unbilled fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtors and their counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional.  If a Retained Professional does not provide an estimate of its unbilled fees and expenses, the Debtors may estimate such unbilled fees and expenses of the Retained Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount."  The Retained Professionals may submit invoices for their post-Effective Date services, including with respect to the preparation of Professional Fee Claims, to the Liquidating Trust in the ordinary course of business; *provided*, *however*, that any such invoices related to Professional Fee Claims shall be submitted to the Liquidating Trust no later than thirty (30) calendar days following entry of a Final Order Allowing such Professional Fee Claims.

### V.        Professional Fee Reserve

On or before the Effective Date, the Debtors shall fund the Professional Fee Reserve with Cash equal to the Professional Fee Reserve Amount, which may be held in the trust accounts of one or more counsel to the Debtors.  If some or all of the Professional Fee Reserve Amount is not held in the trust account of one more counsel to the Debtors, the Liquidating Trustee is charged with administering the Professional Fee Reserve after the Effective Date and shall open a new and segregated account at an FDIC-insured institution to effectuate this purpose.

The Professional Fee Reserve and amounts funded therein are, and shall continue to be, maintained in trust solely for each Retained Professional separately on a per-Retained Professional basis.  Such funds shall not be considered property of the Debtors, their Estates, or the Liquidating Trust (as applicable); *provided*, *however*, that the Liquidating Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court.

### Priority Tax Claims

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

### U.S. Trustee Statutory Fees

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. After the Effective Date, the post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall pay any and all applicable Statutory Fees in full in Cash when due and payable. The post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall remain obligated to pay any applicable Statutory Fees until the earliest of that Particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be treated as providing any release under the Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

### B.        Classified Claims and Interests

The Plan constitutes a separate chapter 11 plan for each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are placed in Classes for each of the applicable Debtors.  Unless otherwise specified, the Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution but not for any other purpose. The Debtors reserve the right to seek substantive consolidation of the Debtors in connection with

Confirmation, but substantive consolidation shall not affect the legal and organizational structure of the post-Effective Date Debtors or their separate corporate existences and will not change the distributions to Holders of Claims compared to what is proposed in the Plan.

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

      1.    <u>Class 1 –Secured Claims</u>

(a)    *Classification*:  Class 1 consists of all Secured Claims against the Debtors.

(b)    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Secured Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Priority Claims

(a)      *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

(b)      *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)      *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.      Class 3 – General Unsecured Claims

(a)      *Classification*:  Class 3 consists of all General Unsecured Claims against the Debtors.

(b)      *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* right to recovery from the Liquidating Trust.

(c)      *Voting*:  Class 3 is Impaired, and Holders of the General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 – Subordinated Claims

(a)      *Classification*:  Class 4 consists of all Subordinated Claims against the Debtors.

(a)      *Treatment*:  On the Effective Date, all Subordinated Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claim.

(b)      *Voting*:  Class 4 is Impaired, and Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 Subordinated Claims are not entitled to vote to accept or reject the Plan.

5.      Class 5 – Interests

(b)      *Classification*:  Class 5 consists of all Interests in the Debtors.

(c)      *Treatment*:  On the Effective Date, all Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Interests shall not receive any distributions under the Plan on account of such Interest.

(d)      *Voting*:  Class 5 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

## C.      Special Provisions Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

## D.      Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## E.      Controversy Concerning Impairment

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Combined Confirmation Hearing.

## F.      Subordination of Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidating Trustee (as applicable) reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## G.      Reservation of Rights Regarding Claims

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors' or the Liquidating Trustee's respective rights and defenses,

whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### H.      Postpetition Interest on Claims

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

### I.      Insurance

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

## VI.      MEANS FOR IMPLEMENTATION OF THE PLAN

### A.      Sources of Consideration for Plan Distributions

Subject in all respects to the provisions of the Plan concerning the Professional Fee Reserve, the Debtors or the Liquidating Trustee (as applicable) shall fund distributions under the Plan with Cash on hand on the Effective Date and all other Liquidating Trust Assets.

### B.      Vesting of Assets

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (1) the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan.

### C.      Liquidating Trust

#### 1.      Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement. Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

#### 2.      Transfer of the Liquidating Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan.  Upon completion of the

transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms in the Plan as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

### 3. Liquidating Trust Agreement

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors will be ratified. The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

### 4. Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (c) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (e) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

### 5. Liquidating Trustee

#### a. *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall also be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

**b.**     *Liquidating Trustee as Representative of the Estate*

From and after the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estates for all purposes and as the sole officer and director of each of the post-Effective Date Debtors.  Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement

**c.**     *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets; (ii) administering and paying taxes, including, among other things, (1) filing tax returns and (2) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iii) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under the Plan and the Liquidating Trust Agreement; (iv) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (v) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vi) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (vii) making distributions to Retained Professionals for Allowed Professional Fee Claims, including from the Professional Fee Reserve; (viii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; and (ix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

**d.**     *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth in the Plan, provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided in the Plan and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following:  (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by

the Liquidating Trust from such funds in accordance with the Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (iii) the power to pursue, prosecute, resolve, compromise, and settle any Retained Causes of Action, without notice to or approval from the Bankruptcy Court; (iv) the power to object to Claims, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to wind-down, liquidate, or otherwise dissolve the post-Effective Date Debtors and their wholly-owned subsidiaries, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state law; and (vi) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

### e.  *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

### f.  *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.  For the avoidance of doubt, the Liquidating Trust can retain any professionals currently retained by the Committee.

### 6.  Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

### D.    U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that (1) the Liquidating Trust Beneficiaries be treated as if they had (i) received a distribution from the Estates of an undivided interest in the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the Liquidating Trust in exchange for an interest in the Liquidating Trust, and (2) the Liquidating Trust Beneficiaries be treated as the grantors of the Liquidating Trust and as deemed owners of the Liquidating Trust and Liquidating Trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.  Following the funding of the Liquidating Trust, LL Flooring Holdings, Inc. shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust, the Liquidating Trust Assets, and the Debtors. The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets. The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee the appropriate IRS Form W-8 or IRS Form W-9, as applicable.  Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under the Plan

unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements. All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

### E.    Preservation of Causes of Action

Except as otherwise provided in Article XI of the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sales, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date.

### F.    Corporate Action

#### 1.    Transfer of Assets and Assumption of Liabilities

On the Effective Date, (a) the Debtors shall, in accordance with the Plan, cause the Liquidating Trust Assets to be transferred to the Liquidating Trust; and (b) the Liquidating Trust shall assume all obligations of the Debtors under the Plan.

#### 2.    Dissolution of the Debtors; Removal of Directors and Officers; Termination of Employees

On the Effective Date, and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall be dissolved for all purposes unless the Liquidating Trustee determines that dissolution can have any adverse impact on the Liquidating Trust Assets; *provided*, *however*, that neither the Debtors nor any party released pursuant to Article XI of the Plan shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, *however*, that nothing in the Plan shall be construed as relieving the Debtors or the Liquidating Trustee (as applicable) of their duties to pay Statutory Fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Chapter 11 Cases or the Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code. The Liquidating Trustee shall submit with the appropriate Governmental Units a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estates, provided that the Liquidating Trustee shall have no duties other than as expressly set forth in the Plan and the Liquidating Trust Agreement (as applicable).

After the Effective Date, the Debtors will continue to exist solely with respect to (i) any applications for Professional Fee Claims or expense reimbursements for its Retained Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same;

(ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order. Following the Effective Date, the Debtors' Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) through (iii). Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### G.    Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sales and that relate to the operation and business of the Liquidating Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.

### H.    Plan Transactions

On the Effective Date or as soon reasonably practicable thereafter, the Debtors and the Liquidating Trustee (as applicable) may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, but not limited to, (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with the Plan; (3) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (4) any and all other actions that the Debtors or the Liquidating Trustee (as applicable) determine are necessary or appropriate to effectuate the Plan.

### I.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of the Plan and any transactions described in or contemplated by the Plan. The Debtors, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

J.      **Section 1146 Exemption from Certain Taxes and Fees**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.  Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

K.      **Sale Orders**

Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall affect, impair or supersede the Sale Orders, which remains in full force and effect and governs in the event of any inconsistency with the Plan.

L.      **Authority to Act**

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to Delaware law, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

M.      **No Revesting of Liquidating Trust Assets**

No Liquidating Trust Asset will revest in the Debtors on or after the date such asset is transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

N.      **Settlement of Claims and Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that the Debtors may have with respect to any Allowed Claim or Allowed Interest or any distribution.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and Claim and Interest Holders, and is fair, equitable and reasonable.  Notwithstanding any other provision in the Plan, the settlements are approved among the parties that have agreed to them (among any other party who has expressly entered into a

written settlement), and the treatment of claims and interests is being afforded pursuant to Confirmation by satisfying the requirements of Section 1129.

## VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.    General Treatment

On the Effective Date, except as otherwise provided in the Plan (which exclusion includes the Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or identified on the Schedule of Assumed Executory Contracts and Unexpired Leases.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court upon the cure of all defaults under such Executory Contract or Unexpired Lease to the extent required under the Bankruptcy Code.

### B.    Rejection Damages Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.3 of the Plan.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be automatically disallowed, forever barred from assertion,**

**and shall not be enforceable against, as applicable, the Debtors, the Estates, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties.**

### C. Preexisting Obligations to Debtors Under Executory Contracts or Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or Liquidating Trustee (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Liquidating Trustee (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

### D. Insurance Preservation

Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

## VIII. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests. The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided in the Plan, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtors or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.        Withholdings

The Liquidating Trustee shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority.  The Liquidating Trustee may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority.  Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and Plan.  If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of the Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement.

### C.        Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.        Disbursing Agent

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

### E.        Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan; (2) make all distributions contemplated thereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to the Plan.

### F.        Surrender of Instruments

As a condition precedent to receiving any distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably

satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.     IRS Forms

In connection with the Plan, to the extent applicable, the Debtors and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.   Notwithstanding any provision in the Plan to the contrary, the Debtors and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As a condition precedent to receiving any distribution under the Plan, each Holder of an Allowed Claim that is entitled to a distribution under the Plan must provide the Liquidating Trustee an executed IRS Form.  An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within sixty (60) days after service (by first class mail) of a formal request for the same by the Liquidating Trustee shall be deemed disallowed and expunged for purposes of distributions under the Plan.  For the avoidance of doubt, the Liquidating Trust is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form.

### H.     Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within sixty (60) calendar days after the mailing of such distribution, the Liquidating Trustee shall be authorized to cancel such distribution check.  For the avoidance of doubt, the Liquidating Trustee shall have no obligation to determine the correct current address of such Holder.  Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust for distribution in accordance with the Plan and the Liquidation Trust Agreement; and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

### I.      Manner of Payment

Any distributions to be made by or on behalf of the Debtors or the Liquidating Trustee (as applicable) pursuant to the Plan shall be made by checks drawn on accounts maintained by the Debtors or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Debtors or the Liquidating Trustee (as applicable).

### J.      Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

### K.      Setoffs and Recoupments

The Debtors or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee (as applicable) of any such claim the Debtors or their Estates may have against the Holder of such Claim.  The Liquidating Trustee shall be required to file such notice on the docket of the Chapter 11 Cases.

### L.      Minimum Distributions

No payment of Cash in an amount of less than fifty U.S. dollars ($50.00) shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### M.      Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### N.    Distributions Free and Clear

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

### O.    Claims Paid or Payable by Third Parties

#### 1.    Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors and/or the Liquidating Trustee (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors and/or the Liquidating Trustee (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Debtors or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however,* that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors and/or the Liquidating Trustee (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtors or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

#### 2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

#### 3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall take into account payments made in accordance with the provisions of any applicable Insurance Policy.  Except as set forth in Article XI of the Plan, nothing in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including insurers under any policies of

insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## IX.    PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

### A.    Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

### B.    Claims Administration Responsibilities

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

### C.    Estimation of Claims

Before or after the Effective Date, the Debtors or the Liquidating Trustee (as applicable) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by Buyer in the Sale, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

E.      **Time to File Objections to Claims**

Except as otherwise provided in the Plan, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

F.      **Disallowance of Late Claims**

Except as provided in the Plan or otherwise agreed to by the Debtors or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant; *provided, however,* that any Claim Filed, via proof of claim, after the Effective Date of the Plan shall not receive any distributions on account of such Claim unless, within sixty (60) days of filing such Claim, the Claim has been deemed timely Filed by a Final Order approving a motion by such Holder satisfying the standard for excusable neglect.

G.      **Disputed Claims**

All Claims held by Persons or Entities against whom or which the Debtors or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under section 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. A Claim deemed Disputed pursuant to Article VII.G of the Plan shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final Order and any sums due to the Debtors or the Liquidating Trustee (as applicable) from such Holder have been paid.

H.      **No Distributions Pending Allowance**

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.      **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

### X.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

#### A.    Conditions to Effective Date

The Effective Date will not occur and the Plan will not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Article VIII.A. of the Plan:

1. The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2. The Confirmation Order shall have been entered and shall be in full force and effect.

3. There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by the Plan from being consummated.

4. The Professional Fee Reserve shall have been fully funded pursuant to the terms of the Plan.

5. All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

6. The Liquidating Trust Agreement shall have been executed.

7. The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable.

8. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement the Plan and any transaction contemplated hereby that are required by law, regulation, or order.

#### B.    Waiver of Conditions to Effective Date

The conditions to the Effective Date set forth in Article VIII.B. of the Plan may be waived in whole or part by the Debtors, in consultation with the Committee, without notice to any parties in interest or the Bankruptcy Court and without a hearing.

#### C.    Effect of Vacatur of the Confirmation Order

If the Confirmation Order is vacated: (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against,

or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

### D.    Votes Solicited in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

## XI.    RELEASE, INJUNCTION, AND RELATED PROVISIONS

The Plan contains the following release, injunction, and related provisions:

### A.    Releases by the Debtor

**As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party[5] is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sales, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sales, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided, however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or**

---

[5]    As set forth in the Plan, "Released Party" means "each of, and in each case in its capacity as such: (a) the Debtors' and the Estates' Related Parties; (b) the Committee and its members; (c) the Prepetition ABL Agent and the Prepetition ABL Lenders; (d) the DIP ABL Agent and the DIP ABL Lenders; and (e) the Related Parties of each of the parties identified in clause (b)-(d) of section I.A.83 of the Plan; *provided, however*, that the Debtors' current and former directors and officers shall not be Released Parties with respect to the Retained Causes of Action listed in the Plan Supplement, which the Liquidating Trustee shall be entitled to pursue solely to the extent of any available insurance coverage for such Retained Causes of Action." Plan Art. I.A.83.

gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Orders or the APAs; or (3) the  Retained Causes of Action.

B.      Releases by Holders of Claims

As of the Effective Date,  except as otherwise provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party[6] shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sales, or agreement or document created or entered into in connection with the Sales, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) any obligations under or in respect of the Sale Orders or the APAs.

---

[6]     As set forth in the Plan, "Releasing Parties" means, in their capacities as such: (a) the Committee and its members; (b) all Holders of General Unsecured Claims who (i) vote to accept the Plan and "opt in" to the releases set forth in Article IX of the Plan; (ii) vote to reject the Plan and "opt in" to the releases set forth in Article IX of the Plan or (iii) abstain from voting on the Plan and "opt in" to the releases set forth in Article IX of the Plan, and (c) each Related Party of each Entity in clause (a) through (b), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (b).  Plan Art. I.A.84.

### C.    Exculpation

**Except as otherwise specifically provided in the Plan, to the maximum extent permitted by applicable law, no Exculpated Party[7] shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sales, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sales, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan to the extent permitted under applicable law.**

### D.    Injunction

**Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a purchaser in connection with the Sales; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise discharged, satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Person or Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged, released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action**

---

[7]     As set forth in the Plan, "Exculpated Party" means "in each case in its capacity as such, (a) the Debtors; (b) the Estates; (c) the Committee and its members; (d) the Liquidating Trustee; and (e) each of the preceding parties' respective Related Parties, in each case, who served as a fiduciary of the Debtors' Estates at any time between the Petition Date and the Effective Date of the Plan."  Plan Art. I.A.43.

or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff (*i.e.*, a Proof of Claim or motion asserting such rights), and notwithstanding an indication of a Claim or Interest or otherwise that such Person or Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtors, the Liquidating Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.

E.    Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER ARTICLE XI OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN ARTICLE XI OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY

**KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.**

F.      **No Discharge**

Because the Debtors are liquidating, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims.

G.      **Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

## XII.    RETENTION OF JURISDICTION

The Plan provides that, notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Sale, the Confirmation Order, the Plan Supplement, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1.  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2.  Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3.  Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4.  Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

5.  Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.  Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.  Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.  Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.  Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan.

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan.

11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13. Determine any other matters that may arise in connection with or related to the APA or related Sale documents, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order.

14. Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan.

15. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

17. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.

18. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19. To recover all assets of the Debtors and property of the Estates, wherever located.

20. To consider requests for extensions of the term of the Liquidating Trust as provided in the Plan.

21. Enter an order or final decree concluding or closing the Chapter 11 Cases.

22. Enforce all orders previously entered by the Bankruptcy Court.

23. Hear any other matter over which the Bankruptcy Court has jurisdiction.

The foregoing is not intended to (a) expand the Bankruptcy Court's jurisdiction beyond that allowed by applicable law, (b) impair the rights of an Entity to invoke the jurisdiction of a court, commission, or tribunal or (c) impair the rights of an Entity to seek the withdrawal of the reference in accordance with 28 U.S.C. § 157(d).

## XIII.  MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.    Modification of the Plan

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.      Other Amendments

The Debtors may make appropriate non-material, technical adjustments and modifications to the Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.      Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.      Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## XIV.  MISCELLANEOUS PROVISIONS

### A.      Debtors' Operation from Combined Confirmation Hearing Through Effective Date

During the period from the Combined Confirmation Hearing through and until the Effective Date, the Debtors shall continue to operate as a debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### B.      Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject the Plan and regardless of whether any such Holder is entitled to receive any distribution under the Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

### C.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Liquidating Trustee, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### D.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.    Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.    Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

### G.    Determination of Tax Liabilities

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estates and Liquidating Trust; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to the Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estate or the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Cases.

### H.    Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements

for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.  Following the Effective Date, the Committee's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) through (3).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

## I.    Notices

In order for all notices, requests, and demands to or upon the Debtors or the Liquidating Trustee, as the case may be, to be effective, such notices, requests and demands shall be in writing (including by electronic mail) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| LL Flooring Holdings, Inc. *et al.*<br>4901 Bakers Mill Lane,<br>Richmond, Virginia 23230<br>Attn.: Alice Givens | **Skadden, Arps, Slate, Meagher, & Flom LLP**<br>One Manhattan West<br>New York, New York 10001<br>Attn: Lisa Laukitis, Esq., Elizabeth M. Downing, Esq.<br>Email: lisa.laukitis@skadden.com; elizabeth.downing@skadden.com<br><br>-and-<br><br>**Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Edmon L. Morton, Esq.; Kenneth J. Enos, Esq.; Elizabeth S. Justison, Esq.<br>Email: emorton@ycst.com; kenos@ycst.com; ejustison@ycst.com |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

### J.    Term of Injunctions or Stays

Except as otherwise provided in the Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under the Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

### K.    Entire Agreement

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### L.    Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel or Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

### M.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise

set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

### N.        Non-Severability of Plan Provision Upon Confirmation

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Liquidating Trustee (as applicable); and (3) non-severable and mutually dependent.

### O.        Closing of Chapter 11 Cases

After the full administration of the Chapter 11 Cases, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## XV.    RISK FACTORS

Prior to voting on the Plan, Holders of General Unsecured Claims in Class 3 as well as Entities in non-voting Classes should consider carefully the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation. See Article XVI of this Disclosure Statement for a discussion of tax law considerations.

### A.        Plan Confirmation

There is no guarantee that the Plan will be confirmed.  If the Plan, or a substantially similar plan, is not confirmed, the terms and timing of any plan of liquidation ultimately confirmed in the Chapter 11 Cases, and the treatment of Claims and Interest will be unknown.  In addition, if the Plan is not confirmed, a significant risk exists that the Chapter 11 Cases may be converted to cases under chapter 7.  In that event, the Debtors believe that creditor recoveries would be substantially diminished.

### B.     The Effective Date May Not Occur

The Plan provides that there are conditions precedent to the occurrence of the Effective Date.  There is no guarantee as to the timing of the Effective Date.  Additionally, if the conditions precedent to the Effective Date are not satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order.  In that event, the Plan would be deemed null and void, and the Debtors or any other party may propose or solicit votes on an alternative plan of liquidation that may not be as favorable to parties in interest as the Plan.

### C.     Allowance of Claims

This Disclosure Statement has been prepared based on preliminary information concerning Filed Claims and the Debtors' books and records.  The actual amount of Allowed Claims may materially differ from the Debtors' current estimates.

### D.     Risk Factors That May Affect Recoveries Available to Holders of Allowed Claims Under the Plan

#### 1.     The Amounts of Allowed Claims May Adversely Affect the Recovery of Some Holders of Allowed Claims

The distributions available to Holders of Allowed General Unsecured Claims in Class 3 under the Plan can be affected by a variety of contingencies, including, without limitation, the amount of Allowed Professional Fee Claims, Allowed Administrative Claims, Priority Tax Claims, Class 1 Secured Claims, and Class 2 Other Priority Claims, thereby reducing the amount of distributions available for Holders of Allowed General Unsecured Claims in Class 3.  The Debtors cannot determine with any certainty at this time the number or amount of such Claims that will ultimately be Allowed.  Thus, the projected recoveries for Holders of Allowed General Unsecured Claims in Class 3 disclosed in this Disclosure Statement are highly speculative.

#### 2.     Any Valuation of Any Assets to be Distributed Under the Plan is Speculative

Any valuation of any of the assets to be distributed under the Plan is necessarily speculative.  Accordingly, the ultimate value, if any, of these assets could materially affect, among other things, recoveries to the Holders of Allowed General Unsecured Claims in Class 3.

#### 3.     The Debtors Cannot Guarantee the Timing of Distributions

The timing of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted.  Therefore, the Debtors cannot guarantee the timing of any recovery on an Allowed Claim.

#### 4.     Certain Tax Implications of the Debtors' Bankruptcy

Holders of Allowed Claims should carefully review Article XVI of this Disclosure Statement, "Certain U.S. Federal Income Tax Consequences of Consummation of the Plan," for a description of certain tax implications of the Plan and the Debtors' Chapter 11 Cases.  As described

more fully in that Article, the tax treatment of the Liquidating Trust is subject to substantial uncertainty and the intended tax treatment of the Liquidating Trust will not be known until the resolution of the Disputed Claims.  This date may be later than the due date for a Holder's federal income tax return for its taxable year that includes the Effective Date.  For example, assuming the Effective Date occurs in 2024, an individual U.S. Holder's federal income tax return would normally be due on April 15, 2025, but the intended tax treatment of the Trust may not be known until as late as September 1, 2025.  Thus, a Holder may be required to file for an extension of the filing date for such tax returns or may be required to amend such tax returns if it files them prior to the date the intended tax treatment of the Trust is determined.  Further, even if an extension is obtained, the extension generally does not extend the due date for paying any taxes associated with the extended tax return.  Holders are urged to consult their tax advisors with respect to the need to file for an extension or amend such tax returns.

### 5. Liquidating Trust's Expenses

The ultimate amount of Cash available to satisfy the amount of Allowed General Unsecured Claims in Class 3 depends, in part, on the manner in which the Liquidating Trustee operates its Liquidating Trust and the expenses it incurs.  Such expenses may include, without limitation, the ordinary course and other expenses of administering the Liquidating Trust, including, among other things, any taxes relating thereto and the costs to liquidate the Liquidating Trust Assets, investigate and prosecute the Retained Causes of Action, prosecute objections to Claims, and make distributions.  The expenses of the Liquidating Trustee will be given priority over distributions to holders of Allowed General Unsecured Claims in Class 3.  As a result, if the Liquidating Trustee incurs professional or other expenses in excess of current expectations, the amount of distributable assets remaining to satisfy Allowed General Unsecured Claims in Class 3 will decrease.

### E. Risk Factors Relating to Securities Law

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan from registration under the Securities Act and state securities laws if three principal requirements are satisfied: (1) the securities must be offered and sold under a plan and must be securities of the debtor, an affiliate participating in a joint plan with the debtor or a successor to the debtor under the plan; (2) the recipients of the securities must hold a pre-petition or administrative expense claim against the debtor or an interest in the debtor; and (3) the securities must be issued entirely in exchange for the recipient's claim against, or interest, in the debtor, or principally in such exchange and partly for cash or property.  To the extent that the rights to distributions from the Liquidating Trust are deemed to constitute securities issued in accordance with the Plan, the Debtors believe that those interests satisfy the requirements of section 1145(a)(1) of the Bankruptcy Code and, therefore, those interests are exempt from registration under the Securities Act and applicable state securities laws.

### 1. Uncertainty of Value

In addition to the prohibition on the transfer of rights to distributions from the Liquidating Trust as discussed above, the value of such rights will depend on various significant risks and uncertainties, including, without limitation, (a) the effect of substantial delays in liquidating claims

and other contingent assets and liabilities; and (b) the effects of any changes in tax and other government rules and regulations applicable to the Liquidating Trust. All of these risks are beyond the control of the Liquidating Trust. The amount of any recovery realized by the Liquidating Trust and its respective beneficiaries will vary depending upon the extent to which these risks materialize.

F.      **Disclosure Statement Disclaimer**

1.      **The Financial Information Contained in This Disclosure Statement Has Not Been Audited**

In preparing this Disclosure Statement, the Debtors and their advisors relied on financial data derived from the Debtors' books and records that was available at the time of such preparation. Although the Debtors has used its reasonable business judgment to ensure the accuracy of the financial information, and any conclusions or estimates drawn from that financial information, provided in this Disclosure Statement, and although the Debtors believe that the financial information herein fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant that the financial information contained herein, or any conclusions or estimates drawn therefrom, is without inaccuracies.

2.      **Information Contained in This Disclosure Statement is for Soliciting Votes**

The information contained in this Disclosure Statement is for the purpose of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

3.      **This Disclosure Statement was not Reviewed or Approved by the SEC**

This Disclosure Statement was not filed with the SEC under the Securities Act or applicable state securities laws. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement or the exhibits or the statements contained in this Disclosure Statement.

4.      **This Disclosure Statement May Contain Forward Looking Statements**

This Disclosure Statement may contain "forward looking statements" within the meaning of the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, as amended. Statements containing words such as "may," "believe," "anticipate," "expect," "intend," "plan," "project," "projections," "business outlook," "estimate," or similar expressions constitute forward-looking statements and may include, without limitations, information regarding the Debtors' expectations with respect to future events. These forward-looking statements are subject to a number of risks, uncertainties and assumptions, including those risks described in this Article.

5.      **No Legal or Tax Advice Is Provided to You by This Disclosure Statement**

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each Holder of a Claim or an

60

Interest should consult his or her own legal counsel, accountant or other applicable advisor with regard to any legal, tax and other matters concerning his, her or its Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

### 6.    No Admissions Made

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or Interests, or any other parties in interest.

### 7.    Failure to Identify Potential Objections

No reliance should be placed on the fact that a particular Retained Cause of Action or potential objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Liquidating Trustee may, pursuant to the Plan, object to applicable Claims or Interests after the Effective Date of the Plan or pursue a Retained Cause of Action irrespective of whether this Disclosure Statement identifies a particular Retained Cause of Action or objection to a Claim, excluding any Cause of Action that is released pursuant to Article IX of the Plan.

### 8.    No Waiver of Right to Object or Right to Recover Transfers and Assets

The vote by a Holder of a Claim or Interest for or against the Plan does not constitute a waiver or release of any claims, causes of action or rights of the Debtors (or any entity, as the case may be) to object to that Holder's Claim or Interest, or seek to recover any preferential, fraudulent or other voidable transfer of assets, regardless of whether any claims or causes of action of the Debtors or their Estates are specifically or generally identified in this Disclosure Statement.

### 9.    Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors

The Debtors' advisors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although the Debtors' advisors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement.

### 10.    Potential Exists for Inaccuracies, and the Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date of this Disclosure Statement, unless otherwise specified in this Disclosure Statement, and the delivery of this Disclosure Statement after the date of this Disclosure Statement does not imply that there has not been a change in the information set forth in this Disclosure Statement since that date. While the Debtors have used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this

Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

### 11. No Representations Outside This Disclosure Statement are Authorized

No representations concerning or relating to the Debtors, these Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtors and the U.S. Trustee.

## XVI. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN

The confirmation and execution of the Plan may have tax consequences to the Liquidating Trust Beneficiaries. The Debtors do not offer an opinion as to any federal, state, local or other tax consequences to Liquidating Trust Beneficiaries as a result of the confirmation of the Plan. All Liquidating Trust Beneficiaries are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Plan. The Plan is not intended, and should not be construed, as legal or tax advice to any Liquidating Trust Beneficiary or other party in interest.

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to Holders of certain Claims. This discussion does not address the U.S. federal income tax consequences to (i) creditors whose Claims are Unimpaired or otherwise entitled to payment in full in cash under the Plan or (ii) Holders who are deemed to reject the Plan, such as Holders of Class 4 Subordinated Claims and Class 5 Interests.

The discussion of U.S. federal income tax consequences below is based on the U.S. Internal Revenue Code of 1986, as amended from time to time (the "Tax Code"), Treasury regulations, judicial authorities, published positions of the Internal Revenue Service ("IRS"), and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect. The U.S. federal income tax consequences of the Plan are complex and subject to significant uncertainties. The Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan. No assurance can be given that the IRS will not take a position contrary to the description of U.S. federal income tax consequences of the Plan described below.

This discussion does not address non-U.S., state, or local tax consequences of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan to special classes of taxpayers, foreign taxpayers, small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, tax-exempt organizations, retirement plans, individual retirement and other tax deferred accounts, holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their

securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims that are part of a straddle, hedging, constructive sale, or conversion transaction). In addition, this discussion does not address U.S. federal taxes other than income taxes, nor does it address the Foreign Account Tax Compliance Act. The following discussion generally assumes that the Plan implements the liquidation of the Debtors for U.S. federal income tax purposes and that all distributions by the Debtors will be taxed accordingly. Additionally, this discussion assumes that (i) the various arrangements to which any of the Debtors is a party will be respected for U.S. federal income tax purposes in accordance with their form and (ii) except if otherwise indicated, the Claims are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the Tax Code.

The following discussion of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon your individual circumstances. Each holder of a Claim or Interest is urged to consult its own tax advisor for the U.S. federal, state, provincial, local and other tax consequences applicable under the Plan.

## A.   CONSEQUENCES TO THE DEBTORS

Each of the Debtors is a member of an affiliated group of corporations that files a consolidated federal income tax return with LL Flooring Holdings, Inc. as the common parent (collectively, the "LL Group"). The Debtors estimate that, as of December 31, 2022, the LL Group had consolidated net operating losses ("NOLs") for U.S. federal income tax purposes of approximately $874,758, among other tax attributes (including consolidated disallowed business interest expense carryforwards, tax credits and aggregate tax basis in excess liabilities).  However, the amount of any NOLs and other tax attributes, as well as the application of any limitations on their use, remain subject to review and adjustment by the IRS.

### 1.    Limitations on NOL Carryforwards and Other Tax Attributes

The LL Group's ability to utilize its NOLs and certain other tax attributes could be subject to limitation if the LL Group underwent or were to undergo an ownership change within the meaning of section 382 of the Tax Code after the Petition Date. Accordingly, the Debtors obtained a Bankruptcy Court order [Docket No. 205] (the "Stock Restrictions Order") imposing certain restrictions with respect to trading in LL Flooring Holding, Inc.'s stock (and the claiming of a worthless stock deduction by any 50-percent shareholder of LL Flooring Holding, Inc., within the meaning of section 382 of the Tax Code) so as to avoid such an ownership change. The Debtors believe that no ownership change of the LL Group for purposes of section 382 of the Tax Code has occurred to date and intend that no such ownership change will, absent the prior approval of the Debtors or the Bankruptcy Court, occur prior to the liquidation of the Debtors pursuant to the Plan.

### 2.    Transfer of Assets to the Liquidating Trust

Pursuant to the Plan, the Liquidating Trust will be established and receive the Liquidating Trust Assets.  For U.S. federal income tax purposes, the transfer of the Liquidating Trust Assets

to the Liquidating Trust generally is treated as equivalent to a sale of such assets at their then fair market value.  Although the Debtors may recognize taxable income in connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust in the taxable year of such transfer, the Debtors expect to have sufficient current deductions for such year, available NOL carryforwards, and/or other tax attributes for such year to avoid any meaningful U.S. federal income tax liability for such year.  Depending on the availability of and limitations on the Debtors' NOLs and tax credits for state and local income tax purposes, the Debtors may be subject to certain state or local income tax liabilities relating to such transfers.

### 3.      Cancellation of Debt

The Tax Code provides that a debtor must recognize cancellation of debt ("COD") income upon the elimination or reduction of debt for insufficient consideration. The Tax Code provides an exception to such income recognition treatment for any COD arising by reason of the discharge of the debtor's indebtedness in the bankruptcy case or to the extent of the debtor's insolvency immediately before the cancellation of the debt.  In such case, the Tax Code generally requires the debtor to reduce certain of its tax attributes – such as current year NOLs, NOL carryforwards, tax credits, capital losses and tax basis in assets – by the amount of any such excluded COD income. COD income generally is the amount by which the adjusted issue price of cancelled debt exceeds the sum of the amount of cash and the fair market value of any other property given in exchange therefor. In general, any reduction in tax attributes under the COD rules does not occur until the end of the tax year, after such attributes have been applied to determine the tax for the year or, in the case of asset basis reduction, the first day of the taxable year following the tax year in which the COD occurs. Also, where the debtor joins in the filing of a consolidated U.S. federal income tax return, applicable Treasury Regulations require, in certain circumstances, that the tax attributes of the consolidated subsidiaries of the debtor and other members of the group also be reduced. Consistent with the intended treatment of the Plan as a plan of liquidation for U.S. federal income tax purposes, the Debtors believe that no COD should be incurred by a Debtor as a result of the implementation of the Plan prior to the distribution by such Debtor of all of its assets.  In such case, the reduction of tax attributes resulting from such COD (which, as indicated above, only occurs as of the end of the tax year in which the COD occurs) generally should not have a material impact on the Debtors.

### B.      CONSEQUENCES TO HOLDERS OF GENERAL UNSECURED CLAIMS

Pursuant to the Plan, each holder of an Allowed General Unsecured Claim in Class 3 will receive, in full and final satisfaction of its applicable claim, its *pro rata* right to recovery from the Liquidating Trust.  As discussed below (*see* Section XVI.C of this Disclosure Statement), each holder of an Allowed General Unsecured Claim in Class 3 that receives a beneficial interest in the Liquidating Trust will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the Liquidating Trust Assets consistent with its Pro Rata interest in the Liquidating Trust, and subject to any portion(s) of the Liquidating Trust being treated as a "disputed ownership fund" for U.S. federal income tax purposes.

### 1. General Consequences to Holders of General Unsecured Claims in Class 3

In general, a Holder of an Allowed General Unsecured Claim in Class 3 will recognize gain or loss with respect to its Allowed Claim in an amount equal to the difference between (i) the fair market value of its undivided interest in the Liquidating Trust Assets and treated as received in respect of its Claim (other than any consideration attributable to a Claim for accrued but unpaid interest) and (ii) the adjusted tax basis of the Claim exchanged therefor (other than any tax basis attributable to accrued but unpaid interest previously included in the holder's taxable income). The Liquidating Trustee will in good faith value the Liquidation Trust Assets as of the Effective Date, and all parties to the Liquidating Trust must consistently use such valuation for all U.S. federal income tax purposes. As discussed below, the amount of cash or other property received in respect of an Allowed Claim for accrued but unpaid interest will be taxed as ordinary income, except to the extent previously included in income by a holder under its method of accounting.

After the date of transfer of Liquidating Trust Assets to the Liquidating Trust, a Holder's share of any collections received on the Liquidating Trust Assets (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable distributions) should not be included, for U.S. federal income tax purposes, in the holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such holder's ownership interest in the Liquidating Trust Assets.

In the event of the subsequent disallowance of any Disputed Claim, it is possible that a holder of a previously Allowed Claim may receive additional Cash or, in the case of the release of non Cash assets from a Disputed Claims Reserve, non-Cash distributions in respect of its Claim. Accordingly, it is possible that the recognition of any loss realized by a holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or Disallowed. Alternatively, it is possible that a holder will have additional gain in respect of any additional distributions received.

If gain or loss is recognized, such gain or loss may be long-term capital gain or loss if the Allowed Claim disposed of is a capital asset in the hands of the Holder and has been held for more than one year. Each Holder of an Allowed Claim should consult its tax advisor to determine whether gain or loss recognized by such holder will be long-term capital gain or loss and the specific tax effect thereof on such Holder. The character of any gain or loss depends on, among other things, the origin of the Holder's Allowed Claim, when the Holder receives payment (or is deemed to receive payment) in respect of such Allowed Claim, whether the Holder reports income using the accrual or cash method of tax accounting, whether the Holder acquired its Allowed Claim at a discount, whether the Holder has taken a bad debt deduction with respect to such Allowed Claim, and/or whether (as intended and herein assumed) the Plan implements the liquidation of the Debtors for U.S. federal income tax purposes.

A Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets (subject to any portion(s) of the Liquidating Trust being treated as a "disputed ownership fund" for U.S. federal income tax purposes) will equal the fair market value of such interest increased by its share of the Debtors' liabilities to which such assets remain subject upon transfer to the Liquidating Trust, and a holder's holding period generally will begin on the day following the date of transfer of Liquidating Trust Assets to the Liquidating Trust.

### 2.      Distributions in Respect of Accrued But Unpaid Interest

In general, to the extent any amount received (whether cash or other property) by a Holder of a debt instrument is received in satisfaction of interest that accrued during its holding period, such amount will be taxable to the holder as ordinary interest income (if not previously included in the holder's gross income under the holder's normal method of accounting). Conversely, a holder generally recognizes a deductible loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

### C.      TAX TREATMENT OF THE LIQUIDATING TRUST AND HOLDERS OF BENEFICIAL INTERESTS THEREIN

The Liquidating Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes (other than in respect of any portion of the assets transferred to the Liquidating Trust that are part of a Disputed Claims Reserve (*i.e.*, assets allocable to Disputed Claims, including assets retained on account of Disputed Claims), as discussed below).  In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan.  The Liquidating Trust will be structured with the intention of complying with such general criteria.  Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, the Liquidating Trustee and beneficiaries of the Liquidating Trust) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of such Liquidating Trust Assets (subject to any obligations relating to those assets) directly to recipients of beneficial interests in the Liquidating Trust (other than any Disputed Claims Reserve), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of such Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust.  Accordingly, except in the event of contrary definitive guidance, holders of beneficial interests in the Liquidating Trust shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the assets transferred by the Debtors to the Liquidating Trust (other than any Disputed Claims Reserve).

No ruling is currently being requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust.  If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidating Trust and the Holders of Claims could vary from those discussed herein.  Certain U.S. federal income tax consequences of the Liquidating Trust or portions thereof being treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9 are also discussed below.

### 1.      General "Liquidating Trust" Tax Reporting by the Liquidating Trust and their Beneficiaries

For all U.S. federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which the holders of beneficial interests in the Liquidating Trust are the owners

and grantors, and treat such beneficiaries as the direct owners of an undivided interest in the Liquidating Assets transferred to the Liquidating Trust (other than any Disputed Claims Reserve), consistent with their Pro Rata interests therein. The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations. The Liquidating Trustee also shall annually send to each holder of a beneficial interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes.

All taxable income and loss of the Liquidating Trust will be allocated among, and treated as directly earned and incurred by, the holders of beneficial interests in the Liquidating Trust with respect to such holder's interest in the assets of the Liquidating Trust (and not as income or loss with respect to its prior Claims), with the possible exception of any taxable income and loss allocable to any Disputed Claims Reserve. The character of any income and the character and ability to use any loss would depend on the particular situation of the holder. The U.S. federal income tax consequences to U.S. beneficiaries of U.S. grantor trusts with foreign corporate subsidiaries is not entirely clear. Holders of Liquidating Trust beneficial interests may be taxed on certain income of foreign corporate subsidiaries of the Liquidation Trust, but the amount of such income, if any, is not expected to be material.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the fair market value of such Liquidating Trust Assets. All parties to the Liquidating Trust (including, without limitation, the Debtors, holders of Allowed Claims, and the beneficiaries of the Liquidating Trust) must consistently use such valuation for all U.S. federal income tax purposes.

The U.S. federal income tax obligations of a holder with respect to its beneficial interest in the Liquidating Trust are not dependent on the Liquidating Trust distributing any cash or other proceeds, subject to any Disputed Claims Reserve. Thus, a holder may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust do not make a concurrent distribution to the holder. In general, other than in respect of cash retained as part of a Disputed Claims Reserve (the subsequent distribution of which still relates to a holder's Allowed Claim), a distribution of cash by the Liquidating Trust will not be separately taxable to a beneficiary of the Liquidating Trust since the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying Liquidating Trust Assets (and was taxed at the time the cash was earned or received by the Liquidating Trust). Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidating Trust as part of a Disputed Claims Reserve. The Liquidating Trust will comply with all applicable governmental withholding requirements.

### 2.    Tax Reporting for Assets Allocable to Disputed Claims

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may elect to treat any

Disputed Claims Reserve as a "disputed ownership fund" governed by section 1.468B-9(b)(2) of the Treasury Regulations, if applicable.

Accordingly, if a "disputed ownership fund" election is made with respect to any Disputed Claims Reserves, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the Liquidating Trust Assets allocable thereto (including any gain recognized upon the disposition of such Liquidating Trust Assets). All distributions from such reserves (which distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Debtors, the Liquidating Trustee and the beneficiaries of the Liquidating Trust) will be required to report for tax purposes consistently with the foregoing.

A reserve will be responsible for payment, out of the assets of the reserve, of any taxes imposed on the reserve or its assets. In the event, and to the extent, any cash in the reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the reserve may be sold to pay such taxes.

### D.    WITHHOLDING ON DISTRIBUTIONS AND INFORMATION REPORTING

All distributions to Holders of Allowed Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding. Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 24%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Holders of Allowed Claims are urged to consult their tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the holder's tax returns.

The foregoing summary has been provided for informational purposes only. All Holders of Claims and Interests are urged to consult their tax advisors concerning the federal, state, local and other tax consequences applicable under the Plan.

## XVII. ADDITIONAL INFORMATION

Any statements in this Disclosure Statement concerning the provisions of any document are not necessarily complete, and in each instance reference is made to such document for the full text thereof.  Certain documents described or referred to in this Disclosure Statement have not been attached as exhibits because of the impracticability of furnishing copies of these documents to all recipients of this Disclosure Statement.  The Debtors will file all exhibits to the Plan with the Bankruptcy Court and make them available for review on https://cases.stretto.com/llflooring/ no later than seven days before the deadline to object to Confirmation.

## XVIII. RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtors and the Committee believe that the Confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Debtors and the Committee urge all Holders of General Unsecured Claims in Class 3, the only Class entitled to vote on the Plan, to vote to accept the Plan and to evidence their acceptance by duly completing and returning their ballots so that they will be received on or before the Voting Deadline.

Dated:  November 4, 2024

Respectfully submitted,

*/s/ Holly Etlin*
By: Holly Etlin
Chief Restructuring Officer
LL Flooring Holdings, Inc. *et al.*

# **EXHIBIT A**

## **Joint Chapter 11 Plan**

> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE DEBTORS RESERVE THE RIGHT TO AMEND, SUPPLEMENT, OR OTHERWISE MODIFY THIS PLAN PRIOR TO AND UP TO THE DATE OF SUCH HEARING.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **LL FLOORING HOLDINGS, INC.,** *et al.*, | **Case No. 24-11680 (BLS)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR LL FLOORING HOLDINGS, INC. AND ITS AFFILIATED DEBTORS

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Lisa Laukitis (admitted *pro hac vice*)
Elizabeth M. Downing (admitted *pro hac vice*)
Angeline J. Hwang (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Edmon L. Morton (I.D. No. 3856)
Kenneth J. Enos (I.D. No. 4544)
Elizabeth S. Justison (I.D. No. 5911)
S. Alexander Faris (I.D. No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801

---

[1]  The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: LL Flooring Holdings, Inc. (0817); LL Flooring, Inc. (9199); Lumber Liquidators Leasing, LLC (N/A); LL Flooring Services, LLC (5960); and Lumber Liquidators Foreign Holdings, LLC (4568). The address of the Debtors' corporate headquarters is 4901 Bakers Mill Lane, Richmond, VA 23230.

# TABLE OF CONTENTS

ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION ................................. 1

  A.    Definitions ............................................................................................... 1

  B.    Rules of Interpretation ........................................................................... 11

  C.    Computation of Time ............................................................................ 12

  D.    Controlling Document ........................................................................... 12

ARTICLE II.    ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES ............................................................................................................ 12

  A.    Administrative Claims .......................................................................... 12

  B.    Professional Fee Claims and Administrative Claims of OCPs .................... 13

      1.    Final Fee Applications ................................................................. 13

      2.    Administrative Claims of OCPs.................................................... 13

      3.    Post-Effective Date Fees and Expenses ........................................ 13

      4.    Professional Fee Reserve Amount ................................................ 14

      5.    Professional Fee Reserve ............................................................. 14

  C.    Priority Tax Claims .............................................................................. 14

  D.    U.S. Trustee Statutory Fees ................................................................. 15

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ... 15

  A.    Classification of Claims and Interests .................................................... 15

  B.    Treatment of Claims and Interests ........................................................ 16

      1.    Class 1 –Secured Claims.............................................................. 16

      2.    Class 2 – Other Priority Claims .................................................... 16

      3.    Class 3 – General Unsecured Claims ............................................ 17

      4.    Class 4 – Subordinated Claims ..................................................... 17

  C.    Special Provisions Governing Unimpaired Claims.................................... 17

  D.    Elimination of Vacant Classes ............................................................... 18

  E.    Controversy Concerning Impairment ..................................................... 18

  F.    Subordination of Claims....................................................................... 18

  G.    Reservation of Rights Regarding Claims ................................................ 18

  H.    Postpetition Interest on Claims.............................................................. 18

  I.    Insurance ............................................................................................ 18

ARTICLE IV.    MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 19

  A.    Sources of Consideration for Plan Distributions........................................ 19

  B.    Vesting of Assets................................................................................. 19

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| C. | Liquidating Trust | 19 |
| 1. | Establishment of the Liquidating Trust | 19 |
| 2. | Transfer of the Liquidating Trust Assets | 19 |
| 3. | Liquidating Trust Agreement | 20 |
| 4. | Purpose of the Liquidating Trust | 20 |
| 5. | Liquidating Trustee | 20 |
| 6. | Termination of the Liquidating Trust | 22 |
| D. | U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust | 22 |
| E. | Preservation of Causes of Action | 24 |
| F. | Corporate Action | 24 |
| 1. | Transfer of Assets and Assumption of Liabilities | 24 |
| 2. | Dissolution of the Debtors; Removal of Directors and Officers; Termination of Employees | 24 |
| G. | Books and Records | 25 |
| H. | Plan Transactions | 25 |
| I. | Effectuating Documents and Further Transactions | 25 |
| J. | Section 1146 Exemption from Certain Taxes and Fees | 25 |
| K. | Sale Orders | 26 |
| L. | Authority to Act | 26 |
| M. | No Revesting of Liquidating Trust Assets | 26 |

ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES ........ 26

| | | |
|---|---|---|
| A. | General Treatment | 26 |
| B. | Rejection Damages Claims | 27 |
| C. | Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases. | 27 |
| D. | Insurance Preservation | 27 |

ARTICLE VI.   PROVISIONS GOVERNING DISTRIBUTIONS ........ 28

| | | |
|---|---|---|
| A. | Distribution Record Date | 28 |
| B. | Withholdings | 28 |
| C. | Date of Distributions | 28 |
| D. | Disbursing Agent | 29 |
| E. | Powers of Disbursing Agent | 29 |

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| F. | Surrender of Instruments | 29 |
| G. | IRS Forms | 29 |
| H. | Delivery of Distributions | 30 |
| I. | Manner of Payment | 30 |
| J. | Foreign Currency Exchange Rate | 30 |
| K. | Setoffs and Recoupments | 30 |
| L. | Minimum Distributions | 31 |
| M. | Allocation of Distributions Between Principal and Interest | 31 |
| N. | Distributions Free and Clear | 31 |
| O. | Claims Paid or Payable by Third Parties | 31 |
| 1. | Claims Paid by Third Parties | 31 |
| 2. | Claims Payable by Third Parties | 32 |
| 3. | Applicability of Insurance Policies | 32 |

ARTICLE VII.   PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS ... 32

| | | |
|---|---|---|
| A. | Allowance of Claims | 32 |
| B. | Claims Administration Responsibilities | 32 |
| C. | Estimation of Claims | 32 |
| D. | Adjustment to Claims Without Objection | 33 |
| E. | Time to File Objections to Claims | 33 |
| F. | Disallowance of Late Claims | 33 |
| G. | Disputed Claims | 33 |
| H. | No Distributions Pending Allowance | 34 |
| I. | Distributions After Allowance | 34 |

ARTICLE VIII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ... 34

| | | |
|---|---|---|
| A. | Conditions Precedent | 34 |
| B. | Waiver of Conditions | 35 |
| C. | Effect of Vacatur of the Confirmation Order | 35 |
| D. | Votes Solicited in Good Faith | 35 |

ARTICLE IX.   RELEASE, INJUNCTION, AND RELATED PROVISIONS ... 35

| | | |
|---|---|---|
| A. | Releases by the Debtors | 35 |
| B. | Releases by Holders of Claims | 36 |

# TABLE OF CONTENTS
(continued)

| | | |
|---|---|---|
| C. | Exculpation | 37 |
| D. | Injunction | 37 |
| E. | Waiver of Statutory Limitations on Releases | 38 |
| F. | No Discharge | 38 |
| G. | Release of Liens | 39 |

| | |
|---|---|
| ARTICLE X.   RETENTION OF JURISDICTION | 39 |
| ARTICLE XI.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | 41 |

| | | |
|---|---|---|
| A. | Modification of the Plan | 41 |
| B. | Other Amendments | 41 |
| C. | Effect of Confirmation on Modifications | 41 |
| D. | Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date | 41 |

| | |
|---|---|
| ARTICLE XII.   MISCELLANEOUS PROVISIONS | 42 |

| | | |
|---|---|---|
| A. | Debtors' Operation from Combined Confirmation Hearing Through Effective Date | 42 |
| B. | Immediate Binding Effect | 42 |
| C. | Additional Documents | 42 |
| D. | Substantial Consummation | 42 |
| E. | Reservation of Rights | 43 |
| F. | Successors and Assigns | 43 |
| G. | Determination of Tax Liabilities | 43 |
| H. | Dissolution of the Committee | 43 |
| I. | Notices | 43 |
| J. | Term of Injunctions or Stays | 44 |
| K. | Entire Agreement | 45 |
| L. | Plan Supplement Exhibits | 45 |
| M. | Governing Law | 45 |
| N. | Non-Severability of Plan Provision Upon Confirmation | 45 |
| O. | Closing of the Chapter 11 Cases | 46 |

# INTRODUCTION

LL Flooring Holdings, Inc. and its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, propose this joint chapter 11 plan (this "Plan") under section 1121 of the Bankruptcy Code.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  Supplemental agreements and documents referenced in this Plan and the Disclosure Statement are available for review on both the Bankruptcy Court's docket and on the Debtors' case information website: https://cases.stretto.com/llflooring/.

Reference is made to the Disclosure Statement filed contemporaneously with the Plan for a discussion of the Debtors' history, business, historical financial information, and liquidation analysis, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under this Plan.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN**.

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    <u>Definitions</u>

The following terms, when used in this Plan, or any subsequent amendments or modifications thereof, have the respective meanings hereinafter set forth and shall be equally applicable to the singular and plural of terms defined.

1.    "<u>Administrative Claim(s)</u>" means a Claim entitled to priority under section 503(b) or 507(a)(2) of the Bankruptcy Code, including (a) actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and the ongoing liquidation of the Debtors, (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court), and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

2.    "<u>Administrative Claims Bar Date</u>" means the deadline for Filing all requests for allowance and payment of Administrative Claims (other than requests for payment of Professional Fee Claims by Retained Professionals or requests for payment of claims pursuant to section 503(b)(9) of the Bankruptcy Code), which shall be thirty (30) days after the Effective Date.

3.    "<u>Affiliate</u>" means any "affiliate," as defined in section 101(2) of the Bankruptcy Code, as if such entity was a debtor in a case under the Bankruptcy Code.

4.    "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided in the Plan:  (a) a Claim that is evidenced by a Filed Proof of Claim (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not

disputed, and for which no Proof of Claim has been Filed; (c) a Claim Allowed pursuant to the Bankruptcy Code, the Plan, or a Final Order of the Bankruptcy Court; or (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or the Liquidating Trustee, as applicable; *provided* that with respect to a Claim described in clause (a) above, such Claim shall be considered Allowed only if, and to the extent that, with respect to such Claim, no objection to the allowance thereof has been Filed by the Debtors, the Liquidating Trustee, or any other party in interest within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection was so Filed and the Claim shall have been Allowed by a Final Order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtors to the Debtors or the Liquidating Trust (as applicable).  "Allow" and "Allowing" shall have correlative meanings.

5.     "APAs" means, collectively, (a) the F9 Asset Purchase Agreement and (b) the Sandston DC Purchase Agreement.

6.     "Avoidance Actions" means any and all avoidance or equitable subordination or recovery actions under sections 105(a), 502(d), 510, 542 through 551 and 553 of, and otherwise under, the Bankruptcy Code or any similar federal, state or common law Causes of Action that the Debtors, the Estates, or other appropriate parties in interest have asserted or may assert; *provided, however*, that (i) any and all such actions that were sold to F9, if any, pursuant to the F9 Purchase Agreement; and (ii) any and all such actions against parties whom the Debtors have waived preferences shall not constitute "Avoidance Actions" for purposes hereof.

7.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

8.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

9.     "Bankruptcy Rule(s)" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code.

10.     "Bar Date" means, as applicable, the Administrative Claims Bar Date, and any other date or dates established by an order of the Bankruptcy Court by which Proofs of Claim must be Filed, including the general bar date and bar date for Governmental Units, each as set forth in the *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to File Proofs of Claim By Governmental Units,(III) Establishing a Rejection Damages Bar Date, (IV) Establishing an Amended Schedules Bar Date, (V) Approving the Form and Manner for Filing Proofs of Claim, (VI) Approving the Proposed Notices of Bar Dates, (VII) Approving Procedures with Respect to Service of the Proposed Notice of Bar Dates, (VIII) Authorizing the Debtors to Serve the Customer Notice by Email, and (IX) Granting Related Relief* [Docket No. 408].  Notwithstanding the foregoing, the Professional Fee Claims shall be Filed in accordance with Article II.B herein and shall not otherwise be subject to the Bar Date.

11.    "<u>Business Day</u>" means any day, other than a Saturday, Sunday, or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

12.    "<u>Buyers</u>" means, collectively, (a) F9 and (b) SNA.

13.    "<u>Cash</u>" means cash and cash equivalents in legal tender of the United States of America.

14.    "<u>Causes of Action</u>" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action or state law fraudulent transfer claim.

15.    "<u>Chapter 11 Cases</u>" means the chapter 11 cases Filed by the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

16.    "<u>Claim(s)</u>" means any "claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtors or the Estates.

17.    "<u>Claims Objection Deadline</u>" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other deadline as may be fixed by an order of the Bankruptcy Court for objecting to such Claims.

18.    "<u>Claims Register</u>" means the official register of Claims against and Interests in the Debtors maintained by the Notice and Claims Agent.

19.    "<u>Class</u>" means a category of Claims or Interests as established by and set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

20.    "<u>Combined Confirmation Hearing</u>" means the hearing(s) conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to (a) consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code and (b) final approval of the adequacy of the disclosures contained in the Disclosure Statement, as such hearing(s) may be adjourned or continued from time to time.

21.     "<u>Committee</u>" means the Official Committee of Unsecured Creditors, appointed by the U.S. Trustee in the Chapter 11 Cases on August 21, 2024 [Docket No. 116], as it may be reconstituted from time to time.

22.     "<u>Confirmation</u>" means the entry of the Confirmation Order by the Bankruptcy Court.

23.     "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

24.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "<u>Cure</u>" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed or assumed and assigned by the Debtors.

26.     "<u>D&O Policies</u>" means, collectively, the Debtors' director and officer liability insurance policies along with any other applicable directors and officers liability insurance policies, including primary insurance, excess insurance, or tail insurance policies.

27.     "<u>Debtors</u>" means LL Flooring Holdings, Inc. and each of its affiliates in the Chapter 11 Cases as debtors and debtors-in-possession.

28.     "<u>Debtor Releases</u>" means the releases set forth in Article IX.A herein.

29.     "<u>DIP ABL Agent</u>" means Bank of America, N.A., as administrative agent and collateral agent under the DIP ABL Agreement.

30.     "<u>DIP ABL Agreement</u>" means that certain *Senior Secured Super-Priority Debtor-In-Possession Credit Agreement* by and among LL Flooring, Inc., as the lead borrower, each of the other Debtors party thereto as a borrower and/or a guarantor, as applicable, the DIP ABL Agent, and the DIP ABL Lenders.

31.     "<u>DIP ABL Lenders</u>" means the lenders party to the DIP ABL Agreement.

32.     "<u>DIP Orders</u>" means, collectively, (a) the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 75] and (b) *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 336].

33.    "Disbursing Agent" means the Debtors, the Liquidating Trustee, or the Entity(ies) selected by the Liquidating Trustee, which Entity(ies) may include the Notice and Claims Agent, as applicable, to make or to facilitate distributions pursuant to the Plan.

34.    "Disclosure Statement" means the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation for LL Flooring Holdings, Inc. and Its Affiliated Debtors*, dated [[__]] (as such may be amended, supplemented, or modified from time to time), including all exhibits and schedules thereto and references therein that relate to this Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

35.    "Disclosure Statement Order" means the order entered by the Bankruptcy Court approving the Disclosure Statement on an interim basis, entered on _____, 2024 [Docket No. _____].

36.    "Disputed" means, with respect to any Claim, except as otherwise provided herein, a Claim that is not Allowed and not disallowed under the Plan, the Bankruptcy Code, or a Final Order.

37.    "Disputed Claims Reserve" means any portion of the Liquidating Trust Assets that is reserved for Disputed Claims.

38.    "Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions under the Plan, which date shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

39.    "Effective Date" means the date that is the first Business Day after the entry of the Confirmation Order on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent to the occurrence of the Effective Date, as set forth in Article VIII.A herein, have been satisfied or waived in accordance with the Plan; and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

40.    "Effective Date Cash Amount" means the Debtors' aggregate amount of Cash on hand as of the Effective Date, to be determined following (a) payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims; and (b) funding of the Professional Fee Reserve.

41.    "Entity" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

42.    "Estates" mean the bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

43.    "Exculpated Party" or "Exculpated Parties" means, in each case in its capacity as such, (a) the Debtors; (b) the Estates; (c) the Committee and its members; (d) the Liquidating Trustee; and (e) each of the preceding parties' respective Related Parties, in each case, who served as a fiduciary of the Debtors' Estates at any time between the Petition Date and the Effective Date of this Plan.

44.    "Executory Contract(s)" means a contract to which one or more Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

45.    "F9" means, collectively, LumLiQ2, LLC, as purchaser, and F9 Investments, LLC, as guarantor under the F9 Asset Purchase Agreement.

46.    "F9 Purchase Agreement" means that certain Asset Purchase Agreement, dated September 6, 2024, between the Debtors and F9 (as may be amended or modified from time to time in accordance with the terms thereof, including all schedules and exhibits thereto).

47.    "F9 Sale" means the sale of the Debtors' assets to F9 pursuant to the F9 Purchase Agreement.

48.    "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or in the case of a Proof of Claim, the Notice and Claims Agent.

49.    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

50.    "General Unsecured Claim(s)" means any unsecured, non-priority Claim against the Debtors or the Estates.

51.    "Governmental Unit(s)" means a "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

52.    "Holder(s)" means a Person or Entity, as applicable, holding a Claim against, or an Interest in, the Debtors, as the context requires.

53.    "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

54.    "Insurance Policies" means all insurance policies that have been issued at any time to or provide coverage to the Debtors and all agreements, documents, or instruments relating thereto, including the D&O Policies.

55.     "Interest(s)" means equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including without limitation, equity or equity-based incentives, grants, or other instruments issued, granted, or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interest in the Debtors that existed immediately before the Petition Date.

56.     "Interim Compensation Order" means that certain order of the Bankruptcy Court entered on September 4, 2024 [Docket No. 209].

57.     "IRS Form" means IRS Form W-9, W-8BEN, any acceptable substitute, or any other tax information form that the Disbursing Agent may require from a Holder of a Claim for a distribution under the Plan.

58.     "Law" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

59.     "Lien" means a "lien," as defined in section 101(37) of the Bankruptcy Code.

60.     "Liquidating Trust" means the liquidating trust established on the Effective Date pursuant to Article IV herein and the Liquidating Trust Agreement.

61.     "Liquidating Trust Agreement" means the agreement, filed with the Plan Supplement and executed as of the Effective Date, that establishes and governs the Liquidating Trust.

62.     "Liquidating Trust Assets" means (a) the Effective Date Cash Amount; and (b) all other assets of each of the Debtors, including, but not limited to, (i) all tangible and intangible assets, (ii) the Retained Causes of Action, (iii) the Debtors' books and records, including, without limitation, all documents, communications, and information of the Debtors, including, without limitation, such documents, communications, and information protected by the attorney-client privilege, the work-product privilege, and any other applicable evidentiary privileges. For the avoidance of doubt, the Debtors' cash reserved for (a) payment of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Other Priority Claims and (b) funding of the Professional Fee Reserve shall not constitute Liquidating Trust Assets, and the Holders of such Claims shall not be Liquidating Trust Beneficiaries; *provided*, *however*, that any such Claims that are not paid prior to the Effective Date will be paid by the Liquidating Trust from the cash reserved for the payment of such Claims.

63.     "Liquidating Trust Beneficiaries" means all Holders of Allowed General Unsecured Claims.

64.     "Liquidating Trustee" means the trustee selected by the Committee, in consultation with the Debtors, and appointed by the Debtors and identified in the Plan Supplement to act as

trustee of, and to administer, the Liquidating Trust, and take such other actions as may be authorized under the Liquidating Trust Agreement, along with any successor thereto.

65. "Notice and Claims Agent" means Stretto, Inc. in its capacity as noticing, claims, and solicitation agent for the Debtors.

66. "OCP" means an ordinary course professional whose retention and compensation has been authorized by the Bankruptcy Court in accordance with the OCP Order.

67. "OCP Order" means the *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 273] entered on September 11, 2024.

68. "Other Priority Claim(s)" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

69. "Person" means a "person," as defined in section 101(41) of the Bankruptcy Code.

70. "Petition Date" means August 11, 2024, which is the date on which each Debtor Filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Cases.

71. "Plan" means this plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

72. "Plan Supplement" means a supplemental appendix to the Plan consisting of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the Plan, the Bankruptcy Code and the Bankruptcy Rules), which shall be Filed by the Debtors no later than seven (7) days before the Voting Deadline to accept or reject the Plan or such later date that may be approved by the Bankruptcy Court on notice to parties in interest. The Plan Supplement shall include, among other things, (a) the identity and compensation of the Liquidating Trustee; (b) the Liquidating Trust Agreement; (c) to the extent known, the identity of any insider that will be employed or retained by the Liquidating Trustee, and the nature of any compensation for such insider; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the schedule of Retained Causes of Action; and (f) other documentation necessary to effectuate the Plan or that is contemplated by the Plan. For the avoidance of doubt, the Debtors shall have the right to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules.

73. "Prepetition ABL Agent" means Bank of America, N.A., as administrative agent and collateral agent under the Prepetition ABL Agreement.

74.    "<u>Prepetition ABL Agreement</u>" means that certain Fourth Amended and Restated Credit Agreement, as amended, by and among LL Flooring, Inc., as the lead borrower, LL Flooring Services, LLC, as an additional borrower, LL Flooring Holdings, Inc., Lumber Liquidators Foreign Holdings, LLC, and Lumber Liquidators Leasing, LLC as guarantors, the Prepetition ABL Agent, and the Prepetition ABL Lenders.

75.    "<u>Prepetition ABL Lenders</u>" means the lenders party to the Prepetition ABL Agreement.

76.    "<u>Priority Tax Claim(s)</u>" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

77.    "<u>Professional Fee Claim(s)</u>" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Effective Date under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable.

78.    "<u>Professional Fee Reserve</u>" means the reserve established and funded by the Debtors prior to the Effective Date to satisfy the unpaid Professional Fee Claims of the Retained Professionals.

79.    "<u>Professional Fee Reserve Amount</u>" has the meaning set forth in Article II.B.4 herein.

80.    "<u>Proof of Claim</u>" means a proof of Claim Filed against a Debtor in the Chapter 11 Cases.

81.    "<u>Related Party</u>" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

82.    "<u>Release Opt-In Election</u>" means the timely election to "opt in" to being a Releasing Party by (a) submitting a ballot by the Voting Deadline either voting to accept or reject the Plan or abstaining from voting on the Plan and (b) selecting the option set forth on the ballot to grant the releases set forth in Article IX of this Plan.

83.    "<u>Released Party</u>" means each of, and in each case in its capacity as such: (a) the Debtors' and the Estates' Related Parties; (b) the Committee and its members; (c) the Prepetition ABL Agent and the Prepetition ABL Lenders; (d) the DIP ABL Agent and the DIP ABL Lenders; and (e) the Related Parties of each of the parties identified in clause (b)-(d) of this section I.83; *provided*, *however*, that the Debtors' current and former directors and officers shall not be Released

Parties with respect to the Retained Causes of Action listed in the Plan Supplement, which the Liquidating Trustee shall be entitled to pursue solely to the extent of any available insurance coverage for such Retained Causes of Action.

84.    "Releasing Parties" means, in their capacities as such: (a) the Committee and its members; (b) all Holders of General Unsecured Claims who (i) vote to accept the Plan and "opt in" to the releases set forth in Article IX of the Plan, (ii) vote to reject the Plan and "opt in" to the releases set forth in Article IX of the Plan or (iii) abstain from voting on the Plan and "opt in" to the releases set forth in Article IX of the Plan, and (c) each Related Party of each Entity in clause (a) through (b), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (b).

85.    "Retained Causes of Action" means the schedule of Causes of Action to be retained by the Debtors and not released pursuant to Article IX.A herein, which shall be filed with the Plan Supplement.

86.    "Retained Professional(s)" means a Person or Entity employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328, 363, and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

87.    "Sales" means, together, the F9 Sale and the Sandston DC Sale.

88.    "Sale Orders" means (i) the order entered by the Bankruptcy Court authorizing the sale of the Debtors' assets to F9 pursuant to sections 363 and 365 of the Bankruptcy Code and in accordance with the F9 Purchase Agreement [Docket No. 336] and (ii) the order entered by the Bankruptcy Court authorizing the sale of the Debtors' Sandston DC to SNA pursuant to section 363 of the Bankruptcy Code and in accordance with the Sandston DC Purchase Agreement.

89.    "Sandston DC" means the Debtors' distribution center located in Sandston, Henrico County, Virginia.

90.    "Sandston DC Purchase Agreement" means that certain Purchase and Sale Agreement dated as of August 30, 2024, pursuant to which SNA purchased the Sandston DC.

91.    "Sandston DC Sale" means the sale of the Debtors' Sandston DC to SNA pursuant to the Sandston DC Purchase Agreement.

92.    "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time in accordance with the Plan.

93.    "Schedules" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Bankruptcy Rules, and the official bankruptcy forms, as the same may be amended, modified, or supplemented from time to time.

94.    "Secured Claim(s)" means any Claim against a Debtor where, pursuant to section 506 of the Bankruptcy Code, the Claim is secured by a valid, perfected, and enforceable Lien that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title, or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date. The term "Secured Claim" includes any Claim that is (a) subject to an offset right under applicable law as of the Petition Date; and (b) secured against the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

95.    "SNA" means SNA NE, LLC, a Delaware limited liability company.

96.    "Statutory Fees" means all fees due and payable pursuant to section 1930 of Title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

97.    "Subordinated Claim(s)" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise.

98.    "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

99.    "Unexpired Lease(s)" means a lease to which a Debtor is a party and subject to assumption or rejection under section 365 of the Bankruptcy Code.

100.   "Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

101.   "Voting Deadline" means the date and time by which all ballots to accept or reject the Plan must be received to be counted.

## B.    Rules of Interpretation

For the purposes of the Plan, and except as otherwise provided herein, the following rules of interpretation shall apply: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) all references in the Plan to "Articles" and "Exhibits" are references to the articles and exhibits of or to the Plan unless otherwise noted; (6) the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) the words "includes" or "including" are not limiting; (8) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified, references in the Plan to "Docket No." refer to entries on the Chapter 11 Cases' docket; (10) subject

to the provisions of any contract, certificate of incorporation, by-laws, or similar constituent document, instrument, release, or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules, and, to the extent applicable, the laws of the State of Delaware; (11) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (12) all references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### C.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

### D.    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan Supplement shall control.  In the event of an inconsistency between the Plan or the Plan Supplement and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III herein.

### A.    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee (as applicable), each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for Statutory Fees) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims, all applications seeking allowance and payment of Administrative Claims must be Filed and served on the Debtors or the Liquidating Trustee (as applicable) and their counsel no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of the occurrence of the Effective

Date.  The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objection to such applications must be Filed and served on the requesting party by the Claims Objection Deadline.  After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

**Except as otherwise provided in Articles II.B or II.D herein, Holders of Administrative Claims that do not File and serve an application for payment of administrative expense requesting the allowance of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or their assets and properties, and any Administrative Claims shall be deemed disallowed as of the Effective Date, without further order of this Court, unless otherwise ordered by the Court.**

### B.     Professional Fee Claims and Administrative Claims of OCPs

#### 1.     Final Fee Applications

All requests for payment of Professional Fee Claims by Retained Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than forty-five (45) days after the Effective Date.  Objections to Professional Fee Claims must be Filed and served no later than twenty-one (21) days after the Filing of the Professional Fee Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims of Retained Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  Unless otherwise agreed to by the Debtors and the Retained Professional, the Liquidating Trustee shall pay Professional Fee Claims that are Allowed by Final Order following the Effective Date in Cash from the Professional Fee Reserve within five (5) Business Days of the entry of such Final Order.

#### 2.     Administrative Claims of OCPs

All requests for payment of Administrative Claims of OCPs shall be made pursuant to the OCP Order.  To the extent any Administrative Claims of the OCPs have not been paid pursuant to the OCP Order on or before the Effective Date, the amount of Administrative Claims owing to the OCPs shall be paid in Cash to such OCPs by the Debtors or the Liquidating Trustee (as applicable) as soon as reasonably practicable after such Administrative Claims are authorized in accordance with the OCP Order.

#### 3.     Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the Chapter 11 Cases that are incurred after the Effective Date.  Upon the Effective Date, any requirement that Retained Professionals comply with sections 327 through 331 of the Bankruptcy Code or that OCPs comply with the OCP

Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any retained professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Code.

4.      Professional Fee Reserve Amount

Unless otherwise agreed to prior to the Effective Date by the Debtors and the Retained Professional, to receive payment for (a) unbilled fees and expenses incurred through the Effective Date and (b) unbilled fees and expenses anticipated to be incurred post-Effective Date in connection with the preparation of the Retained Professionals' Professional Fee Claims, the Retained Professionals shall estimate such amounts and shall deliver such estimates to the Debtors and their counsel no later than three (3) Business Days prior to the Effective Date; *provided* that such estimates shall not be binding with respect to the fees and expenses of such Retained Professional.  If a Retained Professional does not provide an estimate of its unbilled fees and expenses, the Debtors may estimate such unbilled fees and expenses of the Retained Professional. The total amount so estimated hereunder as of the Effective Date shall comprise the "Professional Fee Reserve Amount."  The Retained Professionals may submit invoices for their post-Effective Date services, including with respect to the preparation of Professional Fee Claims, to the Liquidating Trust in the ordinary course of business; *provided*, *however*, that any such invoices related to Professional Fee Claims shall be submitted to the Liquidating Trust no later than thirty (30) calendar days following entry of a Final Order Allowing such Professional Fee Claims.

5.      Professional Fee Reserve

On or before the Effective Date, the Debtors shall fund the Professional Fee Reserve with Cash equal to the Professional Fee Reserve Amount, which may be held in the trust accounts of one or more counsel to the Debtors.  If some or all of the Professional Fee Reserve Amount is not held in the trust account of one more counsel to the Debtors, the Liquidating Trustee is charged with administering the Professional Fee Reserve after the Effective Date and shall open a new and segregated account at an FDIC-insured institution to effectuate this purpose.

The Professional Fee Reserve and amounts funded therein are, and shall continue to be, maintained in trust solely for each Retained Professional separately on a per-Retained Professional basis.  Such funds shall not be considered property of the Debtors, their Estates, or the Liquidating Trust (as applicable); *provided*, *however*, that the Liquidating Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Reserve after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court.

**C.      Priority Tax Claims**

On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent a Holder of an Allowed Priority Tax Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Priority Tax Claim, each Holder thereof will be paid in full in Cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

D.  **U.S. Trustee Statutory Fees**

All Statutory Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the post-Effective Date Debtors  and the Liquidating Trustee, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. After the Effective Date, the post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall pay any and all applicable Statutory Fees in full in Cash when due and payable. The post-Effective Date Debtors and the Liquidating Trustee, as applicable, shall remain obligated to pay any applicable Statutory Fees until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be treated as providing any release under the Plan. Statutory Fees are Allowed. The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for Statutory Fees. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.  **Classification of Claims and Interests**

The Plan constitutes a separate chapter 11 plan for each Debtor.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors.  Unless otherwise specified, the Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution but not for any other purpose. The Debtors reserve the right to seek substantive consolidation of the Debtors in connection with Confirmation, but substantive consolidation shall not affect the legal and organizational structure of the post-Effective Date Debtors or their separate corporate existences and will not change the distributions to Holders of Claims compared to what is proposed in the Plan.

Except for the Claims addressed in Article II herein, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been otherwise paid, released, or satisfied at any time.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 5 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### B.    Treatment of Claims and Interests

1.    Class 1 –Secured Claims

(a)    *Classification*:  Class 1 consists of all Secured Claims against the Debtors.

(b)    *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Secured Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Secured Claim, each Holder thereof will receive: (i) payment in full in Cash; (ii) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of such Claim; or (iv) such other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired, and Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims

(a)    *Classification*:  Class 2 consists of all Other Priority Claims against the Debtors.

(b)    *Treatment*:   On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed Other Priority Claim, each Holder thereof will receive: (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy

Code.  Therefore, Holders of Class 2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

   3.  Class 3 – General Unsecured Claims

    (a) *Classification*:  Class 3 consists of all General Unsecured Claims against the Debtors.

    (b) *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* right to recovery from the Liquidating Trust.

    (c) *Voting*:  Class 3 is Impaired, and Holders of the General Unsecured Claims are entitled to vote to accept or reject the Plan.

   4.  Class 4 – Subordinated Claims

    (a) *Classification*:  Class 4 consists of all Subordinated Claims against the Debtors.

    (a) *Treatment*:  On the Effective Date, all Subordinated Claims shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claim.

    (b) *Voting*:  Class 4 is Impaired, and Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 4 Subordinated Claims are not entitled to vote to accept or reject the Plan.

   5.  Class 5 – Interests

    (b) *Classification*:  Class 5 consists of all Interests in the Debtors.

    (c) *Treatment*:  On the Effective Date, all Interests shall be canceled, released, and extinguished, and will be of no further force or effect, and Holders of such Interests shall not receive any distributions under the Plan on account of such Interest.

    (d) *Voting*:  Class 5 is Impaired, and Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 5 Interests are not entitled to vote to accept or reject the Plan.

## C. **Special Provisions Governing Unimpaired Claims**

   Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Liquidating Trustee's rights with respect to any Claims, including all legal and equitable defenses to or setoffs or recoupments against any Claims.

D.     **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Confirmation Hearing shall be deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.     **Controversy Concerning Impairment**

If a controversy arises as to whether any Claim or any Class of Claims or Interests is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Combined Confirmation Hearing.

F.     **Subordination of Claims**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, contract, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Liquidating Trustee (as applicable) reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.     **Reservation of Rights Regarding Claims**

Except as otherwise provided in the Plan or in other Final Orders of the Bankruptcy Court, nothing will affect the Debtors' or the Liquidating Trustee's respective rights and defenses, whether legal or equitable, with respect to any Claim, including, without limitation, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

H.     **Postpetition Interest on Claims**

Except as required by applicable bankruptcy law or otherwise expressly provided in the Plan, postpetition interest, penalties, or other fees will not accrue or be payable on account of any Claim.

I.     **Insurance**

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

32211662.13

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.        **Sources of Consideration for Plan Distributions**

Subject in all respects to the provisions of the Plan concerning the Professional Fee Reserve, the Debtors or the Liquidating Trustee (as applicable) shall fund distributions under the Plan with Cash on hand on the Effective Date and all other Liquidating Trust Assets.

B.        **Vesting of Assets**

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (1) the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in this Plan.

C.        **Liquidating Trust**

1.        Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement. Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

2.        Transfer of the Liquidating Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in this Plan. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

3.     Liquidating Trust Agreement

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors will be ratified.  The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

4.     Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (c) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (e) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

5.     Liquidating Trustee

(a)     *Appointment of the Liquidating Trustee*

Upon the occurrence of the Effective Date, the Liquidating Trustee shall also be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

(b)     *Liquidating Trustee as Representative of the Estates*

From and after the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estates for all purposes and as the sole officer and director of each of the post-Effective Date Debtors.  Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of this Plan, the Confirmation Order, and the Liquidating Trust Agreement.

(c)     *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets; (ii) administering and paying taxes, including, among other things, (1) filing tax returns and (2) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iii) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (iv) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (v) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vi) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (vii) making distributions to Retained Professionals for Allowed Professional Fee Claims, including from the Professional Fee Reserve; (viii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; and (ix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

(d)     *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of this Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following:  (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (iii) the power to pursue, prosecute, resolve, compromise, and settle any Retained Causes of Action, without notice to or approval from the Bankruptcy Court; (iv) the power to object to Claims, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to wind-down, liquidate, or otherwise dissolve the post-Effective Date

32211662.13

Debtors and their wholly-owned subsidiaries, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state law; and (vi) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of this Plan.

(e)     *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

(f)     *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.  For the avoidance of doubt, the Liquidating Trust can retain any professionals currently retained by the Committee.

6.     <u>Termination of the Liquidating Trust</u>

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to Liquidating Trust Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

**D.     <u>U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust</u>**

For all U.S. federal and applicable state, local, and non-U.S. income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Liquidating Trust, other than the Disputed Claims Reserve, as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684 and as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code. In furtherance of this objective, the Liquidating Trustee

shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trust. Moreover, for all U.S. federal and applicable state, local, and non-U.S. income tax purposes, it is intended that (1) the Liquidating Trust Beneficiaries be treated as if they had (i) received a distribution from the Estates of an undivided interest in the Liquidating Trust Assets (to the extent of the value of their respective share in the applicable Assets) and (ii) subsequently contributed such undivided interest to the Liquidating Trust in exchange for an interest in the Liquidating Trust, and (2) the Liquidating Trust Beneficiaries be treated as the grantors of the Liquidating Trust and as deemed owners of the Liquidating Trust and Liquidating Trust Assets. The terms of the Liquidating Trust Agreement shall be consistent with the foregoing tax treatment and no party hereto shall take any position inconsistent herewith.

For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.  Following the funding of the Liquidating Trust, LL Flooring Holdings, Inc. shall provide a "§ 1.468B-9 Statement" in respect of the Disputed Claims Reserve to the Liquidating Trustee in accordance with Treasury Regulation section 1.468B-9(g).

The Liquidating Trustee shall be responsible for filing all tax returns for the Liquidating Trust, the Liquidating Trust Assets, and the Debtors. The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets. The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete and deliver to the Liquidating Trustee the appropriate IRS Form W-8 or IRS Form W-9, as applicable.  Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a distribution from the Liquidating Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution and (ii) no distribution shall be made to or on behalf of such Holder under the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements.  All Holders of Allowed General Unsecured Claims are deemed to have agreed to use the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as established by the Liquidating Trustee for all federal income tax purposes.

E.    **Preservation of Causes of Action**

Except as otherwise provided in Article IX herein or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sales, in accordance with section 1123(b) of the Bankruptcy Code, all Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date.

F.    **Corporate Action**

1.    Transfer of Assets and Assumption of Liabilities

On the Effective Date, (a) the Debtors shall, in accordance with this Plan, cause the Liquidating Trust Assets to be transferred to the Liquidating Trust; and (b) the Liquidating Trust shall assume all obligations of the Debtors under this Plan.

2.    Dissolution of the Debtors; Removal of Directors and Officers; Termination of Employees

On the Effective Date, and upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall be dissolved for all purposes unless the Liquidating Trustee determines that dissolution can have any adverse impact on the Liquidating Trust Assets; *provided*, *however*, that neither the Debtors nor any party released pursuant to Article IX herein shall be responsible for any liabilities that may arise as a result of non-dissolution of the Debtors; *provided further*, *however*, that nothing in the Plan shall be construed as relieving the Debtors or the Liquidating Trustee (as applicable) of their duties to pay Statutory Fees to the U.S. Trustee as required by the Bankruptcy Code and applicable law until such time as a final decree is entered in the Chapter 11 Cases or the Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code. The Liquidating Trustee shall submit with the appropriate Governmental Units a copy of the Confirmation Order, which Confirmation Order shall suffice for purposes of obtaining a Certificate of Dissolution from the Delaware Secretary of State.

Without limiting the foregoing, on the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the directors and officers of the Debtors shall be deemed to have resigned and the employees of the Debtors terminated. From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estates, provided that the Liquidating Trustee shall have no duties other than as expressly set forth in this Plan and the Liquidating Trust Agreement (as applicable).

After the Effective Date, the Debtors will continue to exist solely with respect to (i) any applications for Professional Fee Claims or expense reimbursements for its Retained Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order. Following the Effective Date, the Debtors' Retained Professionals shall be entitled to reasonable compensation for services

32211662.13

24

rendered in connection with the matters identified in clauses (i) through (iii). Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### G.    Books and Records

On the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with the Sales and that relate to the operation and business of the Liquidating Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that retention of same is no longer necessary or beneficial.

### H.    Plan Transactions

On the Effective Date or as soon reasonably practicable thereafter, the Debtors and the Liquidating Trustee (as applicable) may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including, but not limited to, (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with this Plan; (3) the filing of appropriate documents with the appropriate governmental authorities pursuant to applicable law; and (4) any and all other actions that the Debtors or the Liquidating Trustee (as applicable) determine are necessary or appropriate to effectuate the Plan.

### I.    Effectuating Documents and Further Transactions

Upon entry of the Confirmation Order, the Debtors and the Liquidating Trustee (as applicable) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtors, the Liquidating Trustee, all Holders of Claims receiving distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### J.    Section 1146 Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other

documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.  Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

### K.    Sale Orders

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Orders, which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### L.    Authority to Act

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, or other owners of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the state in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, or other owners of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### M.    No Revesting of Liquidating Trust Assets

No Liquidating Trust Asset will revest in the Debtors on or after the date such asset is transferred to the Liquidating Trust but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND INSURANCE POLICIES

### A.    General Treatment

On the Effective Date, except as otherwise provided herein (which exclusion includes the Insurance Policies), all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code other than those Executory Contracts or Unexpired Leases that are the subject of a motion to assume that is pending on the Confirmation Date or identified on the Schedule of Assumed Executory Contracts and Unexpired Leases.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan, and payment of any cure amounts relating thereto, shall, upon satisfaction of the applicable requirements of section 365 of the Bankruptcy Code, result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any Proofs of Claim Filed with respect to an

32211662.13

Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court upon the cure of all defaults under such Executory Contract or Unexpired Lease to the extent required under the Bankruptcy Code.

**B.      Rejection Damages Claims**

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by the Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent within thirty (30) days of the Effective Date.

The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order; any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable. Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with Article III.B.3 herein.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order that are not timely Filed within thirty (30) days of the Effective Date will be automatically disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Estates, the Liquidating Trustee, Liquidating Trust, or any of their respective assets and properties.**

**C.      Preexisting Obligations to Debtors under Executory Contracts or Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or Liquidating Trustee (as applicable) under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Liquidating Trustee (as applicable) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, indemnity or continued maintenance obligations.

**D.      Insurance Preservation**

Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.      Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Disbursing Agent shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Disbursing Agent shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Liquidating Trustee (as applicable); *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder and the Debtors or Liquidating Trustee (as applicable) shall have no obligation to determine alternative or current addresses.

### B.      Withholdings

The Liquidating Trustee shall (1) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to the Liquidating Trust Agreement; and (2) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority.  The Liquidating Trustee may withhold all or the appropriate portion of any distribution due to any Liquidating Trust Beneficiary until such time as such Liquidating Trust Beneficiary provides the necessary information (*i.e.*, IRS Forms) to comply with any withholding requirements of any governmental authority.  Any tax withheld shall be treated as distributed and received by the applicable beneficiary for all purposes of the Liquidating Trust Agreement and Plan.  If a Liquidating Trust Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority on or before the day that is six (6) months after the Effective Date of the Plan, then such beneficiary's distribution may be treated as unclaimed property in accordance with the Liquidating Trust Agreement.

### C.      Date of Distributions

Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably

practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.    Disbursing Agent

Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.  If the Disbursing Agent is otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Liquidating Trust.

### E.    Powers of Disbursing Agent

The Disbursing Agent may (1) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan; (2) make all distributions contemplated hereby; and (3) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### F.    Surrender of Instruments

As a condition precedent to receiving any distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee.  Any holder of such instrument or note that fails to (1) surrender the instrument or note; or (2) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights and claims and may not participate in any distribution hereunder.

### G.    IRS Forms

In connection with the Plan, to the extent applicable, the Debtors and the Liquidating Trustee (as applicable) shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Debtors and the Liquidating Trustee (as applicable) shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

As a condition precedent to receiving any distribution under this Plan, each Holder of an Allowed Claim that is entitled to a distribution under the Plan must provide the Liquidating Trustee an executed IRS Form.  An Allowed Claim of a Holder that fails to provide an executed IRS Form or provide any other required information to effectuate a distribution within sixty (60) days after

service (by first class mail) of a formal request for the same by the Liquidating Trustee shall be deemed disallowed and expunged for purposes of distributions under the Plan.  For the avoidance of doubt, the Liquidating Trust is not required to follow up with any Holder of an Allowed Claim if they fail to timely provide an executed IRS Form.

## H.    Delivery of Distributions

Subject to applicable Bankruptcy Rules, all distributions to Holders of Allowed Claims shall be made by the Disbursing Agent, who shall transmit such distributions to the applicable Holders of Allowed Claims or their designees.

If any distribution to a Holder of an Allowed Claim (a) is returned as undeliverable for lack of a current address or otherwise; or (b) is not cashed or otherwise presented for collection by the Holder of the Allowed Claim within sixty (60) calendar days after the mailing of such distribution, the Liquidating Trustee shall be authorized to cancel such distribution check.  For the avoidance of doubt, the Liquidating Trustee shall have no obligation to determine the correct current address of such Holder.  Thirty (30) calendar days after the cancellation of a distribution check by the Liquidating Trustee, (a) the Holder of such Claim shall cease to be entitled to the undeliverable distribution or uncashed distribution, which will revert to the Liquidating Trust for distribution in accordance with the Plan and the Liquidation Trust Agreement; and (b) the Allowed Claim of such Holder shall be deemed disallowed and expunged for purposes of further distributions under the Plan.

## I.    Manner of Payment

Any distributions to be made by or on behalf of the Debtors or the Liquidating Trustee (as applicable) pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtors or the Liquidating Trustee (as applicable), or by wire transfer if circumstances justify, at the option of the Debtors or the Liquidating Trustee (as applicable).

## J.    Foreign Currency Exchange Rate

As of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal* on the Petition Date.

## K.    Setoffs and Recoupments

The Debtors or the Liquidating Trustee (as applicable), pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy and/or non-bankruptcy law, without the approval of the Bankruptcy Court and upon no less than fourteen (14) calendar days' notice to the applicable Holder of a Claim, or as may be agreed to by the Holder of a Claim, may, but shall not be required to, set off against or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors or their Estates may have against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee (as

32211662.13

applicable) of any such claim the Debtors or their Estates may have against the Holder of such Claim. The Liquidating Trustee shall be required to file such notice on the docket of the Chapter 11 Cases.

### L.    Minimum Distributions

No payment of Cash in an amount of less than fifty U.S. dollars ($50.00) shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement.

If the Cash available for the final distribution is less than the cost to distribute such funds, the Liquidating Trustee may donate such funds to the unaffiliated charity of the Liquidating Trustee's choice.

### M.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under this Plan includes both principal and accrued but unpaid prepetition interest, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid prepetition interest.

### N.    Distributions Free and Clear

Except as otherwise provided in this Plan, any distribution or transfer made under this Plan shall be free and clear of any Liens, Claims, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to this Plan.

### O.    Claims Paid or Payable by Third Parties

#### 1.    Claims Paid by Third Parties

If a Holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors and/or the Liquidating Trustee (as applicable) on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors and/or the Liquidating Trustee (as applicable), then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Debtors or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however,* that a notice of satisfaction shall be Filed and served reflecting that a particular Claim has been satisfied. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors and/or the Liquidating Trustee (as applicable) on account of such Claim, such Holder shall, within fourteen (14) Business Days of receipt thereof, repay or return the distribution to the Debtors or Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party

and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

        2.      <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged (and the Claims Register adjusted accordingly) without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

        3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall take into account payments made in accordance with the provisions of any applicable Insurance Policy. Except as set forth in Article IX herein, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including the Liquidating Trust, may hold against any other Person or Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING UNLIQUIDATED AND DISPUTED CLAIMS

    **A.**    <u>**Allowance of Claims**</u>

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date.

    **B.**    <u>**Claims Administration Responsibilities**</u>

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

    **C.**    <u>**Estimation of Claims**</u>

Before or after the Effective Date, the Debtors or the Liquidating Trustee (as applicable) may (but is not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the

Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.

Notwithstanding any provision otherwise herein, a Claim that has been expunged or disallowed from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtors or the Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

### D.    Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or assumed by Buyers in the Sales, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidating Trustee (as applicable) without an objection to such Claim having to be Filed following notice filed on the docket (*i.e.*, a notice of satisfaction of claims) in the Bankruptcy Court of such adjustment or expungement.

### E.    Time to File Objections to Claims

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended upon entry of an order by the Bankruptcy Court).

### F.    Disallowance of Late Claims

Except as provided in the Plan or otherwise agreed to by the Debtors or the Liquidating Trustee (as applicable), any Holder of a Claim Filed, via proof of claim, after the Bar Date shall not receive any distributions on account of such Claims to the extent such Claim has been disallowed and expunged upon objection on notice to the affected Claimant; *provided, however,* that any Claim Filed, via proof of claim, after the Effective Date of the Plan shall not receive any distributions on account of such Claim unless, within sixty (60) days of filing such Claim, the Claim has been deemed timely Filed by a Final Order approving a motion by such Holder satisfying the standard for excusable neglect.

### G.    Disputed Claims

All Claims held by Persons or Entities against whom or which the Debtors or the Liquidating Trustee (as applicable) has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed Disputed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan.  A Claim deemed Disputed pursuant to this Article VII.G shall continue to be Disputed for all purposes until the relevant proceeding against the Holder of such Claim has been settled or resolved by a Final

Order and any sums due to the Debtors or the Liquidating Trustee (as applicable) from such Holder have been paid.

### H.        No Distributions Pending Allowance

If an objection to a Claim, Proof of Claim, or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim, Proof of Claim, or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

### I.        Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim. No interest shall accrue or be paid on any Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.        Conditions Precedent

The occurrence of the Effective Date of this Plan is subject to each of the following conditions precedent.

1.        The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.        The Confirmation Order shall have been entered and shall be in full force and effect.

3.        There shall have been no modification or stay of the Confirmation Order or entry of any other order prohibiting the transactions contemplated by this Plan from being consummated.

4.        The Professional Fee Reserve shall have been fully funded pursuant to the terms of this Plan.

5.        All actions, documents and agreements necessary to implement the Plan shall have been effected, executed and/or tendered for delivery. All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

6.      The Liquidating Trust Agreement shall have been executed.

7.      The Liquidating Trustee shall have been appointed and assumed its rights and responsibilities under the Plan and the Liquidating Trust Agreement, as applicable.

8.      The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any transaction contemplated hereby that are required by law, regulation, or order.

**B.      Waiver of Conditions**

Unless otherwise specifically provided for in this Plan, the conditions set forth in Article VIII.A may be waived in whole or in part by the Debtors, in consultation with the Committee, without notice to any parties in interest or the Bankruptcy Court and without a hearing.

**C.      Effect of Vacatur of the Confirmation Order**

If the Confirmation Order is vacated: (1) the Plan will be null and void in all respects, including with respect to the release of Claims and distributions for Allowed Claims; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

**D.      Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code.

**ARTICLE IX.**
**RELEASE, INJUNCTION, AND RELATED PROVISIONS**

**A.      Releases by the Debtors**

**As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code and for good and valuable consideration, each Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, by the Debtors and their Estates from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sales, the DIP Orders and any related agreement, instruments, and**

other documents relating thereto, the Plan, the Plan Supplement, or any other transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sales, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any obligations under or in respect of the Sale Orders or the APAs; or (3) the  Retained Causes of Action.

    **B.**    <u>**Releases by Holders of Claims**</u>

    **As of the Effective Date,  except as otherwise provided in the Plan or the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release each Released Party from any and all claims and Causes of Action, whether known or unknown, including any claims and Causes of Action that the Debtors or their Estates would have been legally entitled to assert in their own right including any claims or Causes of Action that could be asserted derivatively or on behalf of the Debtors (or their Estates), that such Entity would have been legally entitled to assert (whether individually or collectively), based on, relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof, or otherwise), any securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the payment or satisfaction of prepetition debt or claims, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, documents and pleadings related to the Sales, or agreement or document created or entered into in connection with the Sales, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place on or before the Effective Date; *provided*, *however*, that this provision shall not operate to waive or release any Claims or Causes of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party**

**or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (2) any obligations under or in respect of the Sale Orders or the APAs.**

### C.    Exculpation

**Except as otherwise specifically provided in the Plan, to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any Claim related to any act or omission arising from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Debtors' in-court restructuring efforts, the Disclosure Statement, documents and pleadings related to the Sales, the DIP Orders and any related agreement, instruments, and other documents relating thereto, the Plan, the Plan Supplement, or any other restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sales, the Plan, the Plan Supplement, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Confirmation Order, the pursuit of the Sale Orders, the conduct of the sale process, the pursuit of consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence or omission taking place between the Petition Date and the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual intentional fraud, willful misconduct, or gross negligence of such Person, but in all respects such Entities shall be entitled to reasonably rely upon the written advice of counsel with respect to their duties and responsibilities pursuant to the Plan to the extent permitted under applicable law.**

### D.    Injunction

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by a purchaser in connection with the Sales; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise discharged, satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any claims, Interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Person or Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged, released, settled, compromised, or exculpated claims, Interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Liquidating Trust, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any

judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or Interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff (*i.e.*, a Proof of Claim or motion asserting such rights), and notwithstanding an indication of a Claim or Interest or otherwise that such Person or Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or Interests released, exculpated, or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Liquidating Trustee, and their respective affiliates, employees, advisors, officers and directors, or agents.

###   E.   Waiver of Statutory Limitations on Releases

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER ARTICLE IX OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN THEIR FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN ARTICLE IX OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

###   F.   No Discharge

Because the Debtors are liquidating, they are not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code with regard to any Holders of Claims.

G. **<u>Release of Liens</u>**

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

If any Holder of a Secured Claim or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Liquidating Trustee that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

**ARTICLE X.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Sales, the Confirmation Order, the Plan Supplement, and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction over, among other items, each of the following:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests.

2. Resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including Claim objections, allowance, disallowance, subordination, estimation and distribution.

3. Decide and resolve all matters related to the granting and denying, in whole or in part of, any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan.

4. Resolve any matters related to: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which one or more Debtors is party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any cure amount arising therefrom; and/or (b) any dispute regarding whether a contract or lease is or was executory or expired.

32211662.13

5.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date.

6.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

7.      Adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters relating to the Retained Causes of Action.

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement.

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Person's or Entity's obligations incurred in connection with the Plan.

10.     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with enforcement of the Plan.

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

12.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated.

13.     Determine any other matters that may arise in connection with or related to the APAs or related Sale documents, the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order.

14.     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan.

15.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by any Holder for amounts not timely repaid.

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order.

17.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.

18.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code.

19.     To recover all assets of the Debtors and property of the Estates, wherever located.

20.     To consider requests for extensions of the term of the Liquidating Trust as provided herein.

21.     Enter an order or final decree concluding or closing the Chapter 11 Cases.

22.     Enforce all orders previously entered by the Bankruptcy Court.

23.     Hear any other matter over which the Bankruptcy Court has jurisdiction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     <u>Modification of the Plan</u>

Subject to the limitations contained in the Plan, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules (1) to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B.     <u>Other Amendments</u>

The Debtors may make appropriate non-material, technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### C.     <u>Effect of Confirmation on Modifications</u>

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### D.     <u>Revocation of Plan; Effect of Non-Occurrence of Conditions to the Effective Date</u>

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to File subsequent plans of reorganization or liquidation.  If the Debtors revoke or withdraw the Plan, or if entry of the Confirmation Order or the Effective Date does not occur, then (1) the Plan shall be null and void

in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan, the Plan Supplement, the Confirmation Order, or the Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Person or Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

**A.    Debtors' Operation from Combined Confirmation Hearing Through Effective Date**

During the period from the Combined Confirmation Hearing through and until the Effective Date, the Debtors shall continue to operate as debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**B.    Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, all Holders of Claims against and Interests in the Debtors (regardless of whether any such Holder has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder is entitled to receive any distribution under this Plan), all Persons or Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Person or Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases, and all parties in interest.

**C.    Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Liquidating Trustee, all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may reasonably be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**D.    Substantial Consummation**

On the Effective Date, this Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

### E.     Reservation of Rights

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

### F.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, beneficiaries or guardian, if any, of each Person or Entity.

### G.     Determination of Tax Liabilities

As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Estates and Liquidating Trust; *provided*, *however*, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for Holders of Interests in the Debtors (which Interests shall be cancelled pursuant to this Plan), but shall provide such Holders with any information reasonably required to prepare such forms.  The Debtors and the Liquidating Trustee (as applicable) shall have the right to request an expedited determination of any tax liability pursuant to section 505 of the Bankruptcy Code, including on any unpaid liability of the Estate or the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Cases.

### H.     Dissolution of the Committee

On the Effective Date, the Committee will dissolve and the members thereof will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases; *provided*, *however*, that, after the Effective Date, the Committee will continue to exist solely with respect to (1) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing, objecting to, defending, and attending any hearing with respect to the same; (2) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (3) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way the treatment of the Holders of General Unsecured Claims, including, but not limited to, any cases, controversies, suits or disputes arising in connection with the consummation, interpretation, implementation or enforcement of the Plan, the Plan Supplement, or the Confirmation Order.  Following the Effective Date, the Committee's Retained Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (1) through (3).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.     Notices

In order for all notices, requests, and demands to or upon the Debtors or the Liquidating Trustee, as the case may be, to be effective, such notices, requests and demands shall be in writing

(including by electronic mail) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received, and served on or delivered to the following parties:

| Debtors | Counsel to the Debtors |
|---|---|
| LL Flooring Holdings, Inc. *et al.*<br>4901 Bakers Mill Lane,<br>Richmond, Virginia 23230<br>Attn.: Alice Givens | **Skadden, Arps, Slate, Meagher, & Flom LLP**<br>One Manhattan West<br>New York, New York 10001<br>Attn: Lisa Laukitis, Esq., Elizabeth M. Downing, Esq.<br>Email: lisa.laukitis@skadden.com; elizabeth.downing@skadden.com<br><br>-and-<br><br>**Young Conaway Stargatt & Taylor, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Attention: Edmon L. Morton, Esq.; Kenneth J. Enos, Esq.; Elizabeth S. Justison, Esq.<br>Email: emorton@ycst.com; kenos@ycst.com; ejustison@ycst.com |
| **Liquidating Trustee** | **Counsel to the Liquidating Trustee** |
| To be included in the Plan Supplement | To be included in the Plan Supplement |

After the Effective Date, Persons or Entities that wish to continue to receive documents pursuant to Bankruptcy Rule 2002 must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Persons or Entities that Filed such renewed requests.

## J.    Term of Injunctions or Stays

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-Confirmation jurisdiction to modify the injunctions and stays under this Plan (1) all injunctions with respect to or stays against an action against property of the Debtors or the Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the date the Confirmation Order is entered, shall remain in full force and effect until such property is no longer property of the Debtors or the Estates; and (2) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (a) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court, or (b) the date that the Chapter 11 Cases are dismissed pursuant to a Final

Order of the Bankruptcy Court.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect indefinitely.

**K.**     **Entire Agreement**

On the Effective Date, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**L.**     **Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Copies of such exhibits and documents shall be made available upon written request to Debtors' counsel or Liquidating Trustee's counsel (as applicable) at the address above or by downloading such exhibits and documents free of charge from the Notice and Claims Agent's website.

Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.  The documents in the Plan Supplement are considered an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**M.**     **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**N.**     **Non-Severability of Plan Provision Upon Confirmation**

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is the following: (1) valid and enforceable pursuant to its terms; (2) integral to the

32211662.13

Plan and may not be deleted or modified without the consent of the Debtors and the Liquidating Trustee (as applicable); and (3) non-severable and mutually dependent.

### O.    Closing of the Chapter 11 Cases

After the full administration of the Chapter 11 Cases, the Liquidating Trustee shall promptly File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, a motion pursuant to Local Rule 3022-1(a), and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

32211662.13

Dated:  November 4, 2024

Respectfully submitted,


*/s/ Holly Etlin*_____
By: Holly Etlin
Chief Restructuring Officer
LL Flooring Holdings, Inc. *et al.*

**EXHIBIT B**

**Liquidation Analysis**

## LIQUIDATION ANALYSIS[1]

The Debtors have prepared this Liquidation Analysis (the "Liquidation Analysis") based on a hypothetical liquidation under chapter 7 of the Bankruptcy Code. It is assumed, among other things, that the hypothetical liquidation under chapter 7 would commence on December 31, 2024 (the "Conversion Date"), under the direction of a Court-appointed trustee (the "Trustee"). Under a typical liquidation analysis, the assumption is made that after the Conversion Date the Debtors' assets are expected to be monetized and netted against liquidation-related costs. Net proceeds earned from these sales are expected to be distributed to creditors in accordance with relevant law. In this case, substantially all the assets of the Debtors were sold during the Chapter 11 Cases. LumLiQ2, LLC (as purchaser) and F9 Investments, LLC (as guarantor) (together, "F9") purchased a portion of the Debtors' assets for a purchase price of $1,000,000 for intellectual property and certain furniture, fixtures, and equipment, plus the Inventory Price (as defined in the F9 APA), plus all Assumed Cure Costs (as defined in the F9 APA). Additionally, the Debtors consummated a sale of the Sandston DC, with the land on which the Sandston DC is built plus certain intangible personal property, to SNA NE, LLC for approximately $104,750,000.00. This Liquidation Analysis assumes that the Trustee would spend a period of time to wind down the Debtors' estates, pursue certain litigation, and distribute estate proceeds to creditors in accordance with relevant law. The determination of the costs of, and typically the proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis may not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation in ways that could make ultimate recoveries higher or lower than in the hypothetical liquidation described herein.

A typical liquidation analysis is a hypothetical illustrative analysis that has been prepared for the purpose of generating a reasonable good-faith estimate of the proceeds that would be generated by a Trustee and distributed to Holders of Claims in accordance with the recovery priorities of the Bankruptcy Code. However, as discussed above, the Debtors' assets were already sold through the Bankruptcy Court-supervised sale process. In this Liquidation Analysis, the actual sale proceeds from the F9 Sale and the Sandston DC Sale are reduced by (i) the actual payment made to pay off the claims of the Prepetition ABL Lenders; (ii) the actual payment made to pay off the claims of the DIP ABL Lenders; and (iii) the estimated professional fees and expenses incurred from the closing of the F9 Sale and the Sandston DC Sale through the Conversion Date.

The Liquidation Analysis herein is a hypothetical exercise that has been prepared for the sole purpose of generating a reasonable good-faith estimate of the proceeds that would be realized if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is used to satisfy the "best interest of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code, because it indicates whether the members of an Impaired Class that vote to reject the Plan will receive at least as much under the Plan as they would in a liquidation under a hypothetical chapter 7 case.

THE LIQUIDATION ANALYSIS IS NOT INTENDED TO, AND SHOULD NOT BE, USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION. THIS ANALYSIS ASSUMES "LIQUIDATION VALUES" BASED ON APPRAISALS, WHERE AVAILABLE, AND THE DEBTORS' BUSINESS JUDGMENT, WHERE APPRAISALS ARE NOT AVAILABLE.

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings set forth in the *Joint Chapter 11 Plan of Liquidation for LL Flooring Holdings, Inc. and Its Affiliated Debtors* (the "Plan").

Nothing contained in the Liquidation Analysis is intended to be, or constitutes, a concession, admission, or allowance of any Claim by the Debtors. The actual amount or priority of Allowed Claims in the Chapter 11 Cases could materially differ from the estimated amounts set forth and used in the Liquidation Analysis. The Debtors reserve all rights to supplement, modify, or amend the analysis set forth herein.

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

## Notes on Liquidation Analysis

The Debtors prepared this Liquidation Analysis assuming that the Debtors' current Chapter 11 Cases convert to chapter 7 cases on the Conversion Date, at which time the Bankruptcy Court would appoint a Trustee to conduct an orderly wind down and liquidation of substantially all of the Debtors' remaining assets (including net sales proceeds) and distribute available proceeds to holders of Allowed Claims during the period after the Conversion Date. In this Liquidation Analysis, the primary difference between the chapter 7 and chapter 11 scenarios relates to the fees and expenses estimated to effectuate the ultimate wind down and resolution of matters relating to the Debtors' estates, as the proceeds of the Debtors' assets and fees and expenses incurred through the Conversion Date are the same in both scenarios. There can be no assurance that the liquidation would be completed in a limited timeframe, nor is there any assurance that the recoveries assigned herein to the assets would in fact be realized. Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally at distressed prices) as is compatible with the best interests of parties in interest. 11 U.S.C. § 704.

1. *Dependence on assumptions.* The Liquidation Analysis is based on a number of estimates and assumptions that, although developed and considered reasonable by management and the advisors of the Debtors at the time of preparation, are inherently subject to significant uncertainties and contingencies beyond the control of the Debtors' management and advisors. The Liquidation Analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation, and actual results could vary materially and adversely from those contained herein.

2. *Completion of Sale Process and Proceeds from Fixed Asset.* F9 purchased a substantial portion of the Debtors' assets for a purchase price of $1,000,000 for intellectual property and certain furniture, fixtures, and equipment, plus the Inventory Price (as defined in the F9 APA), plus all Assumed Cure Costs (as defined in the F9 APA). Additionally, the Debtors consummated a sale of the Sandston DC, with the land on which the Sandston DC is built plus certain intangible personal property, to SNA NE, LLC for approximately $104,750,000.00. The Debtors have generated, and continue to generate, additional sale proceeds from the store closing sales operated by Hilco Merchant Resources, LLC.

3. *Illustrative Asset Recoveries.* The estimated Cash Balance as of the Conversion Date is based on the projected balance as of December 28, 2024, which takes into consideration (i) the Debtors' projection contained in the October 2, 2024 wind-down budget, (ii) the consideration paid in connection with the Sales, (iii) the actual payment made to pay off the claims of the Prepetition ABL Lenders; (iv) the actual payment made to pay off the claims of the DIP ABL Lenders; and (v) the estimated professional fees and expenses incurred from the closing of the Sales through the Conversion Date. The professional fees and expenses from the closings through the Conversion Date are based on estimates and are subject to change. Actual professional fees and expenses may differ from the projections, and the timing of the cash payments on these accrued expenses may differ from these projections based on timing of filing of fee applications by the professionals and respective approvals by the Bankruptcy Court to disburse funds. Additionally, the following notes are applicable to the "Illustrative Asset Recoveries" section of the Liquidation Analysis:

   a. *Restricted Cash – Utilities Adequate Assurance.* This line item assumes a release of restricted cash held on deposit for the provision of adequate assurance to utility service providers.

   b. *Restricted Cash – LOC Collateral.* This line item assumes a return of cash collateral held by Bank of America, N.A. to cover outstanding letters of credit.

    c.   *Accounts Receivable – Remaining Credit Card Reserves*.  This line item represents reserves held by credit card processors and financing partners.

    d.   *Prepaid Expenses – Insurance*. This line item represents refunds on prepaid corporate insurance that is cancelled prior to the end of the policy term.

    e.   *Potential Litigation Proceeds – Visa/MC Claim*. This line item represents claims the Debtors have in a class action lawsuit against Visa / MasterCard.  The Debtors filed a claim of approximately $86.9 million which represents the fees paid between January 1, 2004 through January 25, 2019. This analysis assumes, in the high case, that the Debtors are able to recover approximately 2% of the $86.9 million in fees that were paid.

4.   *Post Closing to Effective Date Professional Fees and Expenses*.  The Liquidation Analysis assumes the payment of allowable professional fees and expenses accrued during the period from the closing date through the Conversion Date but that certain professional fees and expenses remain unpaid as of the Conversion Date. As discussed above, the professional fees and expenses incurred from closing through the Conversion Date are based on estimates and are subject to change.  Actual professional fees and expenses may differ from projections, and the timing of the cash payments on these accrued expenses may differ from these projections based on the timing of filing of fee applications by the professionals and respective approvals by the Bankruptcy Court to disburse funds.

5.   *Chapter 7 Trustee Fees*.  The Chapter 7 Trustee is estimated to receive fees allowable under section 326(a) of the Bankruptcy Code, which are equal to 25% of the first $5,000 distributed, 10% of amounts between $5,001 and $50,000, 5% of amounts between $50,001 and $1,000,000, and 3% of amounts over $1,000,000. Based on the estimated Cash Balance as of the Conversion Date to be distributed, the Chapter 7 Trustee Fees are estimated to be $188,000.00 on the low end and $400,000 on the high end.

6.   *Chapter 7 Trustee Liquidation Expenses*.  Subsequent to the Conversion Date, the Liquidation Analysis assumes a Trustee will wind down the estate, pursue certain litigation, and distribute estate proceeds to creditors in accordance with relevant law.  Between $2,918,000 and $3,225,000 of professional fees and expenses are assumed to be incurred for counsel and advisors commensurate with the complexity and duration of potential litigation. Although the Chapter 7 Trustee is assumed to pursue certain litigation, no proceeds related to litigation are assumed in the Liquidation Analysis due to its contingent nature.

7.   *Chapter 11 Post Effective Date Wind Down Expenses*.  The Post Effective Date Wind Down Expenses include professional fees related to activity to wind down the estate after the Effective Date and are estimated to be between $2,652,000 and $2,932,000 which include but are not limited to claims reconciliation, distribution of estate proceeds to creditors, the filing of final fee applications, and other ad hoc activities to wind up the Debtors' affairs.

8.   *Other Administrative Claims*.  Other Administrative Claims consist of claims under section 503(b)(9) of the Bankruptcy Code and claims for the postpetition period of August rent owed to landlords.  Other administrative expenses allowable pursuant to section 503(b) of the Bankruptcy Code are not included in this Liquidation Analysis because they are included in the wind-down budget and assumed to be paid prior to December 31, 2024.

9.   *Priority Tax Claims*.  Priority Tax Claims consist of sales taxes owed on account of audits, certain personal property taxes, and other priority tax claims.

10.   *Other Priority Claims*.  Other Priority Claims consist of claims for customer deposits up to the statutory cap of $3,350.00.

11.   *Other Secured Claims*.  Other Secured Claims consist of claims under letters of credit which are cash collateralized.

12. *General Unsecured Claims*.  The amount of General Unsecured Claims is calculated based on the Debtors' Schedules of Assets and Liabilities and may be amended following the general bar date in these Chapter 11 Cases.


AS DESCRIBED IN GREATER DETAIL IN THE INTRODUCTION TO THIS LIQUIDATION ANALYSIS, THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF GENERATING A REASONABLE GOOD-FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE WHEN COMPARED TO RECOVERIES UNDER THE PLAN. THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED IN AN ACTUAL LIQUIDATION.

**LL Flooring Holdings, Inc.**
**Consolidated Liquidation Analysis**

**Reflects a conversion to chapter 7 on December 31, 2024**

## PROCEEDS AVAILABLE FOR DISTRIBUTION

| | BOOK VALUE | ASSUMED RECOVERY % | | RECOVERY $ | | RECOVERY $ | |
|---|---|---|---|---|---|---|---|
| | 12/31/24 Est. | Low | High | Ch. 7 Low | Ch. 7 High | Ch. 11 Low | Ch. 11 High |
| **Illustrative Asset Recoveries** | | | | | | | |
| Cash and Equivalents[3] | $ 1,654 | 100.0% | 100.0% | $ 1,654 | $ 1,654 | $ 1,654 | $ 1,654 |
| Restricted Cash - Utilities Adequate Assurance[3a] | 287 | 90.0% | 100.0% | 258 | 287 | 258 | 287 |
| Restricted Cash - LOC Collateral[3b] | 10,457 | 21.1% | 57.2% | 2,211 | 5,976 | 2,211 | 5,976 |
| Restricted Cash - Corp Credit Card Collateral | 300 | 75.0% | 100.0% | 225 | 300 | 225 | 300 |
| Accounts Receivable - Remaining Credit Card Reserves[3c] | 4,700 | 0.0% | 50.0% | - | 2,350 | - | 2,350 |
| Accounts Receivable - Other | - | 0.0% | 0.0% | - | - | - | - |
| Inventories | - | 0.0% | 0.0% | - | - | - | - |
| Prepaid Expenses - Insurance[3d] | 4,025 | 9.9% | 11.9% | 398 | 477 | 398 | 477 |
| Potential Litigation Proceeds - Visa / MC Claim[3e] | 1,500 | 50.0% | 100.0% | 750 | 1,500 | 750 | 1,500 |
| Other Current Assets | - | 0.0% | 0.0% | - | - | - | - |
| Properties and Equipment | - | 0.0% | 0.0% | - | - | - | - |
| Operating Lease ROU Assets | - | 0.0% | 0.0% | - | - | - | - |
| Other Noncurrent Assets | - | 0.0% | 0.0% | - | - | - | - |
| **Total Illustrative Recoveries** | **$ 22,923** | | | **$ 5,496** | **$ 12,545** | **$ 5,496** | **$ 12,545** |

## PROCEEDS AVAILABLE AFTER WIND DOWN COST

| | | | | Ch. 7 Low | Ch. 7 High | Ch. 11 Low | Ch. 11 High |
|---|---|---|---|---|---|---|---|
| **Gross Recoveries** | | | | $ 5,496 | $ 12,545 | $ 5,496 | $ 12,545 |
| **Less:** | | | | | | | |
| Ch. 11 Post Effective Date Wind Down Expenses[7] | | | | - | - | (2,932) | (2,652) |
| Ch. 7 Trustee Fees[5] | | | | (188) | (400) | - | - |
| Ch. 7 Trustee Liquidation Expenses[6] | | | | (3,225) | (2,918) | - | - |
| **Total wind down cost** | | | | **(3,413)** | **(3,317)** | **(2,932)** | **(2,652)** |
| **Illustrative Residual Value (Deficit)** | | | | **$ 2,083** | **$ 9,227** | **$ 2,564** | **$ 9,892** |

## ALLOCATION OF RECOVERIES

| | | | | Ch. 7 Low | Ch. 7 High | Ch. 11 Low | Ch. 11 High |
|---|---|---|---|---|---|---|---|
| **Secured Debt** | | | | | | | |
| **Proceeds Available - Secured Debt** | | | | $ 2,083 | $ 9,227 | $ 2,564 | $ 9,892 |
| **Less:** | | | | | | | |
| No secured debt other than LOCs which are cash collateralized | | | | - | - | - | - |
| *Recovery %* | | | | *N/A* | *N/A* | *N/A* | *N/A* |
| **Proceeds Available after Distribution to Secured Debt** | | | | **$ 2,083** | **$ 9,227** | **$ 2,564** | **$ 9,892** |
| **Admin / Priority Claims** | | | | | | | |
| **Proceeds Available - Admin / Priority Claims** | | | | $ 2,083 | $ 9,227 | $ 2,564 | $ 9,892 |
| **Less:** | | | | | | | |
| Total Claims - Admin / Priority[8,9,10] | | | | (2,487) | (1,460) | (2,487) | (1,460) |
| *Recovery %* | | | | *84%* | *100%* | *100%* | *100%* |
| **Residual Recovery Proceeds** | | | | **$ -** | **$ 7,767** | **$ 77** | **$ 8,432** |

Subject to FRE 408, State Law Equivalents, and Confidentiality Agreements (a) with the Company and/or (b) included in section 10.08 of the Credit Agreement